

666 OLD COUNTRY ROAD, SUITE 700    WWW.BARKETMARION.COM    350 FIFTH AVENUE, SUITE 6400
GARDEN CITY, NEW YORK 11530        [FAX] 516.745.1245      NEW YORK, NEW YORK 10118
516.745.1500                       ALL MAIL TO GARDEN CITY ADDRESS    212.972.1710

March 9, 2018

Hon. Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

        Re:    ***United States v. Nicholas Tartaglione***
                  **16 Cr. 832 (KMK)**

Dear Honorable Karas:

    We write to apprise the court of several serious issues that have arisen in Mr. Tartaglione's confinement. At the outset, we recognize that Mr. Tartaglione presents a unique challenge in that this is a death eligible prosecution and Mr. Tartaglione is a retired police officer. We are asking the Court to use its good offices to help facilitate Mr. Tartaglione's confinement in a safe facility where he has access to personal belongings, his legal documents, human necessities such as a toothbrush and eating utensils, and where counsel, investigators and mitigation specialists can have reasonable access to visit him.

    Before we outline the current acute problems it is worth briefly noting where he has been detained up to the present. For the first several weeks following his arrest in December of 2016, he was held in the Special Housing Unit ("SHU") at the MCC. From there he was moved to the MDC in a unit dedicated to defendants who were in law enforcement or the like, as well as other uniquely situated inmates. He remained there for 9 months. Mr. Tartaglione remained in that unit without any serious incident, although he was cited for two violations[1]. Mr. Tartaglione was removed in December of 2017 from that location and placed in MDC's SHU for administrative, not disciplinary reasons. Although we were told that his move to the SHU was pursuant to an investigation, it is our understanding that no finding was made. He was then moved without explanation back the MCC where he was placed in a general population unit.

    On February 11th, Mr. Tartaglione was assaulted in that unit. He suffered a fractured orbital bone requiring reconstructive surgery,[2] was hospitalized for two and a half weeks, and was then transferred to MCC's SHU for (according to BOP)

---

[1] It is our understanding that he wrote an email to a former inmate's wife and after losing all commissary for 6 months as a sanction, he lost all personal visits, emails and phone calls for 90 days for accepting commissary from another inmate.

[2] A metal plate was inserted into his face where his orbital bone had been.

1

"administrative," not disciplinary reasons. He has been there since February 26th. This morning we learned that Mr. Tartaglione is expected to receive an incident report for "fighting" and will remain in SHU pending administrative hearings.

When Mr. Tartaglione was originally detained at MCC's SHU in December of 2016, Mr. Tartaglione lost track of the time and even the day of the week. He appeared distracted and notably depressed. He lost weight in a very short period of time. We had difficulty discussing the facts of the case with him due to his declining mental faculties. Accordingly, we suggested that he be transferred to MDC, which housed inmates that had previously worked in law-enforcement or similar professions.

Currently, Mr. Tartaglione is confined in the MCC's SHU, and is exhibiting the same signs of declining mental health that we noted upon his original confinement there. As of Sunday, March 4th, he had nothing at all in his cell except for one book he was given that morning. He had none of his personal belongings, no legal work, no radio, access to television, recreation, or even a clock. He did not have access to a toothbrush or other hygiene necessities such as a shower. He literally sat in the cell all day, every day, except when he had legal visits. For most of the time that he has been confined in the MCC's SHU, he has not been given utensils with his daily meals. On March 3, 2018, he was finally given a plastic spoon. I am told he is only allowed one phone call a month including calls to his lawyer. He is quite literary in a box staring at walls. Not surprisingly, his mental health has severely declined.

Since we asked for the Court's intervention, Mr. Tartaglione has been given one book and one newspaper, and now has a cellmate.

Mr. Tartaglione is noticeably thinner. He is depressed and does not maintain eye contact, and mostly stares downward and places his head on his hands during legal visits. Despite the fact that he is still recovering from facial surgery, is in pain and suffering from headaches, and still has swelling around his eye and tenderness on the inside of his mouth, he had not seen a doctor as of March 8th and has not been given pain medication nor even antibiotics.

As his counsel, visiting Mr. Tartaglione while he is in SHU is particularly challenging. A lawyer can, and I have, waited to see him for up to 3 hours in a small windowless waiting area without a phone or computer. There are only 2 visiting rooms at the MCC for SHU inmates. They are given out on a 'first-come first-serve' basis. This alone is undermining the statutory requirement that capital eligible defendant's learned counsel "shall have free access to the accused at all reasonable hours." 18 USC 3005.

Lately, when we visit Mr. Tartaglione, we spend almost all of the time dealing with issues related to his confinement and his deepening depression. We are unable to discuss the facts of the case or the complex legal issues of this capital prosecution because of the severe conditions of his confinement. At the end of our legal visits, Mr. Tartaglione seems visibly distressed to return to an empty cell and literally begs us not to leave. Most importantly, his present conditions are thwarting our efforts to conduct a mitigation investigation and compromising his ability to make critical decisions related to the authorization process.

We have communicated our concerns to the legal department at the BOP and to the Government. While the lawyers for the BOP have been responsive and courteous, they have not provided counsel with any rationale for Mr. Tartaglione's current treatment and conditions, when or even if these conditions will end nor why he has been denied books, a toothbrush, showers, a clock, legal work, eating utensils, and ordinary access to a telephone or a computer.

As the Court is well aware, this is a "high risk" death eligible prosecution. Our ability to develop a defense and mitigation has been severally hampered by the housing events occurring since December of 2016. Mr. Tartaglione cannot watch videos nor review documents in his discovery. He has been isolated for over 3 months, except for a few weeks in the unit where he was assaulted. The ability of our mitigation specialists to discuss details of his history has been overwhelmed by discussions of the conditions of his confinement. Mr. Tartaglione's ability to engage in meaningful and sensitive topics has been lost.

There is tendency in our system to verbally acknowledge a defendant's right to humane treatment and reasonable access to counsel, but then to normalize the severe and often inhumane conditions in the detention facilities. The attitude of "it's jail" (words of one guard this past week when I asked about Mr. Tartaglione being in a cell without anything but the clothes on his back) is all too pervasive. Counsel does understand that the Constitution does not require comfortable prison conditions. However, our client, who is presumed innocent and facing possible execution, has a Sixth Amendment right to prepare his defense and mitigation, a Fifth and Fourteenth Amendment right to due process, and an Eighth Amendment right to the "minimal civilized measure of life's necessities." See *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)(quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994)). This includes being given utensils to eat, access to phones, adequate medical care, books to read, a clock, commissary, toiletries and other hygiene necessities, the ability to exercise, an adequate mattress (he suffers from back pain), his legal documents and reasonable access to his lawyer. See *Walker v. Schult*, 717 F.3d 119 (2013). As of my last visit with Mr. Tartaglione on March 4th, Mr. Tartaglione was being denied all of those basic human needs.

We hope the Court can facilitate a resolution so that counsel's time can be spent defending the case and exploring mitigation, not litigating the conditions of his confinement. We appreciate the opportunity to discuss other housing facilities that would eliminate the above-referenced concerns. Thank you for your time and consideration.

Thank you for your consideration.

Respectfully submitted,

Bruce A. Barket
Aida F. Leisenring

cc via EFC: AUSAs Maurene Comey & Michael Gerber