```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA

         v.                            16 Cr. 832(KMK)

                                       CONFERENCE

NICHOLAS TARTAGLIONE,

              Defendant.
------------------------------------x
                                       United States Courthouse
                                       White Plains, N.Y.
                                       April 30, 2018
                                       3:00 p.m.




Before:   THE HONORABLE KENNETH M. KARAS, District Judge



                              APPEARANCES


BARKET, EPSTEIN & KEARON, LLP
     Attorneys for Defendant
BRUCE BARKET
AIDA LEISENRING


MARK DeMARCO (via telephone)
    Attorney for Defendant


ANTHONY RICCO
     Learned Counsel
```

1 THE DEPUTY CLERK: The Honorable Kenneth M. Karas
2 presiding.
3 United States of America against Nicholas
4 Tartaglione, 16 Crim. 832.
5 Counsel, please state your appearances.
6 MS. COMEY: Good afternoon, your Honor. Maurene
7 Comey for the government.
8 THE COURT: Good afternoon.
9 MR. BARKET: Bruce Barket.
10 MS. LEISENRING: Aida Leisenring
11 MR. DeMARCO: Mark DeMarco.
12 MR. BARKET: All for Mr. Tartaglione.
13 THE COURT: Good afternoon to you all.
14 Please be seated, everybody.
15 All right. So I suppose the first thing we should
16 take up is what was in Mr. Barket's most recent letter dated
17 April 26.
18 I assumed you were going to respond today, so I
19 didn't ask for a written response, Ms. Comey.
20 MS. COMEY: Yes, your Honor.
21 In essence, our response would be that we believe
22 your Honor is able to address any disclosures that need to be
23 made based on the materials that your Honor has to review. Any
24 materials sought in that particular letter have already been
25 provided to the Court for review, so to the extent your Honor

1  believes that there are any disclosures necessary, we'll make
2  them as ordered.
3         THE COURT:  Well, okay.
4         So the first -- obviously, as you know, the first
5  obligation is yours, yours being the government's, to turn over
6  Brady material, and I take it by what you just said that your
7  view is that you have satisfied your obligations and that
8  nothing in what you submitted for in-camera review is, in fact,
9  Brady material.
10        MS. COMEY:  That's correct, your Honor.
11        THE COURT:  Okay.
12        The one point that I thought was clear, whether it's
13 true or not, of course, I have no way of knowing because I
14 don't know all the evidence that you have, but what is said
15 succinctly in the bottom of page 1, the top of page 2, and in
16 particular the statement at the top of page 2, the government
17 has changed its theory entirely and now alleges that
18 Mr. Tartaglione was not only present, but actually shot one of
19 the three victims.  Next paragraph:  Both theories are entirely
20 contradictory and obviously impact the defense at the guilt
21 phase and penalty phase, and our argument to the government is
22 that it should not seek the death penalty.  This current theory
23 pits the government's proof at odds with itself.
24        Why is that wrong?
25        MS. COMEY:  Because the evidence that -- the new

1  theory, your Honor, comes from new evidence, which we have
2  provided to your Honor for review in camera.  It is not
3  inconsistent with or suggests that the original evidence on
4  which we based our original theory was incorrect or involved
5  anything that was not accurate, but, rather, that the
6  government was drawing inferences from the evidence that it had
7  when it initially made its disclosures to the defense and, upon
8  receiving new evidence, recognized that the inference that the
9  government had drawn was not, in fact, correct.
10             THE COURT:  But the inference, presumably, was one
11 you thought was reasonable to draw from the evidence you had at
12 the time, right?
13             MS. COMEY:  Yes, your Honor, due to a lack of the
14 other evidence.
15             THE COURT:  Right.  But if the inference at the time
16 was X and then later evidence comes along and says not X, then
17 why doesn't the evidence that supported the inference of X then
18 become Brady?
19             MS. COMEY:  Well, because the evidence that supported
20 X also supports not X.
21             THE COURT:  Even if X and not X are contradictory.
22             MS. COMEY:  Yes, your Honor.  In this particular
23 circumstance, yes.
24             THE COURT:  Okay.  Some of the notes are illegible,
25 and even if they can be read, it's hard to decipher.  That's

