```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA

           v.                          16 Cr. 832(KMK)

                                       CONFERENCE

NICHOLAS TARTAGLIONE,

           Defendant.
------------------------------------x
                                       United States Courthouse
                                       White Plains, N.Y.
                                       June 7, 2018
                                       4:40 p.m.
```

**Before:  THE HONORABLE KENNETH M. KARAS, District Judge**

**APPEARANCES**

GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
**MAURENE RYAN COMEY**
    Assistant United States Attorney

BARKET, EPSTEIN & KEARON, LLP
    Attorneys for Defendant
BRUCE BARKET
AIDA LEISENRING

MARK DeMARCO
    Attorney for Defendant

1  THE DEPUTY CLERK: The Honorable Kenneth M. Karas
2  presiding.
3      United States of America against Nicholas
4  Tartaglione, 16 Cr. 832.
5      Counsel, please state your appearances.
6      MS. COMEY: Good afternoon, your Honor. Maurene
7  Comey for the government.
8      THE COURT: Good afternoon, Ms. Comey.
9      MR. BARKET: Good afternoon. Bruce Barket for
10 Mr. Taglione.
11     MS. LEISENRING: Aida Leisenring for Mr. Tartaglione.
12 Good morning. Sorry. Good afternoon.
13     THE COURT: It's morning somewhere.
14     MR. DeMARCO: Mark DeMarco for Mr. Tartaglione. Good
15 afternoon, your Honor.
16     THE COURT: Good afternoon.
17     So apologies. I think you gathered we were in the
18 middle of a trial that was supposed to finish two weeks ago.
19 So we have a jury that's in double overtime. So I do
20 apologize. I didn't think it was going to be that bad.
21     So any updates, Ms. Comey?
22     MS. COMEY: Just briefly, your Honor.
23     Since we were last before your Honor, defense counsel
24 sent a letter with certain follow-up questions about our prior
25 disclosure. The government responded within a few days

1  answering all of the questions.  We have not heard back.
2              We are still waiting on a renewed mitigation
3  submission, which I understand will be forthcoming in short
4  order.  Otherwise, no updates.
5              THE COURT:  Okay.
6              Mr. Barket, any updates from your perspective?
7              MR. BARKET:  No.
8              THE COURT:  Okay.
9              So I've reviewed the materials that the government
10  has submitted.  I do have some questions.  And I suppose maybe
11  the best thing to do is for now to do those ex-parte.  And
12  maybe we could even do them in the conference room on the other
13  side of the wall there.
14              If that works for you, Christina.
15              My broader concern is a concern that I know that
16  counsel for Mr. Tartaglione share, which is that I've read, I
17  don't know, I don't think it's an exaggeration to say hundreds
18  of pages of notes.  And some were, helpfully, typed.
19              And I thank you for that, Ms. Comey.
20              And, of course, as I'm going through these, as I
21  said, there are some things in there that caught my eye as
22  things that even I, without knowing the intricate details of
23  the defense, thought that, at a minimum, the government would
24  have to explain why some of these things wouldn't have to be
25  turned over, and then, of course, as I'm reading through other

1  pieces of the notes, I don't know.

2  And that's why, of course, having the Court review
3  this stuff ex-parte is only going to catch things at either
4  extreme.  So that if there are notes that have nothing to do
5  with Mr. Tartaglione, even I get that that may not be Brady.
6  Doesn't mean it couldn't be Giglio.  But to take an extreme
7  example, you know, there are certainly things in there that are
8  obviously not Brady and there are some things in there that,
9  like I said, are certainly questionable.  But I don't have the
10 same strategic eye that counsel do for Mr. Tartaglione.

11 And I want you to know I went back and read -- there
12 was a decision by the judge in the Oklahoma City bombing case,
13 Timothy McVeigh, who specifically talked about how, at the end
14 of the day, it's a bad idea.  In that case, it was actually the
15 defense that had asked the judge to review in camera the
16 discovery, and the judge was sort of saying, you know what?
17 This is not what judges do.  It's the prosecutor's obligation.
18 And there's this presumption that the prosecution will honor
19 its obligation.

