UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------

In re: Order for Historical Cell Site
Information for the Cellphone Assigned
Call Numbers ███████████████
████ ████████████ ████████████
614-813-1748, 914-355-1332, 914-999-
0711, ████████████████████████
USAO Reference No. 2016R00670

**APPLICATION**

16 Mag. 4103

----------------------------------------

### Application for Order Requiring Disclosure
### of Historical Cell Site Information

Maurene Comey affirms as follows:

1.      I am an Assistant United States Attorney in the Southern District of New York and, as such, I am familiar with this matter.

2.      The Government is seeking three orders pursuant to the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, to require AT&T Wireless, Verizon Wireless, and MetroPCS/T-Mobile (the "Service Providers"), to provide all available historical cell site location information reflecting the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the cellphone assigned certain phone numbers, and the approximate range of the target phone from the cell towers during the communication (PCM/RTT data), for the period from January 1, 2015 through the date of the Orders, as well as all available toll records for the communications (the "Historical Cell Site Information"), in connection with an investigation by the Federal Bureau of Investigation and the New York State Police (the "Investigating Agencies") into violations of 18 U.S.C. § 1959(a)(1) (the "Subject Offenses"). Specifically, the phone numbers receiving service from ████████████████████████

████████████████████████████████████████████

█████████████████ The phone numbers receiving service from Verizon Wireless are ████████████

S_NT_001552

SENSITIVE MATERIAL

██████████████████████ 614-813-1748 (the "First Nicholas Tartaglione Phone"), 914-355-1332 (the "Second Nicholas Tartaglione Phone"), 914-999-0711 (the "Third Nicholas Tartaglione Phone"), ███████████████████████ The phone number receiving service from MetroPCS/T-Mobile is ████████████████████ Collectively, this Application refers to all nine phones as the "Target Cellphones."

3.      The authority for this application is found in 18 U.S.C. §§ 2703(c)(1), which authorizes a court of competent jurisdiction to require any electronic communication service provider (which includes a cellular telephone service provider[1]) to disclose any "record or other information pertaining to a subscriber" other than the "contents of communications," when the government obtains, *inter alia*, an order under 18 U.S.C. § 2703(d). *See* 18 U.S.C. § 2703(c)(1)(A). A § 2703(d) order requires a showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation. 18 U.S.C. § 2703(d).[2] As specified in 18 U.S.C. § 2711(3), this Court is a court of competent

---

[1] *See* 18 U.S.C. § 2711(1) (incorporating by cross-reference statutory definitions set forth in 18 U.S.C. § 2510); 18 U.S.C. § 2510(15) (defining "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications").

[2] A warrant is not required to obtain historical cell site information. Individuals do not have a reasonable expectation of privacy in historical cell site information because individuals voluntarily convey that information to third-party service providers. *See, e.g., United States v. Davis*, 785 F. 3d 498, 511-13 (11th Cir. 2015) (en banc); *In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600, 614-15 (5th Cir. 2013); *United States v. Caraballo*, 963 F. Supp. 2d 341, 359-60 (D. Vt. 2013); *United States v. Graham*, 846 F. Supp. 2d 384, 403 (D. Md. 2012); *see also United States v. Pascual*, 502 F. App'x 75, 80 & n.6 (2d Cir. 2012), *cert. denied,* 134 S. Ct. 231 (2013) ("general principles" of third-party doctrine "point[ ]" toward this conclusion regarding cell-site records). *But see United States v. Graham*, 796 F.3d 332 (4th Cir. Aug. 5, 2015), *rehearing en banc granted* __ Fed. App'x __, 2015 WL 6531272 (4th Cir. Oct. 28, 2015) (holding that a warrant is required for historical cell-site records). Moreover, because

2

2016-06-24

S_NT_001553

SENSITIVE MATERIAL

jurisdiction under the Stored Communications Act because it has jurisdiction over the Subject Offenses.

