200304tartaglioneC    Conference

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   UNITED STATES OF AMERICA
3
              v.                        16 Cr. 832 KMK
4
   NICHOLAS TARTAGLIONE,
5
              Defendant.
6
   ------------------------------x
7                                    United States Courthouse
                                     White Plains, N.Y.
8                                    March 4, 2020
                                     2:10 p.m.
9

10  Before:

11            THE HONORABLE KENNETH M. KARAS,

12                                         District Judge

13                      APPEARANCES

14  GEOFFREY S. BERMAN
        United States Attorney for the
15      Southern District of New York
   MAURENE COMEY and JASON SWERGOLD
16      Assistant United States Attorneys

17  BRUCE BARKET
   AIDA LEISENRING
18  ANTHONY L. RICCO
   JOHN DIAZ
19  MICHAEL BACHRACH and
   BRUCE KOFFSKY
20    Attorneys for Defendant Nicholas Tartaglione

21  ALSO PRESENT:  BOBBI C. STERNHEIM, Curcio Counsel
                   DAVID RUHNKE, Resource Counsel
22                 TANYA GREENE, Resource Counsel

23

24

25

200304tartaglioneC    Conference

1           (In open court)

2           THE DEPUTY CLERK:  In the matter of the United States

3  of America v. Nicholas Tartaglione.

4           Counsel, please state your appearances for the

5  record.

6           MR. SWERGOLD:  Good afternoon, your Honor.  Jason

7  Swergold and Maurene Comey for the government.  We also have

8  Assistant US Attorneys Margery Feinzig with respect to the

9  *Curcio* issue and AUSA Thomas John Wright with respect to the

10  contraband cellphone privilege issue.  He's the wall assistant

11  on that, your Honor.

12           THE COURT:  I understand.

13           MR. SWERGOLD:  Thanks.

14           THE COURT:  Good afternoon to you all.

15           MS. COMEY:  Good afternoon, your Honor.

16           MR. BARKET:  I think they're just trying to catch up

17  to our numbers.

18           THE COURT:  Yes.

19           MR. BARKET:  Bruce Barket and Aida Leisenring for

20  Mr. Tartaglione.

21           MR. RICCO:  Anthony Ricco, a little under the

22  weather, but here.  And I just want to note at the back table

23  we have Resource Counsel David Ruhnke, and we also have

24  Resource Counsel Tanya Greene, who has been with the case since

25  the beginning, but I think this may be her first appearance

200304tartaglioneC    Conference

1  here.

2          THE COURT:  Welcome.

3          MR. RICCO:  And of course, *Curcio* counsel Bobbi

4  Sternheim.

5          MS. STERNHEIM:  Good afternoon.

6          MR. DIAZ:  John Diaz appearing for Nicholas

7  Tartaglione.

8          MR. BACHRACH:  Michael Bachrach, also under the

9  weather, here for the defendant.

10          MR. KOFFSKY:  Good afternoon, your Honor.  Bruce

11  Koffsky.

12          THE COURT:  Not under the weather?

13          MR. KOFFSKY:  Not.

14          THE COURT:  Not yet.

15          MR. KOFFSKY:  Fit as a fiddle.

16          THE COURT:  Under the weather has a whole new meaning

17  these days.  Good afternoon.  Please be seated, everybody.

18          I don't even know where to begin.  So I guess we'll

19  just see if there's any plain vanilla updates from the

20  government and go from there.

21          MR. SWERGOLD:  If you're looking for the plain

22  vanilla updates, I guess I would say, recognizing the

23  outstanding *Curcio* issue and that everything is being held in

24  abeyance, for the record, the government is requesting a trial

25  and we request a trial date.

200304tartaglioneC    Conference

1              Putting that aside, we've asked AUSA Wright to be

2     here because although we do not know the substance of it, we

3     understand there may be some dispute regarding what, if any,

4     portions of the contraband cellphone can be shared with the

5     trial team, so there's that issue.

6              There's obviously the *Curcio* issue, and that's, from

7     the government's perspective, those are the only items we're

8     aware of that we need to affirmatively raise.

9              THE COURT:  So there's been no discovery developments

10    or anything of the kind?

11             MR. SWERGOLD:  Nothing related to -- I can't remember

12    if we produced anything after the last conference.  Certainly,

13    within the last two months, there's been some discovery

14    produced with respect to penalty phase requests.  Nothing with

15    respect to any guilt phase evidence.

