191120tartaglioneCex          Conference

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                          16 Cr. 832 KMK

 5   NICHOLAS TARTAGLIONE,

 6                Defendant.

 7   ------------------------------x
                                         United States Courthouse
 8                                       White Plains, N.Y.
                                         November 20, 2019
 9                                       12:40 p.m.

10

11   Before:

12              THE HONORABLE KENNETH M. KARAS,

13                                          District Judge

14                      APPEARANCES

15   GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
     MAURENE COMEY and JASON SWERGOLD
17       Assistant United States Attorneys

18   BRUCE BARKET and AIDA LEISENRING
         -and-
19   ANTHONY RICCO, Learned Counsel
         -and-
20   JOHN DIAZ
         -and-
21   MICHAEL BACHRACH
         -and-
22   BRUCE KOFFSKY,
       Attorneys for Defendant Nicholas Tartaglione

23   ALSO PRESENT:  BOBBI C. STERNHEIM, Curcio Counsel
                    DAVID RUNKHE, Resource Counsel
24

25

191120tartaglioneCex        Conference

1             (In open court)

2             THE COURT:  In the matter of the United States of

3     America v. Tartaglione, Docket 16 Cr. 832.

4             Counsel, please state your appearances for the

5     record.

6             MS. COMEY:  Good afternoon, your Honor.  Maurene

7     Comey and Jason Swergold for the government.

8             THE COURT:  Good afternoon to you both.

9             MR. BARKET:  Good afternoon, your Honor.  Bruce

10    Barket and Aida Leisenring for Mr. Tartaglione.

11            THE COURT:  Good afternoon.

12            MR. RICCO:  Good afternoon, your Honor.  Anthony

13    Ricco for Mr. Nicholas Tartaglione.

14            MR. DIAZ:  Good afternoon, your Honor.  John Diaz,

15    appearing for Nicholas Tartaglione.

16            MR. BACHRACH:  Good afternoon, your Honor.  Michael

17    Bachrach for Nicholas Tartaglione.

18            MR. KOFFSKY:  And good afternoon, your Honor, Bruce

19    Koffsky for Mr. Tartaglione.

20            MR. RICCO:  I'd like the record to reflect again that

21    we are in the presence of our Resource Counsel David Runkhe who

22    is at the back table.

23            THE COURT:  Good afternoon, Mr. Runkhe.

24            MR. RICCO:  And also *Curcio* counsel decided to join

25    us this afternoon, Bobbi Sternheim.

191120tartaglioneCex          Conference

1          THE COURT:  And always welcome, and good afternoon.

2          MS. STERNHEIM:  Good afternoon.

3          THE COURT:  Welcome, Ms. Sternheim.

4          Any updates, Ms. Comey, from the government's

5    perspective?

6          MS. COMEY:  Your Honor, the government is still ready

7    for trial.  As we set forth repeatedly, we are asking the Court

8    to set a trial date.

9          I know your Honor has read our letter setting forth

10   the various reasons that we believe a trial should be set as

11   quickly as possible.

12          I won't repeat them all, but I would like to

13   emphasize the interests of the family members of the victims in

14   this case, many of whom are in the courtroom here today, and

15   several of whom have come to nearly every single conference in

16   this case from its inception.  They have been following this

17   case very closely and they have a real interest in seeing this

18   case brought to trial as quickly as possible.

19          THE COURT:  As do I, but there are some complicated

20   representation issues that have to be resolved through the

21   *Curcio* process.  So, in my view, until we resolve those issues,

22   we just can't set a trial date.  And I say that very

23   reluctantly because I am sympathetic to all the points in your

24   letter and the ones that you have emphasized here today, but it

25   would be imprudent to adopt a schedule until these

191120tartaglioneCex          Conference

1    representation issues are resolved.

2              MS. COMEY:  Understood, your Honor.

3              In light of your Honor's ruling on that matter, we do

4    have four issues that we would like to bring up for your Honor.

