

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*United States Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

September 11, 2020

**BY ECF**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

      Re:    *United States v. Nicholas Tartaglione*, S4 16 Cr. 832 (KMK)

Dear Judge Karas:

      The Government respectfully submits this letter in response to the above-referenced defendant's August 28, 2020 letter motion (the "Letter Motion") requesting that the defendant be transferred from the Metropolitan Correctional Center in Manhattan (the "MCC") to the Nassau County Correctional Center. In the alternative, the Letter Motion asks that the defendant be transferred to any other pre-trial detention facility "with humane conditions and that accommodates meaningful access to counsel, mitigation specialists and investigators." (Letter Motion at 1.) In support of its application, the defense raises a number of complaints about the MCC, many of which were previously addressed by the Government, MCC legal counsel, and the Court, to the satisfaction of defense counsel. The application should be denied both because the defendant cannot be housed in a non-federal facility and because the complaints in the Letter Motion either have been or readily can be resolved.

      **I.**    **Background**

      Beginning on or about December 20, 2016, following his arrest in this case, the defendant was housed at the MCC. On or about January 25, 2017, the defendant was transferred to the Metropolitan Detention Center in Brooklyn (the "MDC"). The defendant remained at the MDC until January 22, 2018, at which point he was transferred back to the MCC, where he remains to date. The Government detailed the reasons for this transfer in a letter to the Court dated March 14, 2018. During his pretrial detention, the defendant has incurred five disciplinary sanctions. First, on June 20, 2017, he was sanctioned for Mail Abuse. Second and third, on October 10, 2017, he was sanctioned for two separate instances of Giving or Accepting Money Without Authorization. Fourth, on April 4, 2018, he was sanctioned for Fighting with Another Person. Fifth, on August 1, 2019, he was sanctioned for Possession of a Hazardous Tool (Cell Phone). As a result of his two most recent infractions, the defendant was placed in disciplinary segregation

within a Special Housing Unit ("SHU") for two periods—one between approximately February 2018 and April 2018 and a second between approximately July 2019 and September 2019.

In or about August of 2019, the defense asked the Court to direct that the defendant be transferred out of the MCC. By letter dated August 24, 2019, the Government responded to that request, setting forth the conditions under which the defendant would be housed if he moved to the MDC and the conditions under which he would be housed if he remained at the MCC. In response to that letter, the defendant rescinded his request to be transferred and elected to remain at the MCC.

Beginning in or about March of 2020, the MCC modified its operations, including by ceasing all in-person visits and restricting inmate movement, in response to the COVID-19 pandemic. As part of those modified operations, any inmate who leaves the facility for a court appearance must be quarantined upon returning to the MCC. Additionally, in order to create quarantine and isolation units, the MCC has reconfigured the housing of certain inmates. To encourage social distancing, inmates are only permitted out of their cells for a brief period of time each day, during which they have access to the shower, computer, and phone. These steps are all being taken to protect inmates and staff from the spread of COVID-19. As a result of these precautions, the defendant has been placed in quarantine after attending court dates during the pandemic.

## II.     Available Pretrial Detention Facilities

As the Court is aware, the United States Marshals Service ("USMS") is responsible for the housing of a pretrial detainee. The Government has conferred with the supervisor of the USMS in White Plains, who confirmed that his office does not have a contract with the Nassau County Correctional Center and accordingly cannot house federal inmates from this District at that facility. Additionally, the local jails in this District with which the USMS has contracts have refused to house the defendant. In other words, the USMS remains in the same position it conveyed to the Court during the August 21, 2019 conference in this matter. The defense cites no authority permitting the Court to force a local jail to house a federal defendant. The Court noted at the August 21, 2019 conference that it was not aware of any such authority. (*See* Aug. 21, 2019 Tr. at 44.) The Government is aware of none.

The USMS may be able to transfer the defendant to another federal facility, such as the MDC or a federal detention center in another state, but the Government understands that the defendant does not wish to be transferred to another federal facility. Should the defendant prefer to be housed at a different federal facility, the Government will consult with the USMS to identify an appropriate location.