1    not true -- I don't want to say that's true of all the notes,
2    but to the extent that the government is taking the view that
3    it has met its Brady obligation even in light of the new theory
4    and is looking to -- I mean, this will sound more pernicious
5    than I mean it -- to cover itself by having the Court look at
6    it, then it gets back to -- well, first of all, there's the
7    issue about the legibility.  Then there's the issue of
8    decipherability.  And then there's the point that counsel had
9    made on behalf of Mr. Tartaglione that even if I could look at
10   this and say, well, it doesn't seem to be Brady, I don't have
11   the same eye that counsel does because I'm not aware of their
12   defenses.  I'm not aware of any of the other evidence that's
13   been produced in discovery where they could view some piece of
14   the notes as helpful to them and, therefore, Brady.
15            So what is one to do at that point, putting aside
16   legibility?
17            MS. COMEY:  Well, your Honor, with respect to the
18   legibility, we're happy to address that by, for example,
19   transcribing the notes if that would be easier for your Honor
20   and for your chambers to review it.  I'm happy to do that for
21   all of them or specific ones that you're having difficulty
22   reviewing.
23            With respect to the other question, I think it comes
24   back to the same issue that we discussed at the last oral
25   argument, which is that that issue of whether or not defense

1   counsel can identify specific pieces that might be seen in a
2   different light or helpful to them and only in their eyes is an
3   issue in every single case, but that does not mean that they
4   get 3500 well in advance of any sort of trial because of that.
5               We maintain that we have provided any exculpatory
6   information and that the evidence that supported our prior
7   theory, again, is not inconsistent with our new theory.
8               THE COURT:  Okay.  Anything else you want to add on
9   this point?
10              MS. COMEY:  No, your Honor.
11              MR. BARKET:  Well, we, obviously, thought we were
12  entitled to this evidence six months ago, or five months ago,
13  so, based upon the argument that we had, it seemed pretty clear
14  to us that we would get it now.  I think both the Court and the
15  government made references to, well, if our theory changes,
16  then the circumstances would change.
17              THE COURT:  Well, circumstances could change.
18              MR. BARKET:  Could change.
19              THE COURT:  Right.
20              MR. BARKET:  And not only did the theory change, it
21  really flipped on its head.  It is as poignant as your Honor
22  put it.  They theorize X and X being somewhat exculpatory.  And
23  we talked about that last time.  And I recall the discussion I
24  think either through the Court, either me and Ms. Comey or
25  maybe me and the Court had about fact and conclusion.  And the

1   government was asserting this is a fact, that Nick was not
2   present, and I was saying, no, it can only be a conclusion
3   based upon evidence even though it's consistent with our
4   position.  And so it turns out now that it was not only not a
5   fact, but it was an incorrect conclusion in their view.  But it
6   had to be based on something.  And what it was based on was
7   inferences -- as I recall the statements from the government,
8   inferences, the video surveillance which they've turned over
9   and witness statements.
10          So we think that we would be entitled to all the
11  evidence that supports X, if you will, because X is clearly
12  inconsistent with not X.  They may have an argument that they
13  can fit their new theory in and have that encompass the
14  evidence that led to the conclusion that Nick was not present
15  for the shooting.  That doesn't make the evidence from which a
16  reasonable inference was drawn that he wasn't present not
17  Brady.
18          THE COURT:  Right.  I mean, your point is that if he
19  wasn't present, that's Brady under their new theory.
20          MR. BARKET:  And it's obviously Brady on guilt and
21  it's, more importantly, Brady on punishment, which goes to the
22  penalty phase.
23          THE COURT:  Yes.
24          MR. BARKET:  And we're at kind of a critical stage
25  because we're drafting our response -- or not our response, but

1  our submission.

2  THE COURT: So just so the record is clear, to the
3  Department of Justice.

4  MR. BARKET: Department of Justice, right.

5  THE COURT: The Capital Crimes Review Committee.

6  MR. BARKET: Correct.

7  THE COURT: Right.

8  MR. BARKET: And part of that is to kind of
9  articulate the relative positions. And we're actually -- well,
10 so that's critical, I think.

11 THE COURT: Yes. Well, and I guess that's your
12 response to Ms. Comey's point about how this may very well be a
13 conondrum that appears in every case, but your argument is but
14 this is a capital case and this is a critical phase in the
15 capital case.