20 Now, that's 20-something years ago, and the law has
21 evolved, I think, since then to recognize that the pre-decision
22 process is a critical juncture in the history of any potential
23 capital case.  Plus, in that case, I think the decision had
24 already been made to seek the death penalty, so there was not
25 the same dynamic that there is in this case.

| | |
|---|---|
| 1 | So what I would propose to do, Mr. Barket, if you |
| 2 | would let me inquire of Ms. Comey about some of the -- and it's |
| 3 | not a couple. There's quite a few questions I have. And |
| 4 | depending on the answers I get, we may renew our conversation |
| 5 | that we had earlier about what should be turned over even at |
| 6 | this nascent stage of the case, although it's not the nascent |
| 7 | stage of the review process. And I understand that you all are |
| 8 | feverishly working on the mitigation submission to go to the |
| 9 | Justice Department. |
| 10 | So can we do that? Is that okay, Mr. Barket? |
| 11 | MR. BARKET: Well, I want to chat with other people. |
| 12 | THE COURT: Of course. |
| 13 | MR. BARKET: Because they might have a perspective |
| 14 | that I don't. |
| 15 | THE COURT: Yes. |
| 16 | MR. BARKET: Could I just -- I didn't quite follow. |
| 17 | You're saying there's categories of information, some of which |
| 18 | you thought was clearly Brady? |
| 19 | THE COURT: No. I'm saying the best that a judge can |
| 20 | do in this situation is catch things at the extreme. And I'm |
| 21 | not prepared to say that there are things in the notes that are |
| 22 | clearly Brady. The same reason that I may not be able to have |
| 23 | the nuanced review of what is Brady or what is not Brady. It |
| 24 | cuts both ways. So I may look at something and say that seems |
| 25 | like it could be Brady, but I want to get the perspective of |

|   |   |
|---|---|
| 1 | Ms. Comey, and she could try to explain to me why it's not.  I |
| 2 | may be unpersuaded and say no, this gets turned over, or she |
| 3 | may be able to explain as to why it's not Brady.  But, at the |
| 4 | same time, to your point that you've been making, I don't have |
| 5 | your all view of what could be Brady and I don't have the |
| 6 | benefit of sharing with you the notes saying what do you think |
| 7 | because the sharing with you is precisely what the government |
| 8 | does not want to have happen. |
| 9 | And so, in the first instance, I would like to get |
| 10 | some answers to questions I have for Ms. Comey.  That may be a |
| 11 | better way to sort of assess my comfort level with what it is |
| 12 | that the government is -- where they're drawing the line as to |
| 13 | what's Brady and what's not. |
| 14 | MR. BARKET:  Could we just have a few seconds to |
| 15 | chat? |
| 16 | THE COURT:  Yes.  Of course. |
| 17 | MR. BARKET:  Because I have a few viceral reactions |
| 18 | to it, but let me -- |
| 19 | THE COURT:  I'm sure you do.  Of course. |
| 20 | (Defense counsel conferred) |
| 21 | MR. BARKET:  Judge. |
| 22 | THE COURT:  Yes. |
| 23 | MR. BARKET:  So here's a few thoughts I have. |
| 24 | THE COURT:  Sure. |
| 25 | MR. BARKET:  One is that, and I think this is -- I |

1 hope this isn't too burdensome, but whatever material that you
2 have questions about, or maybe even the material that has been
3 turned over, that somehow that gets marked or tagged as a Court
4 Exhibit or something so, later on, if there's a review process,
5 somebody else can look at it and see what it was that you were
6 examining.
7       THE COURT:  Okay.
8       MR. BARKET:  So that was one thing.
9       The second is that -- I mean, it's kind of a series
10 of thoughts that ended up with -- I've never been asked this
11 question before.
12       THE COURT:  You and me both.  So, right, we're all --
13       MR. BARKET:  As I've gotten older and older and
14 older, you'll find this hard to believe, I'm not quite as
15 impetuous as I was when I was younger.  Just imagine that for a
16 moment.  And so I think I would like to really think about it
17 in terms of do some research on it.
18       THE COURT:  Okay.
19       MR. BARKET:  And maybe in a week submit something, or
20 nothing.
21       THE COURT:  Well, how about this.  Because, to be
22 honest with you, this is not something that I think -- this
23 being my inquiry of Ms. Comey -- is something that can be done
24 in five minutes.
25       MR. BARKET:  Right.