4.    As set forth below, there are specific and articulable facts showing that there are reasonable grounds to believe that the information requested is relevant and material to an ongoing investigation of the Subject Offenses:

a.    The Investigating Agencies are conducting an investigation into NICHOLAS TARTAGLIONE, ███████████████████████ and others known and unknown (the "TARGET SUBJECTS") who are believed to be participants in the kidnapping and/or murder in aid of racketeering activity of four males ("Victim-1," "Victim-2," "Victim-3," and "Victim-4," collectively, the "Victims"), in violation of Title 18, United States Code, Section 1959(a)(1), among other statutes (the "TARGET OFFENSES").

b.    I know from speaking with an NYSP Investigator that the Victims were reported missing after they all drove together to Chester, New York on April 11, 2016.[3] That afternoon, surveillance videos captured the Victims driving a Chevy Equinox (the "Victims' Vehicle") to a parking lot and parking in the vicinity of 69 Brookside Avenue, Chester, New York. Surveillance videos further captured the Victims exiting their vehicle and entering a bar/restaurant at that address called the Likquid Lounge, which is owned by ███████

---

historical cell site information does not enable law enforcement to conduct live monitoring of a person's location within private spaces such as "the interior of the [person's] home," it is not comparable to prospective precision location information, for which a warrant is arguably required. *See In re Application of U.S. for Order Directing Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 312-15 (3d Cir. 2010).

[3] At the time of their disappearance, the Victims all resided in or around Orange County, New York.

3

2016-06-24

SENSITIVE MATERIAL

███████████ After the Victims entered the Likquid Lounge, surveillance video captured an individual matching the description of NICHOLAS TARTAGLIONE driving a black Ford Explorer (the "TARGET VEHICLE")[4] into the Likquid Lounge parking lot, parking the TARGET VEHICLE, and entering the Likquid Lounge. Approximately one hour later, surveillance video captured the same individual believed to be NICHOLAS TARTAGLIONE exiting the Likquid Lounge, entering the TARGET VEHICLE, turning the TARGET VEHICLE around, backing into the same parking spot so that the trunk of the TARGET VEHICLE faced the entrance to the Likquid Lounge, opening the trunk of the TARGET VEHICLE, and reentering the Likquid Lounge. Subsequently, surveillance video captured the same individual believed to be NICHOLAS TARTAGLIONE, Victim-3, and an unidentified individual exiting the Likquid Lounge, walking to the open trunk of the TARGET VEHICLE, and looking inside it before reentering the Likquid Lound. Approximately thirty minutes later at approximately 6:08 p.m., the same individual believed to be NICHOLAS TARTAGLIONE and the same unidentified individual exited the Likquid Lounge again while carrying an unidentified large, heavy object.[5] The individual believed to be NICHOLAS TARTAGLIONE and the unidentified individual then placed the unidentified object into the trunk of the TARGET VEHICLE. Surveillance video further shows that the TARGET VEHICLE physically dropped lower with the weight of the unidentified object. Shortly after loading the TARGET VEHICLE, the individual believed to be NICHOLAS TARTAGLIONE drove it out of the Likquid Lounge

---

[4] NICHOLAS TARTAGLIONE is the registered owner of a black Ford Explorer.

[5] The object was obstructed from view on the surveillance video by other parked vehicles and could not be identified.

4

2016-06-24

S_NT_001555

SENSITIVE MATERIAL

parking lot. None of the Victims has been seen or heard from since they last entered the Likquid Lounge on April 11, 2016.

c.    On April 15, 2016, the Victims were reported missing. On April 16, 2016, the Victims' Vehicle was recovered in the same parking spot where the Victims parked it on April 11, 2016. ████████████████████████████████████████

d.    On prior occasions in relation to other investigations, local police officers in Chester, New York have previously requested surveillance video from inside the Likquid Lounge, which the management has voluntarily provided. Based on this prior cooperation, on or about April 16, 2016, a local police officer investigating the Victims' disappearance entered the Likquid Lounge to request any surveillance video from inside the Likquid Lounge taken on April 11, 2016. In response, however, an unidentified employee stated that the video surveillance system was broken and escorted the officer off the premises. As a result, the only available surveillance footage of the Likquid Lounge from April 11, 2016 is the external footage described above, which was provided by neighboring establishments. On or about May 6, 2016, the Likquid Lounge closed for renovations.

e.    I know from speaking with an Investigator of the NYSP that two of the Victims and two of the TARGET SUBJECTS have previously been identified engaging in activity that appears related to drug trafficking. Specifically, as early as April 8, 2011, Victim-1 and Victim-2, who reside in the Middletown, New York area, were stopped for speeding while heading southbound in Sulfur, Louisiana in a rental vehicle with $126,000 cash. More recently, in or around December 2015 and January 2016, ██████████████████████ and Victim-1 checked into the Residence Inn in Houston, Texas. Subsequently, on February 9, 2016, Victim-1