16             THE COURT:  Okay.  All right.  Thank you.

17             Mr. Barket.

18             MR. BARKET:  Ours aren't vanilla.

19             THE COURT:  Sorry?

20             Then turning to the other issues, I guess there

21    was -- I think the most recent letter, Mr. Ricco, was from you,

22    where you had thrown out the possibility of allowing parties to

23    brief the *Curcio* issues.

24             I know Ms. Feinzig had, in her submission, talked

25    about maybe submitting some proposed questions, which I sort of

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

200304tartaglioneC    Conference

1    took to be in the category of briefing or basically written

2    submissions that would address the contours of the hearing,

3    which I think makes sense, but only if everybody is willing to

4    do it expeditiously.  I don't know if you want to add anything

5    to that.

6            And then, Mr. Barket, of course, I'll be happy to

7    entertain your response.

8            MR. RICCO:  Judge, nothing to add to it.  We've been

9    preparing for today, so we could have the submissions to the

10   Court very expeditiously.

11           THE COURT:  Okay.  All right.  I assume, Ms. Feinzig,

12   you can do the same.

13           MS. FEINZIG:  Yes, your Honor.

14           THE COURT:  Okay.

15           Mr. Barket.

16           MR. BARKET:  Same for us.

17           THE COURT:  So is a week enough time to submit

18   whatever people want to submit, whether it's legal stuff on the

19   contours of this proposed questions?  Does that give everybody

20   enough time?

21           MR. RICCO:  Yes.

22           THE COURT:  I don't want people to be reckless,

23   either.  I don't want speed to be at the expense of

24   thoroughness.

25           MR. BARKET:  In terms of questions, a week is plenty

200304tartaglioneC    Conference

1    of time.

2            THE COURT:  Okay.

3            MR. BARKET:  Can I suggest that we perhaps set a --

4    today is Wednesday -- so an interim date of Monday where

5    everybody can kind of swap proposed questions to each other?

6            THE COURT:  Sure.

7            MR. BARKET:  And then hopefully, settle in on some

8    rough set of things, questions the Court will actually ask.

9            THE COURT:  Okay.  And then, to the extent, and I

10   don't know, Ms. Feinzig, your letter wasn't clear on this

11   because you did not have Mr. Ricco's letter at the time you

12   wrote yours, whether a week is enough time to the extent you

13   want to add legal analysis to whatever it is he's going to be

14   proposing.

15           I'm looking at you, Mr. Ricco, and you, Ms. Feinzig.

16           MS. FEINZIG:  I think it's enough time for the

17   government, your Honor.

18           MR. RICCO:  That's enough time, Judge.

19           THE COURT:  All right.  And I think what would be

20   helpful in your letter is a suggestion as to how long you think

21   this might take.  I don't think it should take more than a day.

22   I think it should take less than that, but I'm not going to

23   schedule a bunch of other cases, just because I want to be

24   optimistic that we'll get it done in a couple hours.  So the

25   ERISA world will have to wait for their cases to be heard.

200304tartaglioneC    Conference

1              MR. RICCO:  My sense is the inquiry that needs to

2      happen will take a day.

3              THE COURT:  Okay.  I figured a day would be what we

4      would block out.  I don't think we would need more than that.

5              MR. BARKET:  No, Judge.

6              MR. RICCO:  Okay.

7              THE COURT:  All right.  Other issues people want to

8      raise?

9              MR. WRIGHT:  With respect to the wall privilege

10     review, as your Honor I believe is aware, there was a

11     contraband cellphone that was seized that was forensically

12     searched by the Bureau of Prisons, resulting in two extraction

13     reports: one that related to the cellphone itself, one that

14     related to a SIM card in the cellphone.

15             Those reports are each of approximately 20 pages.

16     The government provided them to all counsel at the end of

17     January.  And I asked counsel at that time to convey whether

18     they intended to claim any privilege over any of it.

19             I understand, your Honor, that Mr. Barket views that

20     there may be a privilege that he wishes to assert here on

21     behalf of his client.  The government's view, your Honor, is

22     that there is nothing here over which a privilege could be

23     asserted, with the exception of, quite literally, nine text

24     messages that appear in the extraction report for the SIM card.

25             I am not assigned to this case in its substance.  I'm

200304tartaglioneC    Conference

1    not in a position to assess whether or not those are

2    privileged.  They do not appear facially to be of a nature of a

3    communication that could be, but I defer to counsel if there's

4    a privilege they wish to assert.