5    The first is whether it would be possible to set a schedule for

6    Capital motions, even if it is not possible to set a schedule

7    for a trial.

8              THE COURT:  No, because it's the same -- the

9    representation issues are -- I don't even know the full scope

10   of the issues that have to be resolved at the *Curcio* hearing

11   because I'm waiting for *Curcio* counsel to submit a report, but

12   they are pervasive in terms of the representation of

13   Mr. Tartaglione.  And so setting a schedule, again, would just

14   be imprudent.  Really, it would be giving the people you have

15   identified sort of a false representation as to how realistic

16   that schedule is going to be, and I don't think there's any

17   purpose in doing that.

18             *Curcio* counsel is working very hard because,

19   obviously, she understands the importance of getting this

20   resolved in terms of the rest of the case getting back on

21   track.  And so, given that, I just don't think that there's

22   anything we can do about setting even a Capital motion

23   schedule, because that's obviously a very important part of the

24   case.  So, we need to get the representation issues figured

25   out.

191120tartaglioneCex          Conference

1          MS. COMEY:  Thank you, your Honor.

2          Our second question is whether your Honor can provide

3    us any guidance about the anticipated timing of resolving the

4    *Curcio* issue.

5          THE COURT:  As soon as practicable.  I can't give you

6    a schedule because it all starts with *Curcio* counsel completing

7    the report, and then, obviously, I intend to move forward

8    quickly, but thoroughly and carefully, with the *Curcio* process.

9          MS. COMEY:  Thank you, your Honor.

10         Our third question is whether the government should

11   be aware of, or involved in, the resolution of the *Curcio* issue

12   at this point.

13         THE COURT:  So, that is an issue that is actually

14   foremost on my mind, and I'm doing research on that.

15         And to counsel for Mr. Tartaglione, if I think that

16   there needs to be more notice provided to the government, I

17   will of course alert you to that, and I'll hear you if you have

18   any objections, but I think in some way, shape or form, the

19   government does have to be informed as much as possible

20   without, of course, jeopardizing the defense strategy, internal

21   defense workings, about the issue.

22         Some of that will be informed when I get the report

23   honestly, Ms. Comey.  I don't want to get ahead of myself here,

24   but I do think -- I'm very sensitive to that concern.

25         MS. COMEY:  Thank you, your Honor.

191120tartaglioneCex          Conference

1          Our final request is we want to make sure that there

2     is a clear record that the defendant understands what is

3     happening with the delay and agrees with his defense team's

4     continued requests for delay.  So we would ask that the Court

5     allocute the defendant to confirm that he understands what is

6     going on and agrees with the continued requests for

7     adjournments.

8          THE COURT:  Mr. Barket, do you have a reaction to

9     that?

10         MR. BARKET:  I do, Judge.  Because of the proposed --

11    relative proposed timing of the trial dates and I think -- I

12    know we exchanged them, so the parties certainly know what they

13    are and conversations we've had internally with

14    Mr. Tartaglione, this process has, I don't want to say it's

15    taken long because it needs to take as long as it's taken, it's

16    not going to in any way interfere with these proposed dates

17    which are off in the future.

18         So the decision by the Court not to try the set dates

19    now is not something that Mr. Tartaglione objects to because it

20    really doesn't affect what's going on now.  We are still

21    working on our investigation of -- Capital Counsel, Learned

22    Counsel are doing work on the mitigation front.  We have

23    investigators.  We're actively pursuing the things we're

24    supposed to be pursuing now.

25         So to say to Mr. Tartaglione, Do you mind not setting

191120tartaglioneCex        Conference

1    a trial date today, is I think what they're asking, which we

2    can set one or not, it's not going to affect the work that's

3    going on, so there's nothing he needs to waive at this point.

4    No matter what happened with the *Curcio* issue, we would not be

5    seeking a trial date in the time that the *Curcio* matter is

6    likely to be resolved and certain to be resolved.