Given the inability to house the defendant at the only facility identified in the Letter Motion and the defendant's apparent unwillingness to consider transfer to a different federal facility, the Government respectfully submits that the Letter Motion should be denied.

### III.  Conditions at the MCC

The Letter Motion makes a number of claims about the conditions the defendant has experienced at the MCC. The claims lack specificity, are not tied to any particular time period, and largely rehash complaints that have been raised and addressed in the past through the collaborative efforts of the Government, MCC legal counsel, and, at times, the Court. Therefore, in order to clarify the record, the Government responds to each herein.

#### A.  *Violence*

The Letter Motion first claims that the defendant has been the target of violence during his incarceration at the MCC. Other than referencing a single incident in February of 2018, the Letter Motion offers no specifics, and defense counsel has never informed the Government of specific threats of violence the defendant has experienced while at the MCC. As to the February 2018 incident, the Government understands from MCC legal counsel that the defendant's April 4, 2018 sanction for Fighting with Another Person arose from his conduct during the February 2018 incident that resulted in the defendant's injury. As a result of that sanction, the defendant was placed in the SHU.

The Letter Motion raises several complaints about the conditions the defendant experienced during his time in the SHU in 2018. The defense previously raised those same complaints with the Court during a conference in this matter on March 12, 2018. Following that conference, the Government submitted a letter dated March 14, 2018 detailing the steps taken by the MCC to address the defendant's complaints. Among other things, the MCC (1) agreed to allow defense counsel to reserve an attorney visiting room in order to minimize wait times, (2) located the defendant's property and confirmed with the defendant that none was missing, and (3) ensured the defendant had the items in his cell to which he was entitled while in SHU, including his discovery. At the April 9, 2018 conference in this matter, defense counsel acknowledged that conditions had "improved significantly" as a result of these efforts. (Apr. 9, 2018 Tr. at 5.)

As set forth in the Government letter to the Court dated April 26, 2018, the defendant was released from the SHU on or about April 13, 2018 and returned to general population. At the April 30, 2018 conference in this matter, defense counsel noted that conditions at the MCC were "[m]uch better." (Apr. 30, 2018 Tr. at 15.)

#### B.  *Mail and Books*

The Letter Motion notes that the defendant has experienced delays in receiving "personal mail, newspapers, and books." Although the Letter Motion claims that this problem has continued since December of 2016, the Government has not identified any complaints from defense counsel on this score before the defendant's first period in the SHU in 2018. In any event, when the defense has raised this issue in the past with the Government, MCC legal counsel, and the Court, this issue has been addressed.

For example, as referenced above, in its March 14, 2018 letter the Government noted that the defendant was provided books, and during the April 30, 2018 conference in this matter, defense counsel noted that the defendant was receiving materials that had been sent. The defense again

complained about the delivery of mail during the July 13, 2018 conference. In response, the Government agreed to look into the issue, and on July 17, 2018, defense counsel emailed the Government and noted that the defendant had received mail and books.

This particular complaint does not appear to have been raised again until the May 3, 2019 conference in this matter. In response, MCC legal counsel personally checked for the defendant's mail in the mailroom on various dates in May 2019. Subsequently, on a June 12, 2019 call, defense counsel agreed that the MCC had made progress in addressing the defense's concerns, and defense counsel confirmed in an email to Government counsel dated June 13, 2019 that the MCC had "made good progress."

The issue was raised again when the defendant was returned to the SHU in July of 2019. On July 24, 2019, the Government submitted a letter to the Court in which it noted, among other things, that the defendant had been provided books to keep in his cell during his second period in the SHU. Although defense counsel raised additional complaints about mail during the remainder of the defendant's time in the SHU, these issues were largely addressed after the defendant was released from the SHU in September 2019. The complaint was not renewed during the October 21, 2019 conference in this matter.