16 MR. BARKET: Well, certainly, but I also -- I
17 don't -- I mean, the slippery slope if we provide the evidence
18 which supported a theory that is now inconsistent with the
19 current theory we have, therefore, we would have to give the
20 defense all the 3500 material I think really is not
21 meritorious. We can all say the defense is entitled to the
22 evidence that led to this reasonable inference, but not other
23 3500 material. It's a pretty clear line, I would think.

24 THE COURT: So your argument is it's not 3500
25 material, it's Brady.

|   |   |
|---|---|
| 1 | MR. BARKET: Obviously, yes. |
| 2 | THE COURT: Right. |
| 3 | MR. BARKET: Clearly. It may be both. |
| 4 | THE COURT: Right, but it's the Brady that gives it a |
| 5 | different status in terms of discovery obligations. |
| 6 | MR. BARKET: Correct. |
| 7 | And really all the arguments we made last time, |
| 8 | obviously, I don't need to repeat, the case law and so forth, |
| 9 | are all -- I mean, just kind of put our motion, the letter we |
| 10 | wrote, luck and all of it, into context now, and I think it's |
| 11 | appropriate to be disclosed. |
| 12 | THE COURT: Yes. |
| 13 | I guess I'm still trying to understand, Ms. Comey, |
| 14 | how it is that the government's original theory is that |
| 15 | Mr. Tartaglione wasn't there when the victims were killed, but |
| 16 | that, now that he was there and he actually shot one of the |
| 17 | victims, I'm trying to understand how they're not intentioned. |
| 18 | MS. COMEY: Well, the theories themselves are |
| 19 | intention, your Honor, but the evidence underlying the two are |
| 20 | not. And simply put, were there a witness statement that said |
| 21 | definitively I was there when those victims were killed and |
| 22 | Mr. Tartaglione was not there, we agree that that would be |
| 23 | exculpatory. That is not the nature of the evidence that we |
| 24 | are discussing here. There is nothing that explicit that |
| 25 | removes him. To the contrary. There's evidence putting him |

1  there at the scene.

2  THE COURT: But I don't think that's the issue,

3  though. To the extent that there's evidence that's consistent

4  with your new theory of the case, that's not the issue. The

5  point is that if there's evidence that's consistent with the

6  old theory, that that almost necessarily means it would be

7  inconsistent with the new theory.

8  MS. COMEY: Your Honor, the prior theory was drawn

9  from inferences that we were drawing based on a limited set of

10  evidence that we had about the events leading up to and

11  surrounding the murders in question. There was a gap in that

12  knowledge. We filled that gap with an inference that we drew.

13  There were two reasonable inferences to draw. We drew one that

14  was more favorable to Mr. Tartaglione. We then got new

15  information making clear that the less favorable inference was,

16  in fact, the correct one. That is the circumstance that

17  happened here.

18  THE COURT: Okay.

19  MR. BARKET: I mean, obviously, to me, that's the

20  definition of Brady. It's the reasonable inference from

21  evidence that -- I mean, that's it. It doesn't have to be

22  explicit. If it were explicit, that would be Brady, too, but

23  the evidence from which a -- I mean, the circumstantial

24  evidence charge at times, I mean, this is the definition of

25  Brady. It's reasonable inference that can be drawn from a set

1 of facts consistent with his defense.

2 THE COURT: Or otherwise inconsistent with the
3 prosecution's theory.

4 MR. BARKET: Correct.

5 THE COURT: Regardless of whatever your defense is.

6 MR. BARKET: Right.

7 THE COURT: Right.

8 MS. COMEY: My point is, your Honor, that none of
9 that evidence is, in fact, inconsistent with the new theory.
10 None of it. It does not change -- the new theory does not
11 change at all the series of events set forth by the witness
12 statements that were referenced in our prior submissions.

13 THE COURT: I mean, I guess what's a little
14 interesting is that what you're telling me is that the
15 government once upon a time had gaps in the evidence, drew an
16 inference to reach a certain conclusion and was prepared to
17 prosecute as a capital case knowing that there were gaps, and
18 now that the gaps have been filled by evidence that you say
19 yields a different theory, that, underlying all of that,
20 there's just no discovery obligation. That's basically what
21 we're being told here?