1           THE COURT:  There are a fair number of tagged pages.
2   Now, some of it, there are some themes.  But this is not
3   something that should be rushed.  And I am not saying that
4   because of the hour.  I would be saying the same thing if we
5   were starting the conference at the scheduled time.
6           And the other question for you is not only do you
7   want these things marked for some sort of identification
8   purposes, but whether -- obviously, we'll have a court reporter
9   there, but maybe it makes sense for me to schedule time with
10  Ms. Comey sometime in the course of the next couple of business
11  days and, in the meantime, you can do your research.  And maybe
12  what we do is we have another conference even next week --
13          MR. BARKET:  Yes.
14          THE COURT:  -- where I can report back to you some of
15  the either concerns I continue to have or don't have, you can
16  ^canvass with your colleagues, do some legal research, and then
17  we can go from there.  Does that make sense?
18          MR. BARKET:  Yes.  I think that's correct.
19          I mean, you said you can fairly quickly identify for
20  the government what it is that you have questions about, and
21  that will maybe either make them rethink their position on it,
22  perhaps --
23          THE COURT:  Yes.
24          MR. BARKET:  -- or at least give them a little bit of
25  time to formulate a --

1       THE COURT:  Yes.  That's right.

2       And, also, I may be able to report back to you at
3  least in a way that doesn't compromise what the government's
4  trying to protect at this point, because I don't want to do
5  that without the necessary findings being made, but at least
6  give you some sense of the types of questions I have had and to
7  the extent to which they've been answered in a way that either
8  becomes more problematic for the government or not.

9       MR. BARKET:  And I think you know already that my
10 first reaction is --

11      THE COURT:  I know.

12      MR. BARKET:  -- if it's that close, then --

13      THE COURT:  Yes.  And I don't mean to suggest that it
14 is that close.

15      This gets to your original point.  I don't know, and
16 I know what I don't know, which is I don't know everything.

17      And so all I know about this case is what's in the
18 indictment and then what's in these notes.  Right?  And you
19 know better than I do that even reading notes doesn't give you
20 the flavor for being there, let alone reading the notes in the
21 context of all the other not only discovery you've gotten in
22 this case, but also your own investigative work that you've
23 been doing, which has always been your point.  And I've always
24 been sensitive to that point.

25      So this was always, I thought, a first step, and when

1 I greed to it, it was a lot less material, which is fine.
2 That's not a here nor there, but that's taken some time.
3      MR. BARKET: Okay. I appreciate a little bit of
4 time. It may be just that we're fine with the go ahead and do
5 what you were thinking, but I --
6      THE COURT: I totally get it.
7      So let's do this.
8      So are you around tomorrow or Monday?
9      MS. COMEY: I am not, your Honor. I apologize.
10      THE COURT: That's fine. Are you around Tuesday?
11      MS. COMEY: The best days for me next week would be
12 Wednesday or Friday, your Honor.
13      THE COURT: Okay.
14      MS. COMEY: If you need me to reschedule, I could
15 reschedule.
16      THE COURT: No, I'm not going to make you do that.
17      So why don't we say -- can we do Wednesday at noon
18 for our conference?
19      MR. BARKET: Sure. That's the 13th?
20      THE COURT: That's the 13th, yes. Does that work?
21      MR. BARKET: Yes.
22      THE COURT: And then can you be here Wednesday at 10
23 so we can go over all these materials and stick around for the
24 conference?
25      MS. COMEY: Yes, your Honor.

1 THE COURT: Okay.

2 MR. BARKET: When you say go over, you mean --

3 THE COURT: All the questions I have about the
4 materials.

5 MR. BARKET: That was kind of the -- we'll submit
6 something to the Court before that.

7 THE COURT: No, but so here's what I was going to --
8 I'm sorry. I think we got our wires crossed. What I was going
9 to do is -- you can submit whatever you want, but the only
10 question is whether you want to submit something after I report
11 back to you the extent to which my questions have been answered
12 satisfactorily or not. And that may affect what you want to
13 say in whatever letter. Again, you want to submit something
14 between now and then, that's fine, of course. And then maybe
15 you can do something in addition after I report back to you.

16 MR. BARKET: Okay.

17 THE COURT: So whatever you want to do.

18 MR. DeMARCO: We probably would want to wait for the
19 Court's decision because you may rule in our favor on
20 disclosure, in which case, we may not have to submit anything
21 to your Honor.