5

2016-06-24

S_NT_001556

SENSITIVE MATERIAL

and Victim-2 were stopped for speeding while heading southbound in Mississippi in a Nissan Armada registered to NICHOLAS TARTAGLIONE. That same day, Victim-1 and Victim-2 checked into the Residence Inn in Houston, Texas, checking out the next morning. The next day, February 10, 2016, Victim-1 and Victim-2 were again stopped for speeding in Houston, Texas. During the February 10 stop, law enforcement found a hollowed out tire inside the vehicle with Victim-1 and Victim-2. The tire was so tightly secured to the undercarriage of the vehicle that law enforcement required the assistance of a mechanic to remove the tire from the Nissan Armada.

f.

On March 22, 2016, Victim-1 departed from JFK airport to

6

2016-06-24

S_NT_001557

SENSITIVE MATERIAL

Mexico. Victim-1 returned to New York from Mexico April 9, 2016, two days before the Victims were last seen alive at the Likquid Lounge.[6]

        g.     I know from speaking with an Investigator from the NYSP that prior to his disappearance, Victim-1 worked for ███████████████████████████ I have further learned from reviewing phone records and from conversations with an Investigator from the NYPS that the ████████████ and the Victim-1 Phone were in regular contact in the months preceding Victim-1's disappearance. Specifically, the two had approximately 268 contacts in January 2016, 117 contacts in February 2016, and 161 contacts in March 2016. Additionally, between April 1, 2016 and April 11, 2016, the ███████████ and the Victim-1 Phone had 27 contacts. In particular, on April 10, 2016 – the day after Victim-1 returned from Mexico and the day before Victim-1 disappeared -- the ████████████ made an outgoing call to Victim-1's phone at 9:13 a.m. and a second outgoing call to Victim-1's phone at 10:24 a.m., which lasted for approximately 28 minutes. Immediately after finishing the second call, the ████████████ made an outgoing call to the Second Nicholas Tartaglione Phone at 10:53 a.m., which lasted for approximately 10 minutes. The ████████████ made another outgoing call to the Victim-1 Phone at 8:50 p.m. on April 10, 2016 and a final outgoing call to the Victim-1 Phone at 12:47 p.m. on April 11, 2016. Subsequently, the ████████████ made two outgoing calls to the Second Nicholas Tartaglione Phone at 2:44 p.m. and 5:41 p.m. on April 11, 2016.

---

[6] The Government is continuing to investigate the nature of these trips. ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████

7

2016-06-24

S_NT_001558

SENSITIVE MATERIAL

The ▊▊▊▊▊ has not had any contact with the Victim-1 Phone since that final call on April 11, 2016 at 12:47 p.m. This period of no contact began several days before any of the Victims were reported missing on April 15, 2016. Given ▊▊▊▊▊ prior pattern of frequent contact with his employee, Victim-1, which stopped on the day of Victim-1's disappearance, coinciding with contact between ▊▊▊▊ and NICHOLAS TARTAGLIONE, I respectfully submit there is reason to believe that ▊▊▊▊ conspired with TARTAGLIONE in the kidnapping and/or murder of Vicitm-1 and that ▊▊▊▊ knew that Victim-1 would not be able to answer the Vicitm-1 Phone after April 11, 2016.

h.    I know from speaking with an Investigator from the NYSP and from reviewing law enforcement reports that since at least in or about 2015, the NYSP has been investigating potential drug trafficking and money laundering activity by NICHOLAS TARTAGLIONE. The investigation revealed that NICHOLAS TARTAGLIONE received multiple steroid deliveries to his residence in Carmel, New York, increasing in quantity from 2013 through in or about 2015. Additionally, investigators learned that NICHOLAS TARTAGLIONE owns multiple luxury vehicles and regularly makes a large amount of cash deposits at various ATMs as well as cash used at Connecticut casinos, totaling tens of thousands of dollars in cash from unknown sources. NICHOLAS TARTAGLIONE is presently on disability and owns a pet grooming store, the reported income from which does not explain the source of these various cash deposits. Additionally, during the course of this investigation, the NYSP conducted two controlled purchases of anabolic steroids from NICHOLAS TARTAGLIONE:

i.    ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

8

2016-06-24

S_NT_001559

SENSITIVE MATERIAL



9

2016-06-24

S_NT_001560

SENSITIVE MATERIAL



i.      Based on the forgoing, I respectfully submit that there is reason to believe that the TARGET SUBJECTS engaged in the TARGET OFFENSES by participating in the murder and/or kidnapping of the Victims in order to maintain or increase position in an ongoing drug trafficking enterprise on or about April 11, 2016 in and around the Likquid Lounge, which is located at 69 Brookside Avenue, Chester, New York.