5            With the exception of that, your Honor, there simply

6    is no communication in these reports that could possibly be

7    privileged.  There is an issue that was raised, I think fairly,

8    by Mr. Barket, and that is that the extraction reports refer to

9    a number of files that exist on the cellphone and the SIM card.

10           After speaking with people in the BOP, as well as our

11   own forensic analysts, it appears that these are files that are

12   not reflective of user activity, but rather system files that

13   come with any kind of computer or any chip or processing unit

14   of a computer in order to allow it to work.  We are, however,

15   taking the steps to acquire the cellphone.  It's now in New

16   York.  It is available if counsel would like to look at it.

17           With that said, I don't think that there's any reason

18   why these two extraction reports, which do capture all of the

19   data on the phones that can be rendered into plain English with

20   dates and times or numbers, communications of which there are

21   just nine text messages, I don't think there's any assertion of

22   privilege that could lie there.  And if Mr. Barket thinks

23   otherwise, I would ask him to assert the privilege now.

24           THE COURT:  So with respect to these two extraction

25   reports as you're calling them, I obviously haven't seen them,

200304tartaglioneC    Conference

1   so what's on them?  I gather there are nine -- is it separate

2   text communications or a total of nine communications?

3               MR. WRIGHT:  There are, on the SIM cards report,

4   which is approximately 20 pages long, there are nine text

5   messages, as in one text from a user to the phone or from the

6   phone to a user, that's one text of which there are nine.

7   There are then records of contacts on the phone; calls in and

8   out, which, I think, again, by their nature, are not something

9   over which privilege could be asserted.

10               THE COURT:  Uh-huh.

11               MR. WRIGHT:  And for that reason, I think it would be

12   productive, and I think this exercise is at its natural end,

13   for counsel to assert a privilege if they see one, and if they

14   do, we'll respond and argue to the Court.

15               THE COURT:  Mr. Barket.

16               MR. BARKET:  Simple from my perspective, Judge.  I

17   want to see the whole before I articulate a position on the

18   part.  So I haven't seen the report.  I've seen the text

19   messages.  I want to see the phones and the files, the system

20   files, there's a dozens, I think, of -- what was the phrase you

21   used to describe those?

22               THE COURT:  System files.

23               MR. WRIGHT:  -- system files, your Honor, in the

24   sense they're not reflective --

25               THE COURT:  -- of the usage of the phone.

200304tartaglioneC    Conference

1              MR. BARKET:  Our expert looked at that and said I

2      can't tell from looking at this whether they're simply system

3      files or they represent substance that can be extracted, so in

4      other words, whether or not there could be text messages.  And

5      we'd like to look at the phone and the SIM card.  And at the

6      end of that, we'll have seen the whole and I can articulate a

7      position as to the part, which is the reports that they want to

8      hand over.

9              MR. WRIGHT:  As I said, your Honor, we're happy to do

10     that.  We've taken the steps.  We have the phone, which I

11     confirmed earlier today.  I'm happy to have a forensic analyst

12     on behalf of the defense analyze it in the presence of our own

13     experts and staff.

14              With that said, there is absolutely no bearing

15     whatsoever of what those system files are with respect to an

16     assertion of any privilege over these reports.  As I had

17     posited to counsel in our discussion of the issue, there could

18     be a recording that is hiding amidst these files, perhaps,

19     let's hypothesize, that is a recording of a literal

20     conversation between the defendant and his counsel in which

21     there is a request for legal advice that is provided regarding

22     the heart of this case.  If that were the case, there's still

23     nothing about these reports that would be privileged since they

24     do not in any way betray anything about these files other than

25     a file name that is incomprehensible to any lay or expert --

200304tartaglioneC    Conference

 1  layperson or expert on the issue.

 2          So I would like to make the extraction reports

 3  available to the government --

 4          THE COURT:  Except that one of the reports contains

 5  the substance of the text messages, right?

 6          MR. WRIGHT:  That's correct, your Honor.

 7          THE COURT:  Yes.

 8          MR. WRIGHT:  And if counsel is prepared to assert a

 9  privilege over those texts, there's certainly no access to

10  additional material that I think bears on those texts.  If they

11  are a request or a provision of legal advice in some way that I

12  don't perceive, assert a privilege and we'll respond to it.