7            THE COURT:  So let me say this for the record, and

8    then I'll hear from Mr. Ricco, as well.  The one thing that I

9    think is very important that the record reflect, because it's

10   100 percent true, is that notwithstanding the *Curcio* issues

11   that are percolating, counsel for Mr. Tartaglione have been

12   working diligently on the assumption that this case should, of

13   course, proceed as quickly as it can, obviously consistent with

14   their obligation to do fulsome investigation and legal research

15   and everything that they need to do to effectively represent

16   Mr. Tartaglione.

17           There has been no TV time-out called by counsel for

18   Mr. Tartaglione while this is getting resolved.  So while the

19   *Curcio* issues I think need to be resolved before we can be

20   specific about schedules, they have not caused any let-up on

21   work that's being done on Mr. Tartaglione's behalf.

22           And assuming that the *Curcio* issues don't resolve in

23   any disruption of the roster of attorneys representing

24   Mr. Tartaglione, then I think Mr. Barket is 100 percent right,

25   that the work that he and the other lawyers are doing will

191120tartaglioneCex         Conference

1    allow for the setting of a trial date consistent with whatever

2    the range is that you all have been discussing.

3             Mr. Ricco, did you want to add anything?

4             MR. RICCO:  I completely agree with the Court's

5    analysis.  I would just add something to what Mr. Barket said,

6    and that is Capital Counsel are diligently working on all

7    aspects of the defense in this case, both liability and penalty

8    phase.

9             MR. BARKET:  And we are, too.

10             THE COURT:  So, I mean, Mr. Barket, I guess the only

11    question is whether or not there's a downside to allocuting

12    Mr. Tartaglione on the question that he understands that

13    until -- and he may not agree with my analysis, but at least

14    he -- I want him -- is there a downside to him -- my making

15    clear to him that the hold-up is only with respect to setting

16    the trial date, not when the trial is actually going to take

17    place; to your point, that the *Curcio* issue may, in my view,

18    prevent us from scheduling the trial date, but ultimately, the

19    resolution of that issue doesn't necessarily affect the trial

20    date.

21             MR. BARKET:  Correct.

22             THE COURT:  So, is there any downside to my

23    allocuting Mr. Tartaglione about that?

24             MR. BARKET:  I just want to make sure we're clear,

25    because I think I understand what you're saying, and I hope you

191120tartaglioneCex          Conference

1    understand what I'm saying.

2              THE COURT:  Yes.

3              MR. BARKET:  Nothing -- setting -- the *Curcio* inquiry

4    or matter, how ever you want to phrase it, assuming, as the

5    Court said, that the roster doesn't change dramatically, then

6    the range of trial dates that are some point off in the future

7    are not going to be affected one way or the other.  We'll

8    either agree or the Court will order something and that will go

9    forward, so there's nothing to allocute to now.  It's not as if

10   he's being asked to waive something he otherwise wouldn't be

11   asked to waive.

12             Let's say we had set a -- I don't even want to

13   suggest a date --

14             THE COURT:  A date, whatever.

15             MR. BARKET:  -- a date in the future for the trial,

16   we would not here be today saying, Mr. Tartaglione, is it okay

17   that we adjourn the case another month, because another month

18   won't include that trial date.  The trial date is certainly

19   going to be well beyond the *Curcio* issue.  So there's nothing

20   for him to waive now that he wouldn't waive if there was no

21   *Curcio* issue.

22             If there's no *Curcio* issue, we'd argue about the

23   trial dates, perhaps, or agree upon it, and everybody would

24   agree I think at this point that we're not going to trial this

25   month, next month or any time in the next couple of months; and

191120tartaglioneCex        Conference

1   that we'd adjourn the case for further action on some of the

2   matters that are going to come up.

3           We have a pretrial suppression hearing to do.

4   Presumably, they've consented.  I assume the Court will order

5   that.