Based on a review of available transcripts and email exchanges with defense counsel, this particular complaint does not appear to have been raised again until the defendant was placed in quarantine following his July 2020 court appearance. The Government has consulted with MCC legal counsel regarding this most recent complaint. MCC legal counsel indicated that the institution relies on the U.S. Postal Service to deliver any mail and that the mailroom delivers all the mail the institution receives. To the extent the defendant is missing particular mail or packages and can provide details, such as tracking information, the Government will work with MCC legal counsel to locate the missing mail, as it has in the past.

### C.     *Facility Conditions*

The Letter Motion complains of a number of conditions at the MCC, which were previously raised and addressed before the Court. Defense counsel does not clarify the time periods when these conditions have existed or whether they currently exist. Taking each in turn:

As to complaints of insects and rodents, MCC legal counsel has confirmed that exterminators regularly come into the facility, including during the pandemic.

As to complaints about temperature control, after learning of the defendant's complaints during quarantine, the MCC Warden personally checked the temperature in the defendant's unit, confirmed it was neither excessively cold nor excessively hot, and observed that the defendant was not wearing a hat. The MCC Warden further informed the Government that no inmates have submitted complaints about the temperature.

As to complaints of standing water and leaks, whenever the defense has informed the Government or MCC legal counsel of standing water with specificity, the defendant has either been moved to a new cell or the leak has been fixed. The Government is not aware of a current

issue of standing water or leaks, but urges defense counsel to provide the undersigned a specific description of any such problem if one exists.

As to complaints regarding laundry access, MCC legal counsel has informed the Government that the defendant's unit—when he is not in quarantine—has a washer and dryer that he can use.  Additionally, laundry service is available once per week.  If the defendant is currently in need of laundry services, the Government urges defense counsel to inform the undersigned.

As to complaints about limited shower access and recreation, inmates in quarantine are restricted in their shower access and movement in order to maintain an effective quarantine and prevent the spread of COVID-19.  When inmates are not in quarantine, they are permitted two hours out of their cells per day, during which time they are permitted to shower.  No inmates have been permitted into the outdoor recreation area during the pandemic as part of an effort to limit inmate movement and prevent the spread of COVID-19.

As to complaints of black mold and/or mildew, whenever the defense has informed the Government or MCC legal counsel of such issues with specificity, MCC staff has addressed the particular complaint.  The Government is not aware of a current specific area where the defense claims there is unaddressed black mold and/or mildew, but urges defense counsel to provide the undersigned a specific description of any such problem if one currently exists.

As to complaints regarding ventilation, whenever the defense has informed the Government or MCC legal counsel of such issues with specificity, MCC staff has addressed the particular complaint.  The Government is not aware of a current complaint on this score, but urges defense counsel to provide the undersigned a specific description of any such problem if one currently exists.

As to complaints regarding computers, whenever the defense has informed the Government or MCC legal counsel of such issues with specificity, MCC staff has addressed the particular complaint.  MCC legal counsel has informed the Government that there have been no recent complaints regarding the computers where the defendant is currently housed.  The Government urges defense counsel to provide the undersigned with a specific description of any such problem if one exists.

As to complaints regarding toilet paper, MCC legal counsel has informed the Government that each inmate receives two rolls of toilet paper per week and that an inmate can purchase additional rolls in commissary if desired.  If the defendant has not received his allotted toilet paper, the Government urges defense counsel to inform the undersigned.

As to the complaints regarding the defendant's property, the Government understands from MCC legal counsel that when the defendant was most recently released from quarantine, he received all of his property from his previous cell.  The Government is not aware of a specific complaint of currently missing property, but urges defense counsel to inform the undersigned if the defendant is missing property.

### D.     Access to Discovery

The Government produced the bulk of discovery in this case in 2017. Since that time, as the Government has come into possession of additional materials and as the defense has made specific requests for additional materials, the Government has made additional productions. The last such production was made in 2019. The Government has provided electronic copies of discovery to the defendant on hard drives for his review at his facility. Additionally, defense counsel can provide hard copies of discovery materials for the defendant to keep and review in his cell. In other words, the defendant has had years to review the bulk of the discovery in the case, and had several months to review the most recent production even before the pandemic.