22 MS. COMEY: Yes, your Honor.

23 THE COURT: All right.

24 I think I'm going to need some help, then, getting
25 readable copies of these notes because, at face value, that

```
 1   strikes me as a statement worthy of skepticism.  But if I can't
 2   read this stuff, then I can't do anything with it.  But, also,
 3   it becomes even more problematic for the Court in a vacuum,
 4   with the moving target of the theory, to say something isn't
 5   Brady -- and it's a lot of the government whose obligation it
 6   is -- it's not my obligation, it's your obligation -- to have
 7   me say definitively there's nothing in here that's Brady.  But,
 8   okay.  I mean, I'll do my job.  I'll do my best.  But I'm going
 9   to need readable copies.
10            MS. COMEY:  Yes, your Honor.
11            THE COURT:  I'll take a look and see if there's stuff
12   that's clearly readable and stuff that's clearly not readable.
13   I mean, there's the in between where there's stuff where I can
14   read the words, but I don't know what they mean.  And so I may
15   need translations, if you will.
16            MS. COMEY:  Yes, your Honor.
17            THE COURT:  Because you know how it goes when people
18   take notes.  They have their own sort of shorthand and they
19   have the benefit of Christina there giving them a line by line.
20            But that's an interesting theory.  Okay.
21            So, with your permission, what I'm going to do is I'm
22   going to go back to the government and say these are the notes
23   I can't decipher, I need them transcribed, and then I'll do the
24   review.  I don't know what else can be done at this point.
25            MR. BARKET:  I think that's where we are.
```

1    THE COURT:  Okay.  All right.

2    Other issues to take up?

3    MR. BARKET:  I think your Honor saw another
4 submission that was also under seal, so I won't refer to the
5 substance of it, or at least not the details.  But there's a
6 series of questions that we asked in the form of a letter to
7 the government and the government responded.  Did your Honor
8 get an opportunity to see that?  I thought the government had.

9    THE COURT:  I'm sure I did.  Let me see here.

10   MR. BARKET:  Our letter is dated April 12th.  The
11 government's response is dated April 23rd.  And I think they
12 were submitted to your Honor under seal on the 24th or 25th.

13   THE COURT:  Yes.  I'm sorry.  I was looking at the
14 wrong documents.

15   MR. BARKET:  So we obviously didn't -- we didn't file
16 any motions in that regard.  And the only one that comes to
17 mind now would be a motion for some specifics in the form of a
18 bill of particulars.

19   THE COURT:  Yes.

20   MR. BARKET:  And some of the questions, though, I
21 think are very poignant for mitigation, and they were answered
22 with less specificity than I think that we would otherwise be
23 entitled to.  So that's probably an issue that's going to come
24 up again quickly.

25   THE COURT:  So you think you will be filing a bill of

1 particulars motion.

2 MR. BARKET: Yes. I hesitate to call it that
3 because --

4 THE COURT: Yes. The law on that --

5 MR. BARKET: Is not great.

6 THE COURT: Not great.

7 MR. BARKET: For us.

8 THE COURT: Correct, not great for you, especially
9 some of these questions are the who, what, when and where that
10 the bill of particulars sort of case law frowns upon.

11 MR. BARKET: Right. Some of them are critical for
12 understanding Mr. Tartaglione's alleged role compared to other
13 people.

14 THE COURT: Understood. So I guess what I'll say is
15 if you feel you have a viable motion, you'll file it. You all
16 will agree to a briefing schedule. I hate to sound like Sammy
17 Sceptic, but the law is tough for you in this regard,
18 especially as it relates to some of these questions. But you
19 may find some really good case, and I'll read it, or cases.