22 MR. BARKET: Right. That was the second half. The
23 first part was the process, which is --

24 THE COURT: Oh, so you want to weigh in on whether or
25 not I even do it?

|   |   |
|---|---|
| 1 | MR. BARKET: I thought that was the question. |
| 2 | THE COURT: Oh. I misunderstood. Okay. Fine. Then |
| 3 | I will do nothing with the government. |
| 4 | MR. BARKET: Well, no. We'll submit something |
| 5 | quickly. |
| 6 | THE COURT: Okay. |
| 7 | So keep Wednesday morning open, and we'll see what |
| 8 | counsel wants done. |
| 9 | It may be that you're perfectly fine with what I'm |
| 10 | proposing, in which case, we'll go forward. |
| 11 | It may be that they're not, in which case, I will |
| 12 | hold off until we have a conference. |
| 13 | MR. BARKET: If this was a process that's happened |
| 14 | before with some regularity, then people with more familiarity |
| 15 | with it will fill me in and that would be fine, but I've never |
| 16 | been -- it's a question. |
| 17 | THE COURT: Totally fine. I certainly can't |
| 18 | represent to you that there's anything regular about anything. |
| 19 | I think that this would not happen in a noncapital case. |
| 20 | MR. BARKET: Right. |
| 21 | THE COURT: So. Period. So it's not a normal |
| 22 | course-of-business-thing to do. |
| 23 | MR. BARKET: Brady issues come up. |
| 24 | THE COURT: Right, but not the Court -- the |
| 25 | prosecution knows its obligation and either they say we've |

satisfied it and there is no Brady or there is Brady and we've turned it over, but you typically don't have a judge weighing in, taking a look at all the government's files and saying, no, turn this over, turn that over.

It's a trial right in any event, so sometimes of course Brady comes up. And sometimes when stuff gets turned over late, there's a claim that this is too late for us to use at trial and so on and so forth. We don't have a trial date, so that's not the issue.

The issue is the extent to which you're entitled to have discovery of the government's notes or things that they haven't turned over in Rule 16 discovery precisely because it's a capital case and, among other things, you're working on a mitigation submission to DOJ.

But in the other hundred-some-odd criminal cases we have, this is not going on, and there's nothing wrong with that.

MR. BARKET: We'll submit something probably pretty brief.

THE COURT: That's fine.

MR. BARKET: Relatively quickly. Certainly before Wednesday morning.

THE COURT: Okay. All right.

So, in the meantime, we're back on for a conference next Wednesday, June 13, at noon.

|     |                                                              |
| --- | ------------------------------------------------------------ |
| 1   | Any objection to excluding time until then?                  |
| 2   | MR. BARKET: No.                                              |
| 3   | THE COURT: Okay. Then I'll prospectively exclude             |
| 4   | time from today until June 13 finding it's in the interest of |
| 5   | justice to do so. That finding is based on the fact that there |
| 6   | still needs to be more work done on the question of the      |
| 7   | government's obligation to turn over notes that otherwise it |
| 8   | has not turned over in Rule 16 discovery. I find that the    |
| 9   | interests of justice from this exclusion outweigh            |
| 10  | Mr. Tartaglione's and the public's interest in a speedy trial. |
| 11  | That finding is made pursuant to 18 U.S.C. Section           |
| 12  | 3161(h)(7)(A).                                               |
| 13  | Anything else?                                               |
| 14  | MR. BARKET: No.                                              |
| 15  | THE COURT: How we doing on prison conditions?                |
| 16  | MR. BARKET: Oh.                                              |
| 17  | THE COURT: Your client gave a casi casa.                     |
| 18  | MR. BARKET: Well, as I said to Ms. Comey, I have a           |
| 19  | little kid. So I'm at the pool and they have those buckets   |
| 20  | that get filled with water and then dump out.                |
| 21  | THE COURT: Okay.                                             |
| 22  | MR. BARKET: And so, yes, we haven't dumped out               |
| 23  | some -- I haven't gained a shy gene since the last time we met. |
| 24  | So there's some issues that we've tried to resolve internally |
| 25  | and a few things, so nothing that we're going to dump on the |

1   Court right now.
2   THE COURT: Okay. Well, if that's necessary, of
3   course, you'll let me know.
4   MR. BARKET: We will.
5   THE COURT: Anything else, Ms. Comey, from your
6   perspective?
7   MS. COMEY: No. Thank you, your Honor.
8   THE COURT: Again, I'm sorry to have kept you all
9   waiting. Enjoy the rest of the afternoon and evening. Take
10   care.
11   Thank you, Marshals.
12                        - - - -