10

2016-06-24

SENSITIVE MATERIAL

j.      I know from speaking with an Investigator of the NYSP that following the Victims' disappearance, ███████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ ██████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

k.      I know from speaking with an Investigator of the NYSP that ████████

████████████████████████ ███████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████ ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████

l.      I know from speaking with an Investigator of the NYSP that ████████████ ████████████████ previously provided the phone number associated with the ████████ ████████████ during the course of an arrest by the Chester Police Department. ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

m.      As described above, the First Nicholas Tartaglione Phone was used by law enforcement to facilitate controlled purchases of steroids from NICHOLAS TARTAGLIONE.

11

2016-06-24

S_NT_001562

SENSITIVE MATERIAL

Additionally, NICHOLAS TARTAGLIONE previously provided the number for the Second Nicholas Tartaglione Phone ███████████████████████████████████████████ ██████████████████████████████████████ NICHOLAS TARTAGLIONE also provided the Third Nicholas Tartaglione Phone to a New York State Trooper with whom he spoke on the phone regarding a traffic stop involving one of his vehicles on or about June 23, 2016.

n.      Based on the foregoing, I respectfully submit that there is reason to believe that the Target Cellphones were used by either the Victims or the TARGET SUBJECTS at the time of the Victims' kidnapping and/or murder on or about April 11, 2016 as well as during their participation in drug trafficking activity over the preceding months and years. Furthermore, I respectfully submit that the requested timeframe from January 1, 2015 through the present will allow law enforcement to establish patterns of movement for the Victims and the TARGET SUBJECTS over an extended period of time, which will aid law enforcement in identifying deviations from those patterns on and around April 11, 2016. Finally, I respectfully submit that the requested historical cell site information following April 11, 2016 will assist law enforcement in locating the Victims and will provide evidence of both the TARGET SUBJECTS' attempts to conceal the Victims and their continued participation in drug trafficking activity.

o.      I know from speaking with an Investigator of the NYSP that AT&T provides service to the Victim-1 Phone, the Victim-3 Phone, and the ████████████████████, that Verizon Wireless provides service to the First Nicholas Tartaglione Phone, the Second

12

2016-06-24

S_NT_001563

SENSITIVE MATERIAL

Nicholas Tartaglione Phone, the Third Nicholas Tartaglione Phone, the ███████████ and the Victim-2 Phone; and that MetroPCS/T-Mobile provides service to the Victim-4 Phone.

5.      When the Government obtains records or information under § 2703(d), it is not required to notify the subscriber or customer. 18 U.S.C. § 2703(c)(3). Additionally, the Government may obtain an order precluding the provider from notifying the subscriber or any other third-party of the order obtained, for such period as the Court deems appropriate, where there is reason to believe that such notification will result in endangering the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, or intimidation of potential witnesses, or will otherwise seriously jeopardize the investigation. 18 U.S.C. § 2705(b). Accordingly, in light of the confidential nature of the continuing criminal investigation and the adverse consequences expected in the event of premature notification, the Government respectfully requests that the Court direct the Service Providers not to notify the Subscriber or any other person of the Orders sought herein for a period of 180 days, subject to extension upon application to the Court, if necessary.

6.      For similar reasons, the Government respectfully requests that the proposed Orders and this Application be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to serve these Orders on the Service Providers; provide copies of the Orders or the supporting Application as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

2016-06-24

S_NT_001564

SENSITIVE MATERIAL

7.    Except as may be set forth above, no prior request for the relief requested herein has been made.

Dated: White Plains, New York
　　　June 24, 2016

　　　　　　　　　　　　　　　　　　　　Maurene Comey
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　　914-993-1933

14

2016-06-24

S_NT_001565

SENSITIVE MATERIAL