13          THE COURT:  So the proposal is to turn over the two

14  extraction reports, which your point is, even if there's,

15  somewhere buried in the phone, some conversation, you're not

16  turning over the phone itself to the prosecution team; you're

17  turning over the extraction reports and we'll have a

18  conversation about the text messages.

19          So either the whole report gets turned over or a

20  redacted version that takes out the text messages will get

21  turned over, right?

22          MR. WRIGHT:  And your Honor, again, if counsel has a

23  view that these text messages --

24          THE COURT:  No, I understand that.  I'm saying,

25  that's what we're left with, is either both reports in their

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

200304tartaglioneC    Conference

1   entirety get turned over, or one report that has the text

2   messages may get redacted, but we'll wait and see what the

3   privilege assertion is.

4            MR. WRIGHT:  Precisely.

5            THE COURT:  Okay.

6            Mr. Ricco.

7            MR. RICCO:  Judge, on this issue, I think the prudent

8   thing is reflected in Mr. Barket's request.  I've had an

9   opportunity -- Mr. Barket has used the word "our expert."  I

10  don't know who that person is.  But the defendant services

11  computer litigation support unit, which assists us in capital

12  trials, I've had the occasion to discuss this issue with them,

13  and they have given me a program called Cellbright.  And that

14  program will oftentimes reveal text messages that are in those

15  hidden files, that it does have it, that is not unreasonable to

16  think that there may be something in them.

17           THE COURT:  Okay.

18           MR. RICCO:  So I can understand why one would be

19  reluctant to weigh-in on the issue of privilege without having

20  an opportunity --

21           THE COURT:  It would just be a question of

22  weighing-in on what's in the extraction reports.  The fact that

23  there might be other data that could be extracted from the

24  phone is why precisely the phone should be made available to

25  you and to others and their experts.

200304tartaglioneC   Conference

1          MR. RICCO:  I don't disagree with that.

2          THE COURT:  That's all I'm saying.

3          MR. RICCO:  I don't know -- I didn't -- I'm not aware

4  of the context of those communications, so I don't know whether

5  or not there is text information embedded in the device that

6  does relate to one or more of those conversations.

7          Now I don't disagree with the government.  These text

8  messages, on their face, I don't know any privilege that would

9  support them.

10          THE COURT:  Whatever it is, and we can agree to a

11  process by which Mr. Barket can assert the privilege and

12  evaluate it --

13          MR. RICCO:  Yes.  And Judge, this --

14          THE COURT:  Let me just finish.

15          MR. RICCO:  Go ahead.

16          THE COURT:  I think what we're talking about here is

17  the disclosure of the reports themselves.  So even if the phone

18  might have other data that could itself be privileged, the

19  prosecution team isn't going to see that in the first instance

20  anyway.

21          MR. RICCO:  Judge, I don't want to change the point,

22  but I just want to finish my point.

23          THE COURT:  Go ahead.  Finish your point.  And then

24  I'll hear from Mr. Barket.

25          MR. RICCO:  This process to review these files takes

200304tartaglioneC    Conference

1   about an hour, Judge.

2            THE COURT:  Okay.  Gotcha.  You're talking about

3   having the text person exploit the phone, takes about an hour.

4   That's the program you were mentioning?

5            MR. RICCO:  Yes.  Basically that it inputs those

6   files into this program, and that program then prints out

7   information.

8            THE COURT:  Presumably that program would have been

9   available to BOP and they would have used that program, but

10  maybe I'm naive.

11           MR. WRIGHT:  That's correct.  Again, I think out of

12  respect, and given the nature of the proceedings, we are

13  permitting every avenue here to be exhausted.  All files and

14  data that on these cellphones can be rendered into meaningful

15  English language or numbers that have meaning was done by

16  running this program.

17           With that said, it's important to take every

18  precaution.  Certainly not proposing to do anything with this

19  phone with respect to my colleagues who are assigned to this

20  case, that the reports themselves, your Honor, there simply is

21  no basis over which to assert privilege over them, except with

22  the possible respect to those text messages.  And I think if

23  that were the case, I think Mr. Barket and learned counsel

24  would have straightforwardly made that claim with respect to

25  them.  So at this time, I do respectfully ask to turn the

200304tartaglioneC    Conference

1   reports over.

2              THE COURT:  Okay.  Mr. Barket.

3              MR. BARKET:  I didn't know it was only an hour.  And

4   our expert is indeed our expert.  It's the person or the

5   company that we've been --

6              THE COURT:  Be that as it may --

7              MR. BARKET:  What I said at the beginning, I just

8   want to look at the whole before I --

9              THE COURT:  But this has got nothing to do with

10  whether the reports themselves contain privileged information.