6           THE COURT:  Yes.

7           MR. BARKET:  We'll wait for that order.  We have

8   other motions that have to be done, so there's really nothing

9   for him to allocute to.  I think that I understand what your

10  Honor is saying and I think Mr. Tartaglione does.

11          So, I don't object, but I don't think there's

12  anything to ask that would be --

13          THE COURT:  I think also the record should be clear

14  Mr. Tartaglione has not been shy.  When he has concerns, he has

15  raised them, and I say that because that's in fact the record.

16          So if Mr. Tartaglione wanted to voice his opinion, he

17  obviously -- I would prefer he do it through you, and he's

18  here, and he is aware of the *Curcio* issue that's out there to

19  be resolved.

20          So I understand your concern, Ms. Comey.  I do.  I do

21  think that Mr. Barket is right and Mr. Ricco is right that

22  counsel are proceeding on the assumption that there's going to

23  be the setting of a trial date, and then, obviously, interim

24  dates somewhere in the range of what's been discussed between

25  you all and that the *Curcio* issue for now is not going to

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

191120tartaglioneCex          Conference

1  disrupt that conversation.

2          MS. COMEY:  Yes, your Honor.

3          One point I would add, though, is that there is the

4  possibility that the *Curcio* issue could disrupt the make-up of

5  the defense team and could therefore lead to additional delay.

6          THE COURT:  Correct.

7          MS. COMEY:  That is the part of what we are worried

8  about.

9          THE COURT:  And I think Mr. Tartaglione understands

10  that.  And I think there may come a point where there needs to

11  be more specific conversation, but I'm afraid at this point,

12  it's kind of moot court.  We don't know.  And I don't know what

13  the value is in going down a set of hypotheticals with

14  Mr. Tartaglione.

15          He is aware that his lawyers are working around the

16  clock to get this case to trial as soon as it can be done.

17  What that date is going to be obviously has been the subject of

18  a lot of discussion, I'm gathering, internally among the

19  defense team and with the government.  And he also understands

20  that there is a lot of motion practice to be done and

21  everything else, and all that work is being done by his

22  attorneys.

23          And the *Curcio* issues may have zero effect on the

24  scheduling of everything.  And if it looks like they are going

25  to have an effect, then I think at that point, it would be

191120tartaglioneCex        Conference

1   appropriate to have a more specific conversation with

2   Mr. Tartaglione.

3           MS. COMEY:  Understood, your Honor.  Thank you.

4           THE COURT:  Okay.  Anything else, Ms. Comey, from

5   your perspective?

6           MS. COMEY:  No.  Thank you, your Honor.

7           THE COURT:  Mr. Barket.

8           MR. BARKET:  Actually, relatively briefly, Judge.

9   Although it's important, right around the time of the last

10  court date, Mr. Tartaglione had a hard drive in his possession

11  at the correctional center, and he has been working --

12          THE COURT:  This is to review the discovery?

13          MR. BARKET:  It was given to him by the government.

14  It's not -- given some of the other issues, perfectly

15  legitimate hard drive provided by the government.  And he had

16  been working in the way that I wish young lawyers in my office

17  would work on cases: consistently, thoroughly, extraordinarily

18  helpful in identifying -- he's been very helpful to the

19  defense, very helpful --

20          THE COURT:  And he got this right around the time of

21  the last conference --

22          MR. BARKET:  He had it, he had it -- I don't remember

23  exactly when the hard drive was delivered, at some point over

24  the late summer, I think.

25          THE COURT:  Okay.

191120tartaglioneCex          Conference

1          MR. BARKET:  Whenever it was, there's certainly a

2    record of it, but he received it, and it's the full breadth of

3    the discovery.  And the discovery here is voluminous, as you

4    might expect, but it is very -- it includes dumps of phones,

5    reports, photographs of multiple scenes, multiple areas, aerial

6    photographs.  So, having it on a single hard drive, it's

7    important to review it because it allows you to go from item to

8    item with some continuity.