Prior to the pandemic, whenever defense counsel made specific complaints about the defendant's access to discovery, the Government and MCC legal counsel worked to ensure that the defendant received additional time to review his discovery. For example, when the defendant was in the SHU, MCC legal counsel ensured that the defendant could review his discovery in an attorney conference room on days when his attorneys were scheduled to meet with him. Additionally, in the fall of 2019, MCC legal counsel arranged for the defendant to set up a schedule to review discovery seven hours per day Saturday through Thursday and three hours per day on Fridays. According to MCC legal counsel, that schedule provided the defendant with more access to electronic discovery review than any other inmate in the MCC at that time.

As the Court is aware, the pandemic presents an unprecedented challenge to the MCC, which must prioritize the health and safety of its inmates and staff. In order to do so, the MCC must limit inmate movement, which at this stage of the pandemic, means that when the defendant is not in quarantine, he has two hours per day out of his cell during which he may review electronic discovery. When in his cell, the defendant may review hard copies of his discovery, and the Government notes that the much of the discovery in this case could be printed out by defense counsel and sent to the defendant in hard copy.

### E.     Access to the Defense Team

The Letter Motion contains what appears to be a typo when it claims that the defense team has not seen the defendant in person at the MCC since February 2018, as numerous transcripts and emails make clear that defense counsel has had regular access to the defendant at the MCC throughout 2018, 2019, and the first two months of 2020. The Government accordingly believes the defense intended to state that defense counsel has not visited the defendant in the MCC since February 2020. Prior to February 2020, the Government worked with MCC legal counsel to develop a system through which defense counsel could schedule appointments in advance to meet with the defendant and minimize wait times. Additionally, MCC legal counsel provided defense counsel with updates regarding lockdowns and other potential delays. In other words, defense counsel was able to regularly visit with the defendant between his arrest in December 2016 and February 2020.

The most recent restrictions on visitation were occasioned first by a lockdown at the MCC for a significant security issue, and then by the pandemic. In order to prevent the spread of COVID-19, the MCC ceased all visitation for all inmates beginning in March of 2020. The defense does not appear to dispute, however, that they have been able to communicate with the defendant

over phone and/or video conference during the pandemic. In any event, the Government understands from MCC legal counsel that attorney visits are expected to resume at the MCC later this month.

### F.  Alleged Retaliation

The defense's claims of retaliation all appear to refer to incidents from a year or more ago. As to the specific incident regarding the cell search on his tier, which defense counsel first raised in May of 2019, MCC legal counsel previously informed the Government that the defendant's account of that incident was not accurate. In any event, MCC legal counsel reiterated the instruction to staff not to retaliate in any way against the defendant, and the defense noted in an email to Government counsel on May 10, 2019 that the defendant did not experience any retribution from other inmates as a result of this alleged incident.

Other than that one specific incident, the defense has made insinuations that MCC staff have retaliated against the defendant for his complaints about his conditions of confinement, but defense counsel has largely failed to provide specifics regarding the type of conduct alleged and the alleged culprit. There do not appear to be any allegations of recent incidents of this type.

### G.  Quarantine Policy

As of this week, the defendant was no longer in quarantine. The Government understands the defendant appeared in person for a conference today. As a result, according to MCC legal counsel, the defendant will be returned to quarantine, tested for COVID-19 after 14 days in quarantine, and then released once those test results come back negative from the lab. This policy is in place to prevent the spread of COVID-19 in the MCC. To the extent specific issues arise during this phase of quarantine, defense counsel should communicate with the Government and MCC legal counsel, who will work to address any complaints.

### IV.  Conclusion

The USMS cannot move the defendant to a local jail facility. Should the defendant wish to request a transfer to another federal facility, the Government will work with the USMS to accommodate that request. If the defendant elects to remain at the MCC, the Government will continue to work diligently with MCC legal counsel to address complaints whenever they are raised with specificity and in a timely fashion. Accordingly, the Letter Motion should be denied.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By:        /s/      
Maurene Comey & Jason Swergold
Assistant United States Attorneys

cc:   All counsel of record (by ECF)