20 MR. BARKET: We will.

21 THE COURT: Okay.

22 MR. BARKET: We'll see what we can do in that regard.

23 THE COURT: Okay.

24 Other issues?

25 How are we doing on the prison situation?

1           MR. BARKET:  Amazing the persuasive power of the
2    Federal Courts.  Much better.
3           THE COURT:  So better?
4           MR. BARKET:  Better.
5           THE COURT:  I realize nothing's perfect.  I get that.
6    But at least it's better.
7           MR. BARKET:  There's still a few issues on kind of
8    the periphery, but he's no longer in SHU.  He started to
9    receive, as I just found out, some of the material that's been
10   ordered for him.  Not all of it.  Still a lot of it's missing.
11   But we're getting there.
12          THE COURT:  Okay.  All right.  And if you need
13   more --
14          MR. BARKET:  We will.
15          THE COURT:  -- push, first call will be to Ms. Comey,
16   who's been extremely helpful.  Second is to me if Ms. Comey
17   runs into resistance.
18          And the same if you need help from me, Ms. Comey.
19   You'll let me know.
20          All right.  Other issues to take up?
21          You want a conference date how far out?
22          MR. BARKET:  I think we both have trials in May.
23   Mine starts a little sooner, but wraps up around Memorial Day.
24          Yours will wrap up about that week?
25          So maybe the first week in June, which would be like

```
 1  June --
 2              THE COURT:  The week of June 4?
 3              MR. BARKET:  Yes.
 4              THE COURT:  Okay.
 5              MR. BARKET:  Right in there.  Could I just take a
 6  look at my calendar?
 7              THE COURT:  Yes, of course.
 8              And, also, is it realistic that your trial is going
 9  to end by then, each one of you?
10              MR. BARKET:  Mine is in state court, and I think it
11  should only take two weeks, so giving it three, almost four.
12              THE COURT:  Okay.
13              MR. BARKET:  My anniversary is the 25th.
14              THE COURT:  So it better be done by then.
15              MR. BARKET:  One would hope.
16              THE COURT:  Understood.
17              MR. BARKET:  It won't be the first time a trial
18  hadn't ended by then.
19              THE COURT:  You want to get to your next anniversary.
20              So you think yours will end by then?
21              MS. COMEY:  I assured Judge Briccetti it will, your
22  Honor.
23              THE COURT:  Oh, you're in for it now.  Okay.
24              THE DEPUTY CLERK:  June 7th at 3.
25              THE COURT:  If that works.  Take a look at your
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

20184utartc
17

```
 1   calendars.
 2              MR. BARKET:  Could we do the 7th a little bit earlier
 3   than 3?
 4              THE COURT:  So we're on trial, unfortunately, that
 5   week.  We sit 9:30 to 2, so it's a little harder.
 6              MR. BARKET:  The 6th at 3?
 7              THE COURT:  We have a sentence on, unfortunately.
 8              MR. BARKET:  It's not the end of the world, but I'm
 9   going to try one more time.  The 5th?
10              THE DEPUTY CLERK:  We could do 3:30.
11              MR. BARKET:  That's fine.  That's okay with me, I
12   should say.
13              THE COURT:  Well, what if we did the 7th at 2:30?
14   Does that work?
15              MR. BARKET:  Yes.  That's fine.
16              THE COURT:  Does that work, Ms. Comey?
17              MS. COMEY:  Yes, your Honor.  Thank you.
18              THE COURT:  So we'll do the 7th at 2:30.  And if I
19   can do the 5th, I'll let you know.
20              MR. BARKET:  Okay.
21              THE COURT:  Any objection to excluding time from now
22   until June 7?
23              MR. BARKET:  No.
24              THE COURT:  I take it that would be the government's
25   application.
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1  MS. COMEY:  Yes, your Honor.
2  THE COURT:  All right.  Then I'll prospectively
3  exclude time from today until June 7 of 2018 finding it's in
4  the interests of justice to do so.  That finding is based on
5  the fact that there are a lot of things going on in this case.
6  There's an in-camera discovery review, a Brady review that
7  needs to be done and, among other things, the defense team is
8  feverishly preparing its next submission to the Justice
9  Department.  So I, therefore, find that the interests of
10  justice from this exclusion outweigh Mr. Tartaglione's and the
11  public's interest in a speedy trial.  That finding is made
12  pursuant to 18 U.S.C. Section 3161(h)(7)(A).
13  Anything else?
14  MS. COMEY:  No, thank you, your Honor.
15  THE COURT:  Anything else?
16  MR. BARKET:  No, thank you, your Honor.
17  THE COURT:  Ms. Comey, we'll be in touch with you
18  about transcription assistance, and then we'll do the review as
19  quickly as possible.
20  MR. BARKET:  Thank you.
21  THE COURT:  Enjoy the rest of your day.
22  Thank you, Marshals.
23  MS. COMEY:  Thank you.
24  - - - -
25