11             MR. BARKET:  It actually --

12             THE COURT:  No, it doesn't, it doesn't.  It just

13  doesn't.  Either the texts are privileged or they're not.  I

14  don't know how the other data could at all be privileged, but

15  whatever it is, if there's something in the phone itself that

16  could be privileged, you certainly should have an opportunity

17  to see that, but the proposal isn't to turn the phone over to

18  the prosecution team; it's to turn the reports over.

19             MR. BARKET:  I understand, Judge.

20             THE COURT:  Okay.

21             MR. BARKET:  I don't disagree with anything that

22  anybody said.  And ultimately, and maybe even quickly, we'll

23  get to exactly that point.  My position is, I'm not asserting

24  privilege over these text messages that have been disclosed.

25             I do -- in a perfect world, from Mr. Tartaglione's

200304tartaglioneC    Conference

1  perspective, I would not like these text messages delivered to

2  the government, in a perfect world.  I get that I don't live in

3  that world.

4          THE COURT:  In perfect world, he wouldn't have used

5  the phone.

6          MR. BARKET:  Well, yeah.

7          So part of our obligation is to try and develop a

8  meritorious argument as to how those text messages could be

9  privileged.  And I have a thought on it, an idea on it.  It's

10  to -- I don't have enough information to assert it, but I don't

11  know why we would need to do that first.  If it's --

12  everything's available.  We have an expert that's already being

13  paid for through this process, through the courts, who is

14  available to examine the phone.  Let us look at the phone, the

15  whole, first.  And if we can't assert a privilege, which may

16  very well be, then we don't assert the privilege and we say

17  that.

18          If we do develop an argument to assert the privilege

19  and the material has already been turned over to the

20  government, then it's too late.

21          THE COURT:  You definitely get a chance to argue why

22  information in the reports themselves is privileged and

23  shouldn't be turned over to the prosecution team, but the

24  reports say what they say, and the text messages that are in

25  those reports say what they say.

200304tartaglioneC    Conference

1          I don't know.  I guess from the government's

2   perspective, what's the rush?  If this isn't going to take very

3   long to do, whether it's an hour or a day, Mr. Wright, I'm not

4   sure why that matters from the prosecution team's perspective.

5          MR. WRIGHT:  We're happy to proceed as the Court

6   prefers.  I think the attorney/client privilege is a

7   multifaceted and complex area of the law.  With that said, it

8   is not infinitely elastic and there are arguments that can be

9   made that are within the zone of reason and possibility.

10          If these text messages are what concern the parties,

11   I would propose in that case redacting them and providing the

12   balance of the report, which I think if I understand counsel

13   correctly, I don't think that there's any claim that any of

14   that remainder of the report could present an issue.

15          THE COURT:  Right.  But if the prosecution team gets

16   a redacted report tomorrow and then it turns out there's

17   litigation over the text and it turns out they're not

18   privileged and counsel have an opportunity to have their own

19   experts exploit the phone and the prosecution team gets the

20   reports two weeks from now, what's the prejudice to the

21   government?

22          MR. WRIGHT:  I'm in the strange position of not

23   knowing the significance of, for instance, the call logs or

24   the --

25          THE COURT:  I understand you may not know the

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

200304tartaglioneC    Conference

1    significance of the call logs.  I guess I'm trying to

2    understand, what's the significance of the timing of discovery

3    of the significance of the call log?

4              MR. WRIGHT:  I take your point, of course.  I think

5    because I'm in a place of ignorance as to the possible

6    significance of the contacts or the lists of calls to numbers,

7    I don't know whether receiving that information now, given that

8    we're in the context of requesting a trial date, could be

9    material to the government.

10             THE COURT:  The trial date request has been a

11   proforma thing that the government has done at every

12   conference, which everybody understands why they're doing that.

13   The trial date hasn't been set.  It's not going to be set.

14   Even if we set the trial date tomorrow, the trial won't happen

15   anytime in the immediate future because there's a whole bunch

16   of motion practice to be done, among other things.

17             MR. WRIGHT:  Again, coming from a place of ignorance

18   and not knowing what the investigative value of these messages

19   are and what the investigative lengths that might be needed to

20   exploit their value for the government lawfully, I'm in a

21   position of certainly wanting to respect the possible claim of

22   a privilege and would redact the report, but I just don't see

23   how any of the remainder of it could in any theory of privilege

24   be privileged, and given my role, would seek to provide it to

25   the government.