9          If you broke that down into disks -- and there's a

10   reason for me mentioning this.  If you broke it down into

11   disks, it would bevy very, very difficult to review the

12   discovery with the same efficiency, because as you're looking

13   at a report, it refers to a video --

14          THE COURT:  You have to pop out the disk.

15          MR. BARKET:  Right.  And it's even more complicated

16   than that when you're dealing with phone dumps because

17   there's -- massive amounts of information exists on smart

18   phones these days.  That hard drive was given to him.  He used

19   it on the unit without incident for I think months, weeks, at

20   least, but I think longer than a month, perhaps two or three

21   months.

22          For whatever reason, right around the date of the

23   last court date, it was taken from him.  And the rule was, you

24   can't have a hard drive on -- in your possession on the tier.

25   If you want to see the hard drive, you have to go to Education,

191120tartaglioneCex        Conference

1   and it's a spot, I guess, like a library or something, and at

2   that point, you can review the discovery.

3           He's asked -- he keeps track, I think it's 60

4   times -- 65 -- he's gone, I think, a handful, four or five,

5   probably can count on one hand.  And even when he's been

6   brought down, to get the hard drive to him and get it uploaded,

7   there's a delay and it limits his ability to do this.

8           So I have obviously been in communication with --

9   initially with the MCC -- excuse me, just getting over a little

10  cold -- and with the government, and what I've been told, what

11  I was told last week, I've been told a couple times it's been

12  fixed, and no bad faith implied from Mr. Johnson who has been

13  great, or the government, but it wasn't fixed.

14          THE COURT:  When you say "fixed,"  what were they

15  saying was fixed?

16          MR. BARKET:  No problem.  There will be people in

17  Education, he can go down whenever he wants, they'll let him go

18  in the attorney rooms, and it just wasn't happening because of

19  either lack of staff or the attorney rooms were filled,

20  whatever the issue was.

21          The latest communication Wednesday -- late last week,

22  Thursday or Friday, was that, okay, it's fixed now, he'll be

23  able to go to Education, which isn't open, by the way, or

24  hadn't been open on the weekends and it had limited hours

25  during the week, and he'll be fine.  So, he went Saturday and

191120tartaglioneCex          Conference

1    Sunday, but only had viewed the discovery or had the

2    opportunity to review the discovery for an hour or two because

3    of some of the issues that I alluded to.

4           I also was told that they're going to institute some

5    kind of new rule that's going to allow the hard drive back on

6    the tier, but those regulations haven't been promulgated.  It

7    hasn't been done yet.

8           THE COURT:  These are Washington-based regulations or

9    MCC?

10          MR. BARKET:  I honestly don't know because he had the

11   hard drive there.  And I hate to bring up rumors, but there's

12   this -- there are -- there is this -- it actually came, I

13   think, from an attorney who I won't name, but somebody had a

14   laptop who had a complicated, serious case, had a laptop on a

15   tier in order to review discovery.  It was obviously provided

16   by the government and screened or some sort.  So I don't know

17   what's going on because I don't know.

18          But the first reason I was given for the hard drive

19   being prohibited is you never know; people have all kinds of

20   things on the hard drive.  And yes, I suppose that's true

21   except it came from the government, so we know what's on it.

22          THE COURT:  Yes.

23          MR. BARKET:  So, it's been a problem now for a month

24   that I've been communicating with Mr. Johnson and included the

25   government in the last few e-mails.  It's one of those

191120tartaglioneCex          Conference

1    frustrating things.

2              THE COURT:  Okay.

3              MS. COMEY:  Your Honor, first, I'd like to clarify

4    that the defendant has had a drive with his discovery since it

5    was initially produced in 2017.  Since then, there has been

6    additional discovery production.  The defense team asked this

7    past summer that we put all of the discovery together on a

8    single drive for the defendant and send it to the MCC.  So he

9    has had discovery material since the very early time of this

10   case with him in his facility.

11             THE COURT:  And how much has been produced since the

12   summer?  I assume percentage-wise, a very small --

13             MS. COMEY:  Since the summer, I don't believe there

14   have been any discovery production.