200304tartaglioneC    Conference

1          THE COURT:  And it may very well be it's a role you

2     would gladly be done with, if you could.  But I think if we say

3     to the defense, we'll give you two weeks, get your expert

4     access to the phone, give you a chance to write something if

5     you want to assert a privilege, I don't see how that's going to

6     prejudice the prosecution team, especially since we don't have

7     a trial date.  And whether it takes an hour or it takes a day,

8     I don't think you're going to need more than two weeks to get

9     the data and then explore what privilege can be asserted.

10          Does that seem fair, Mr. Barket?

11          MR. BARKET:  Absolutely.

12          THE COURT:  Mr. Ricco, you okay with that?  You might

13     want to go faster, but you don't have a problem with that?

14          MR. RICCO:  I'm not interested in going faster.

15     There may be proposed questions with respect to *Curcio*, but we

16     can do left hand/right hand at the same time.

17          THE COURT:  No, I mean I do recognize that, quite

18     apart from whether or not the report has privilege

19     information -- or reports -- quite apart from whether the

20     reports have investigative leads for the prosecution team or

21     not, the reports are going to be relevant to the *Curcio*

22     inquiry, but again, I think Mr. Barket's point is well-taken

23     that if he thinks that exploring the other data on the phone

24     that may not have made its way into the reports could help

25     inform an analysis of whether or not there's a privilege, then

200304tartaglioneC    Conference

1  he should be entitled to that.

2         MR. RICCO:  Judge, I wholeheartedly agree with that.

3         THE COURT:  And it may be that then you'll be

4  submitting supplemental questions depending on what happens to

5  the reports.

6         Have you seen the reports, Ms. Feinzig?  You haven't,

7  right?

8         MS. FEINZIG:  No.

9         THE COURT:  Right.

10         So they're walled-off from not only the prosecution

11  team, but also the government's other wall.

12         MS. FEINZIG:  But I don't see any reason why I should

13  be walled-off from the content of the phone.

14         THE COURT:  Well, if it's attorney/client privilege,

15  then --

16         MS. FEINZIG:  Theoretically, the other information

17  I've reviewed was attorney/client privilege.  I'm not saying

18  it's necessary; it just might move things along faster in terms

19  of the questions that we propose for the *Curcio*, but also, it

20  can wait and I can supplement.

21         THE COURT:  Okay.

22         MR. BARKET:  I, speaking just for the lower L part of

23  the table here, don't have a problem with -- and I thought the

24  Court ordered this on January 22nd, but if not, then with

25  Mr. Wright sharing the reports with Ms. Feinzig, the same --

200304tartaglioneC    Conference

1    because the same -- I've got no problem with that.

2           THE COURT:  Mr. Ricco, you don't have a problem with

3    that, do you?

4           MR. RICCO:  None whatsoever.

5           THE COURT:  Okay.

6           There you go, Mr. Wright.  You finally get a friend

7    in this case.

8           MR. WRIGHT:  Shared.

9           THE COURT:  You're no longer alone.  All right.

10          Next?

11          MR. BARKET:  Are you still looking for vanilla,

12   Judge, because I'm still all out of that.

13          THE COURT:  What's that?  No, I get it.  There's no

14   more vanilla.

15          MR. BARKET:  There were a few things that we brought

16   up last time that we're attending to.  Visiting the jail, as

17   you might have read, is an issue these days.  So I have a

18   note -- I received a note yesterday from counsel to the MCC,

19   Ms. McFarland, I believe, who said that, give us the names of

20   the people you want to view the cells and evidence, we'll get

21   to that, but not until after the current situation has

22   resolved.

23          If you don't know, the jail has been locked down for

24   a week for some security investigation, rumors of which I've

25   heard, I'm reluctant to repeat in open court, but so the jail

200304tartaglioneC    Conference

1    has been locked down for a week.  Nobody -- no movement, no

2    legal visits, no social visits.

3              THE COURT:  Is there an expectation as to how long

4    that will continue?

5              MR. BARKET:  Actually, not a good one, because I was

6    looking for a social visit for his family on Thursday,

7    tomorrow, yesterday, and I was told unlikely that we're going

8    to resolve things by then.  And from -- the first time I saw

9    Mr. Tartaglione was today in about ten days, two weeks.  And my

10   understanding is that they're still locked down and that's not

11   going to change for a bit.