15             THE COURT:  Whatever it is, it's a very small

16   percentage of the total discovery?

17             MS. COMEY:  Yes, your Honor, so he has everything.

18             THE COURT:  Okay.

19             MS. COMEY:  In terms of the access to the drive at

20   the MCC, it is institution-specific what the security protocols

21   are for whether an inmate can have disks or drives on the tier.

22             My understanding is that the MCC is working to get

23   lockers where inmates can keep their drives on the tier when

24   they're not using them on computers, and they need to get more

25   computers onto the tier to allow access to the drives.  They

                 SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
                              (914)390-4053

191120tartaglioneCex          Conference

1    are working on that.  I do not have a timeline of when that

2    will be complete.

3              THE COURT:  How did Mr. Tartaglione get the drive to

4    begin with if it's supposedly prohibited on the tier?

5              MS. COMEY:  It was apparently an oversight when he

6    was taken out of SHU and put onto the tier.

7              THE COURT:  Okay.

8              MS. COMEY:  My understanding is that he can have as

9    many disks of material as he wants on the tier.  So anything

10   that he wants to review on the tier, my office, Ms. Greenwood,

11   defense team can put onto disks and send to him to have in his

12   cell and review on the tier any time he wants.

13             In the meantime, Mr. Johnson has worked with the

14   Education staff to give Mr. Tartaglione as many opportunities

15   as possible to go down to Education.  The e-mail that I was

16   copied on said that he now has more access to his discovery in

17   the law library than any other inmate at the MCC.  Apparently,

18   they are making it available to him Monday through Thursday, as

19   well as on Friday evenings, Saturdays and Sundays.

20             He has apparently declined to go to the law library

21   on a couple of occasions.  So, from our perspective and

22   Mr. Johnson's perspective, Mr. Tartaglione has had ample time

23   to review his discovery.  That said, to the extent there are

24   ongoing issues, we are happy to work with the MCC to try to

25   figure out other ways to allow the defendant to review

191120tartaglioneCex          Conference

1   discovery while we wait for the MCC to set up the policy that

2   lets him have the drive on the tier.

3                 THE COURT:  Do you know what the security concern is

4   with having the hard drives on the tier?

5                 MS. COMEY:  I don't, your Honor.

6                 THE COURT:  Okay.  Okay.

7                 MR. BARKET:  What I don't mean to say -- I mean, the

8   idea that he refused is --

9                 THE COURT:  I don't think that's where -- right --

10                MR. BARKET:  Well, --

11                THE COURT:  I think it sounds to me like

12  Mr. Tartaglione has had ample opportunity to review the

13  discovery, and I understand why the hard drive is preferable

14  over reviewing the discovery via disks, but what I am being

15  told is that Mr. Tartaglione is going to be given access to the

16  drive Monday through Thursday, Friday nights and Saturdays and

17  Sundays, and he gets -- if he wants, he can use disks to review

18  the discovery.  So I don't think this is a situation where he's

19  not getting an opportunity to review discovery.  I think it's a

20  question of convenience.

21                And in the meantime, the MCC, it sounds like, they're

22  working toward a change in the protocols where they can get

23  these lockers and the hard drive can be available to

24  Mr. Tartaglione and others on the tier.

25                So I don't at this point see that there's any

191120tartaglioneCex        Conference

1  intervention that's appropriate or necessary from my

2  perspective.  I would encourage you all to keep talking to MCC

3  and see if there are ways to make it more convenient to

4  Mr. Tartaglione, but this is not a case where, unlike other

5  situations, where a person just can't get access to his

6  discovery at all; that's not what's going on here.

7          So I'm not insensitive to the convenience factor, but

8  to me, it's not enough for a judge to tell the MCC how to run

9  itself.