12             THE COURT:  Do you have any idea, Mr. Swergold, how

13   long?

14             MR. SWERGOLD:  Your Honor, I don't.  So the record is

15   clear, it's been locked down since Thursday.  So I know when

16   Mr. Barket says he hasn't seen his --

17             THE COURT:  So, February 27th?

18             MR. SWERGOLD:  Yes.  When he says he hasn't seen his

19   client in ten days to two weeks, not all of that is because of

20   the lockdown.  All I can say is that, yes, we are aware that

21   the MCC is dealing with a serious security issue.  We are

22   monitoring it.  We are in regular contact with the MCC.  And we

23   also understand that Chief Judge McMahon is aware of the issues

24   and is monitoring it and is in contact with respective

25   institutional players within the system.

200304tartaglioneC    Conference

1           MR. RICCO:  For what it's worth, Judge, the

2      investigation is expanding, not contracting.

3           THE COURT:  So it may be a while?

4           MR. RICCO:  Yes.

5           THE COURT:  All right.  Well, I mean, I'm not sure

6      what's to be done about it now, Mr. Barket, but obviously if --

7      the longer it goes, maybe the more problematic it would be.

8      And I'm sure MCC understands the urgency to try to do whatever

9      they're going to do, but at the same time, allow for visits as

10      soon as they can, and I'm sure the Chief Judge is more than an

11      advocate for that point, so I'm not going to get in her way.

12           Other issues.

13           MR. RICCO:  Judge, I did have one issue.  It's a

14      purely *ex parte* defense.  It's one of the prongs of the letter,

15      very simple and narrow issue, and I would not want to do that

16      in the presence of the government or any of the firewall

17      counsel at this time, but of course the letter recognizes,

18      based upon your Honor's ruling, the information would be

19      provided to firewall counsel and we made that request as a part

20      of the letter.

21           THE COURT:  Yes.  I think there's a couple things we

22      need to discuss *ex parte*.  So, what we could do is tentatively

23      schedule the next conference to be the *Curcio* hearing,

24      tentative in the sense that we'll see how things play out with

25      privilege assertions and anything else that comes out up.  So

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

200304tartaglioneC    Conference

1   because everybody seems to think that a day is what's going to

2   be necessary, we're going to have to find a date that works for

3   everyone.

4            The complication for us is we actually have a trial

5   scheduled in April that we think is going to go, but you

6   know...

7            Does Thursday, April 30th, work for everybody?

8            MR. SWERGOLD:  Just for clarity, is there anything

9   that's going to happen at this that would require Ms. Comey and

10  I to be here, or is it purely a *Curcio* hearing where I imagine

11  we would not be present?

12           THE COURT:  Well, there might be other issues we

13  could address.

14           MR. SWERGOLD:  Okay.

15           THE COURT:  So you can hang out in your offices in

16  the building, and if we need you, we'll call you.

17           Is that okay?

18           MR. SWERGOLD:  No, we're just trying to figure out if

19  we need to come up or not.

20           THE COURT:  If issues come up -- if we finish the

21  *Curcio* hearing and it turns out there are other things we need

22  to address, it would be useful to have one of you here.

23           Is that okay?

24           MR. SWERGOLD:  Okay.

25           MR. BARKET:  I guess you've exhausted the dates

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

200304tartaglioneC    Conference

1  between --

2           THE COURT:  Yes.

3           MR. BARKET:  -- the 11th?

4           THE COURT:  We were hoping to find out if this trial

5  was going to go or not, but we just don't know at this point,

6  so we have to assume it is.

7           MR. BARKET:  I hate to suggest such a thing, but is

8  it possible to take a day off from the trial?

9           THE COURT:  No, I'm not going to do that.

10          MR. BARKET:  Okay.

11          THE COURT:  Jurors and trials --

12          MR. BARKET:  Just asking.

13          MS. COMEY:  Your Honor, on April 30th, I expect to

14  be on trial, and AUSA Swergold will be out of the state.  If

15  your Honor needs one of us available, we would ask for a

16  different date unless your Honor can excuse our presence.

17          THE COURT:  I mean, it's really up to you.  For the

18  *Curcio* hearing, you're obviously unnecessary and, frankly, not

19  invited, don't take it personally, and it could be that if

20  there are other issues we need to address, we can schedule

21  another conference and we can just do that.  Otherwise, I don't

22  want to delay it.  Obviously, there's an anxiousness to get

23  this done.