10          MR. BARKET:  Just the -- again, my point at the

11  beginning of this was, they said it was fixed, was a reference

12  to he has access Monday through Thursday, Friday night,

13  Saturdays and Sundays.  With all due respect, I gather that's

14  what they want to have happen --

15          THE COURT:  Yes.

16          MR. BARKET:  There's, once again, a large area

17  between the objective and the practical --

18          THE COURT:  And that's what I'm asking you all to

19  keep working on, to see if it can be a little bit more

20  seamless, but --

21          MS. COMEY:  Yes, your Honor.

22          THE COURT:  But I'm not going to tell the MCC, you

23  know, you have to move the hard drive to the tier.  They have a

24  plan.  The plan makes sense in terms of the lockers.  The disks

25  can be made available.  And then there are some other

1  intermittent access to the hard drive, which hopefully will be

2  more accessible, but given that situation and given how much

3  time Mr. Tartaglione has had to review the discovery up until

4  the last month, and even since our last conference, as I said,

5  this is not a situation where he's not being given access to

6  the discovery, but if it becomes worse, obviously let me know,

7  okay?

8          MR. BARKET:  We will.

9          THE COURT:  Any other issues?

10          MR. BARKET:  No.  I think we have to -- I'd like to

11  have a conference with the Court on some of the other issues *ex*

12  *parte*, if that's okay.

13          THE COURT:  Okay.  We should schedule another status

14  conference with everybody here?

15          MR. BARKET:  Yes.  Please.

16          THE COURT:  Do you want to do a month from now or a

17  little bit more than a month from now?  How do you want to

18  handle the holidays?

19          MR. BARKET:  Celebrate them.

20          THE COURT:  Fair enough.

21          MR. BARKET:  I think before the end of the year.

22          THE COURT:  Okay.  Sure.  December -- how about

23  December 18 at 2:00?

24          MR. BARKET:  I think that's -- what day of the week

25  is that?

191120tartaglioneCex          Conference

1          THE COURT:  It's a Wednesday.

2          MR. BARKET:  That's fine.

3          MS. COMEY:  That's fine for the government, your

4    Honor.

5          THE COURT:  Okay.  So I've already found that this is

6    a complex case, which is an understatement, but any objection

7    independently to excluding time in the interest of justice from

8    now until December 18?

9          MR. BARKET:  No.

10          THE COURT:  Okay.  Then I'll independently exclude

11    time -- and also the motions are pending, so the clock is

12    stopped for that reason, as well, but I'll independently

13    exclude time from now until December 18, finding it's in the

14    interest of justice to do so.  That finding is based on the

15    fact that counsel continue to work diligently to prepare, on

16    many levels, the defense on behalf of Mr. Tartaglione; and

17    also, there are the *Curcio* issues that need to be resolved.

18          I therefore find that the interest of justice from

19    this independent exclusion outweigh Mr. Tartaglione and the

20    public's interest in a speedy trial.  The finding is made

21    pursuant to 18 U.S.C. Section 3161(h)(7)(A).

22          Anything else while everybody is here?

23          MR. BARKET:  No.

24          MS. COMEY:  Not from the government, your Honor.

25    Thank you.

191120tartaglioneCex          Conference

1           THE COURT:  Okay.  All right.

2           MR. BARKET:  Judge, for reasons that I'll explain

3    once we're in closed session, for lack of a better phrase, I'd

4    like to have everyone excluded from the courtroom except the

5    lawyers; that includes Mr. Tartaglione's family and friends.

6    And I'll explain why once we do that.

7           THE COURT:  Okay.  We're going to keep just

8    Mr. Tartaglione, the defense team, and the Marshals, and those

9    who work for the court?

10           MR. BARKET:  Right.  If that's okay.

11           THE COURT:  That's fine.  You can make a record later

12    on, and if it turns out I'm unpersuaded, we can invite people

13    back in.

14           MR. BARKET:  Correct.

15           THE COURT:  Okay.  So with that, I'm going to ask

16    that we clear the courtroom.

17           (Pages 23 through 52, sealed by order of the Court)

18           (Continued on next page)

19

20

21

22

23

24

25