24          MS. COMEY:  Yes, your Honor.  We would rather have

25  the date scheduled sooner with the understanding that we may

200304tartaglioneC   Conference

 1   not be able to be available.

 2              THE COURT:  All right.  That's fine.

 3              Is there anyone who can't do that day otherwise?

 4              (No response)

 5              All right.  We'll say on that the 30th, we'll start

 6   at 10:00.  So I guess in light of that, I think it might make

 7   sense for the question submission deadline to get kicked back

 8   again until we resolve the phone issue; that way, there's just

 9   one set of questions with everything taken into consideration.

10              Does that make sense?

11              MR. BACHRACH:  I'm sorry.  I was going to say on the

12   last point briefly, if your trial goes away, then could we

13   possibly revisit an earlier date?

14              THE COURT:  Yes.  Sure.  So why don't we say, then,

15   that the submission with the proposed questions and any other

16   legal guidance you want to provide -- well, let me ask you

17   this, Mr. Barket.

18              Do you think you need the full two weeks to deal with

19   the phone analysis and the privilege assertion?

20              MR. BARKET:  The expert's from one of the Carolinas,

21   I forget which one, so it's just really scheduling.  But it

22   seems like we have -- I'll do it, obviously, as quick as I can.

23              THE COURT:  No.  That's fine.

24              MR. BARKET:  So two weeks is, I hope, more than

25   enough time.  If we can get it done quicker, that's great.

200304tartaglioneC    Conference

1          THE COURT:  Why don't we say this?  Why don't we say,

2    then, that the written submissions with the questions/legal

3    guidance we'll kick to March 27th.  That gives you your two

4    weeks to get the phone issue -- get the phone analyzed and have

5    a privilege conversation.

6          If it turns out you're not going to assert a

7    privilege, then the March 27th deadline should be easy.  If it

8    turns out that if you do assert the privilege, then we'll just

9    have to deal with it.

10          MR. BARKET:  Right.  Okay.  And then exchange

11    questions a week before that on the 20th?

12          THE COURT:  Sure.  Okay.  I'll get to speedy trial

13    clock in a second.

14          Is there anything else -- I know we have some *ex*

15    *parte* things to discuss.  We'll do that, but is there anything

16    else for the prosecution team before we excuse them?

17          Mr. Swergold.

18          MR. SWERGOLD:  Not from the government.  Thank you.

19          MR. BARKET:  Not from --

20          THE COURT:  Not from defense.

21          The clock is already stopped because of the motions

22    that are pending, but any other objection to excluding time

23    from now until April 30th of this year?

24          MR. BARKET:  No.

25          THE COURT:  Okay.  Then I'll prospectively exclude

200304tartaglioneC    Conference

1   time from today until April 30th of this year, independently

2   finding it's in the interest of justice to do so.

3           As I said in addition to the motions, in addition to

4   this being a complex case, there are questions of

5   representation that have to be resolved by way of a *Curcio*

6   hearing.  And so the interest of justice from this exclusion

7   outweigh Mr. Tartaglione's and the public's interest in a

8   speedy trial.  The finding is made pursuant to 18 U.S.C.

9   Section 3161(h)(7)(A).

10          If we could now clear the courtroom of the

11  prosecution team and everybody who is not otherwise affiliated

12  with the defense team or -- I think, Ms. Feinzig, you're gone,

13  too, for now.  If we need you, we'll call you.

14          MS. FEINZIG:  Thank you.

15          MR. WRIGHT:  Thank you, your Honor.

16          THE COURT:  You want to keep her here?

17          Hang on, Ms. Feinzig.

18          MR. BARKET:  It's up to Mr. Ricco.

19          MR. RICCO:  No.  I don't think it's an issue.  I set

20  forth in the letter, I think at the end of the issue --

21          THE COURT:  You may want to disclose.

22          MR. RICCO:  -- we'll share a letter with her, send

23  her request, built in.

24          MS. FEINZIG:  A request for a letter that was already

25  submitted?

200304tartaglioneC    Conference

1            MR. RICCO:  Yes.  Today.

2            MS. FEINZIG:  Oh, okay.

3            MR. RICCO:  Yes, that's what I'm talking about.

4            THE COURT:  Okay.

5            (Pages 30 through 67 sealed by order of the Court)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25