UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

UNITED STATES OF AMERICA     :

          :     S4 16 Cr. 832 (KMK)

     - v. -     :

          :

NICHOLAS TARTAGLIONE,     :

          :

     Defendant.     :

------------------------------------------------------x


## OMNIBUS MEMORANDUM OF LAW OF THE UNITED STATES
## IN OPPOSITION TO THE DEFENDANT'S SUPPLEMENTAL PRETRIAL MOTIONS

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
300 Quarropas Street
White Plains, New York 10601


MAURENE COMEY
JASON SWERGOLD
JACOB R. FIDDELMAN
Assistant United States Attorneys
- Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................ 1

   I. The Defendant's Supplemental Motion to Suppress His Statements on Sixth
   Amendment Grounds Should Be Denied ...................................................... 1

      A. Relevant Facts ................................................................................ 2

      B. Applicable Law ............................................................................... 2

      C. Discussion ...................................................................................... 4

   II. The Defendant's Motion to Suppress Evidence Seized from
   103 Long Lane Should Be Denied ............................................................... 9

      A. Relevant Facts ................................................................................ 9

      B. Applicable Law ............................................................................... 12

      C. Discussion ...................................................................................... 16

CONCLUSION ..................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*Alexander v. Conn.*, 917 F.2d 747 (2d Cir. 1990)................................................................ 3
*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991) ........................................ 16
*Groh v. Ramirez*, 540 U.S. 551 (2004) ............................................................... 13
*Herring v. United States*, 555 U.S. 135 (2009).......................................................... 16
*Illinois v. Gates*, 462 U.S. 213 (1983) ...................................... 12, 13, 17, 18, 19, 22, 24
*Illinois v. Kirby*, 406 U.S. 682 (1972)........................................................................ 3
*Maryland v. Garrison*, 480 U.S. 79 (1987)................................................................ 22
*Massiah v. United States*, 377 U.S. 201 (1964) ........................................................ 2
*Millender v. Cty. of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010) ............................. 23
*Montejo v. Louisiana*, 556 U.S. 778 (2009)................................................................ 4
*Moran v. Burbine*, 475 U.S. 412 (1986) ..................................................................... 5
*Patterson v. Illinois*, 487 U.S. 285 (1988) ........................................................ 3, 4, 5
*Powell v. Alabama*, 287 U.S. 45 (1932) ..................................................................... 3
*Texas v. Brown*, 460 U.S. 730 (1983)....................................................................... 13
*United States v. Bender*, 423 F. Supp. 3d 473 (M.D. Tenn. 2019)............................. 19
*United States v. Brown*, 676 F. Supp. 2d 220 (S.D.N.Y. 2009)................................. 18
*United States v. Brown*, 699 F.2d 585 (2d Cir. 1983)................................................ 4
*United States v. Buck,* 813 F.2d 588 (2d Cir. 1987). ................................................ 14
*United States v. Castano*, 999 F.2d 615 (2d Cir. 1993) ............................................. 4
*United States v. Charria*, 919 F.2d 842 (2d Cir. 1990) ......................................... 4, 6
*United States v. Clark*, 638 F.3d 89 (2d Cir. 2011) ................................................. 23
*United States v. D'Amico*, 734 F.Supp.2d 321 (S.D.N.Y. 2010)................................ 21
*United States v. Fama*, 758 F.2d 834 (2d Cir. 1985) ............................................... 18
*United States v. Frank*, 8 F. Supp. 2d 284 (S.D.N.Y. 1998)................................... 6, 8
*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013) ............................... 13, 14, 20
*United States v. Gaskin*, 364 F.3d 438 (2d Cir. 2004)............................................. 17
*United States v. Gouveia*, 467 U.S. 180 (1984) ..................................................... 3, 5
*United States v. Gumaer*, 765 F. App'x 608 (2d Cir. 2019) ................................. 3, 4
*United States v. Jacobson*, 4 F. Supp. 3d 515 (E.D.N.Y. 2014)............................... 14
*United States v. Jimenez*, 205 F. App'x 656 (10th Cir. 2006)................................. 24
*United States v. Kemper*, 375 F. Supp. 2d 551 (E.D. Ky. 2005) ............................. 19
*United States v. Laster*, 2007 WL 2872678 (S.D.N.Y. Sep. 28, 2007) ...................... 8
*United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005).................................. 18, 19
*United States v. Leon*, 468 U.S. 897 (1984)....................................... 13, 15, 16, 24
*United States v. Levy*, No. 11 Cr. 62, 2013 WL 664712 (S.D.N.Y. Feb. 25, 2013) ..... 21
*United States v. Loy*, 191 F.3d 360 (3d Cir. 1999) ................................................. 19
*United States v. Lustyik*, 57 F. Supp. 3d, 213 (S.D.N.Y. 2014)............................... 14
*United States v. Marion*, 404 U.S. 307 (1971)......................................................... 8
*United States v. Paymon*, 523 F. Supp. 2d 584 (E. D. Mich. 2007) ........................ 19
*United States v. Ray*, 541 F. Supp. 3d 355 (S.D.N.Y. 2021)................................... 19
*United States v. Riley*, 906 F.2d 841 (2d Cir. 1990) ...................................... 14, 15, 21
*United States v. Robinson*, No. 16 Cr. 545 (ADS), 2018 WL 5928120
   (E.D.N.Y. Nov. 13, 2018) ............................................................... 20, 21

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) ........................................................ 13

*United States v. Rosa*, 626 F.3d 568 (2d Cir. 2010) ...................................................... 14

*United States v. Singh*, 390 F.3d 168 (2d Cir. 2004) ............................................... 16, 17

*United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983) ..................................... 13

*United States v. Ulbricht*, 858 F.3d 719 (2d Cir. 2017) ............................................ 13, 15

*United States v. Ulbricht*, No. 14 Cr. 68 (KBF), 2014 WL 5090039
  (S.D.N.Y. Oct. 10, 2014) ............................................................................................ 15

*United States v. Ventresca*, 380 U.S. 102 (1965) ......................................................... 13

*United States v. Vinieris*, 595 F. Supp. 88 (S.D.N.Y. 1984) .......................................... 4

*United States v. Wade*, 388 U.S. 218 (1967) ................................................................. 2

*United States v. Walker*, 58 F. Supp. 3d 1180 (D. Kan. 2014) ..................................... 19

*United States v. Washington*, 48 F.3d 738 (2d Cir. 1995) ............................................ 21

*United States v. Young*, 745 F.2d 733 (2d Cir. 1984) .............................................. 14, 22

*United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006) .................................................... 23

*U.S. Postal Service v. C.E.C. Services*, 869 F.2d 184 (2d Cir. 1989) ........................... 15

**Other Authorities**

U.S. Const. amend. IV ................................................................................................... 12

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in response to the defendant's supplemental motion to suppress statements he made on December 19, 2016, and his motion to suppress evidence seized from 103 Long Lane pursuant to three validly issued search warrants.  For the reasons set forth below, the defendant's motions should be denied in their entirety.

## ARGUMENT

### I.  The Defendant's Supplemental Motion to Suppress His Statements on Sixth Amendment Grounds Should Be Denied

In his opening motion to suppress, the defendant sought to suppress statements that he made to law enforcement on December 19, 2016, arguing that these statements were obtained in violation of the Fifth Amendment.  In opposing the motion, the Government agreed that an evidentiary hearing was necessary to resolve this motion, but that following the hearing, the Court should deny the defendant's motion because the defendant was not "in custody" when he spoke with law enforcement, and two of his statements were made spontaneously and not in response to law enforcement prompts or questioning.  The hearing is currently scheduled for May 24, 2022.

In his supplemental motion, the defendant now argues that his statements should also be suppressed because they were obtained in violation of his Sixth Amendment right to counsel.  Because the defendant's Sixth Amendment argument is premised entirely on a mistaken view as to time at which the indictment was returned against him (and about which there is no dispute of material fact), it should be denied without a hearing.

### A.    Relevant Facts

The Government incorporates by reference the relevant facts previously set forth in its opening opposition brief regarding the timing of the defendant's encounters with law enforcement on December 19, 2016 (Dkt. No. 163, at 24-28), and sets forth the following additional facts.

On December 14, 2016, five days before the defendant's interview with law enforcement, the Government presented evidence to the grand jury in this case but did not present the indictment for a vote at that time.  (Comey Decl. ¶ 2).  On December 19, 2016, the Government returned to the grand jury at approximately 11:24 a.m. to provide legal instructions, answer any questions from the grand jury, and ask the grand jury to vote on the indictment.  (Comey Decl. ¶ 3).  At approximately 12:15 p.m. on December 19, approximately 39 minutes after the defendant was provided, and voluntarily waived, his *Miranda* rights,[1] the grand jury voted a true bill.  (Comey Decl. ¶ 3).  At approximately 12:35 p.m., the defendant requested counsel and refused to answer further questions from law enforcement.[2]  At approximately 12:55 p.m., the indictment was returned.  (Comey Decl. ¶ 4).

### B.    Applicable Law

### 1.    The Sixth Amendment Right to Counsel

Once adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical stages" of the criminal proceedings, which include "interrogation" by Government agents.  *See United States v. Wade*, 388 U.S. 218, 227-28 (1967); *Massiah v. United States*, 377 U.S. 201, 204-05 (1964); *Powell v. Alabama*, 287

---

[1] Video of Post-Arrest Statement at 8:13 – 9:12.

[2] *Id.* at 1:08:35.

U.S. 45, 57 (1932). "Attachment of the Sixth Amendment right to counsel occurs 'only when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing.'" *United States v. Gumaer*, 765 F. App'x 608, 613 (2d Cir. 2019), *as amended* (Apr. 19, 2019) (quoting *United States v. Gouveia*, 467 U.S. 180 (1984)). As the Supreme Court has explained, that is because "[i]t is only at that time that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified," and "[i]t is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Gouveia*, 467 U.S. at 189 (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). Thus, courts have routinely held that law enforcement interactions with a defendant before formal judicial proceedings are initiated do not run afoul of the Sixth Amendment. *See, e.g.*, *Kirby*, 406 U.S. at 690 (declining to extend Sixth Amendment protection to defendant's participation in a pre-indictment lineup); *Gumaer*, 765 F. App'x at 614 (Sixth Amendment rights did not attach prior to defendant's initial appearance before a judicial officer, even where a complaint was sworn out against the defendant); *Alexander v. Conn.*, 917 F.2d 747, 751 (2d Cir. 1990) (police could question defendant without the presence of counsel about an uncharged homicide even though defendant had previously requested counsel when arraigned on an arson charge).

The Sixth Amendment right, however, can be waived if the waiver is voluntary, knowing, and intelligent. *See Patterson v. Illinois*, 487 U.S. 285, 292-300 (1988); *id.* at 298 ("[I]t is our view that whatever warnings suffice for *Miranda*'s purposes will also be sufficient in the context of postindictment questioning."); *id.* at 300 ("So long as the accused is made aware of the 'dangers and disadvantages of self-representation' during postindictment questioning, by use of

the *Miranda* warnings, his waiver of his Sixth Amendment right to counsel at such questioning is

'knowing and intelligent.'").  Such a waiver is typically subsumed by a general waiver of

*Miranda* rights:

> The defendant may waive the right whether or not he is already
> represented by counsel; the decision to waive need not itself be
> counseled. And when a defendant is read his *Miranda* rights
> (which include the right to have counsel present
> during interrogation) and agrees to waive those rights, that
> typically does the trick, even though the *Miranda* rights
> purportedly have their source in the *Fifth* Amendment.

*Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (emphasis in original) (citation omitted).[3]

### C.    Discussion

The defendant's Sixth Amendment claim rises and falls on the time at which the grand

jury returned the indictment in this case.  As discussed above, the indictment was not returned

until 12:55 p.m., approximately 20 minutes after the defendant's interview with law enforcement

concluded.  Accordingly, there was no Sixth Amendment violation as to any of the statements

that the defendant made prior to the indictment being returned.[4]  *See Gumaer*, 765 F. App'x at

---

[3] The defense's supplemental motion cites *United States v. Brown*, 699 F.2d 585 (2d Cir. 1983) for the proposition that a defendant is entitled to something more than *Miranda* warnings before he can waive his Sixth Amendment rights.  The Second Circuit subsequently recognized, however, that the line of cases upon which *Brown* relied was abrogated by the Supreme Court's decision in *Patterson*, 487 U.S. at 292-300.  *See United States v. Charria*, 919 F.2d 842, 847-48 (2d Cir. 1990) (identifying "*Patterson*'s conclusion that *Miranda* warnings suffice to effect a valid sixth amendment waiver during postindictment questioning"), *abrogation on other grounds recognized by United States v. Castano*, 999 F.2d 615 (2d Cir. 1993).

[4] As he did in his opening brief, the defendant once again makes passing references to controlled calls between a confidential source and the defendant on the morning of December 19, 2016, although it is unclear whether he is moving to suppress those statements.  (Supp. Mot. at 6-7).  In any event, there is no conceivable basis for suppressing these statements because the defendant concedes they were made before he argues he was in custody (*see* Dkt. No. 149 at 12), and as discussed herein, well before the indictment was returned against him.  *See United States v. Vinieris*, 595 F. Supp. 88, 93 (S.D.N.Y. 1984) ("The defendant's meeting with the two alleged government informants took place before the indictment or any other possible 'critical stage.' Accordingly, there cannot have been any violation of the *Massiah* rule.").

613-14 (noting that "in order to show a violation of the Sixth Amendment, [defendant] must establish that his Sixth Amendment right had 'attached' at the time of its claimed violation," and that attachment occurs "'only when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing'" (*quoting Gouveia*, 467 U.S. 180)); *see also Moran v. Burbine*, 475 U.S. 412, 432 (1986) ("For an interrogation, no more or less than for any other 'critical' pretrial event, the possibility that the encounter may have important consequences at trial, standing alone, is insufficient to trigger the Sixth Amendment right to counsel.").

Moreover, by the time the Sixth Amendment attached, the defendant had already waived his right to counsel.  At approximately 11:36 a.m. (*i.e.* 39 minutes before the grand jury voted a true bill and over an hour before the indictment was returned), Investigator Hammer advised the defendant that he (i) had the right to remain silent and anything he said could and would be used against him in a court of law, (ii) had the right to talk to a lawyer and have one present with him while being questioned, and that if he could not afford to hire an attorney, one would be appointed to represent him free of charge, and (iii) could exercise those rights at any time.[5]  The defendant then confirmed that he understood those rights, and that with those rights in mind, he wished to speak with law enforcement.  Thus, even if the Sixth Amendment right to counsel had attached, the defendant validly waived that right because he was "made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forego the aid of counsel."  *Patterson*, 487 U.S. at 292-93 (holding that defendant

---

[5] Video of Post-Arrest Statement at 8:13 – 9:12.  Even before the defendant was provided with his *Miranda* warnings, the defendant already knew he had a right to counsel.  As Investigator Hammer was preparing to administer the warnings, the defendant stated, "for now, I'm not going to ask for a lawyer."  *Id.* at 8:20.

waived his Sixth Amendment right to counsel during post-indictment questioning where the *Miranda* warnings made him aware of his right have counsel present during questioning, and advised him that his statements could be used against him in a subsequent proceeding); *see also Charria*, 919 F.2d at 847-48.

In a footnote, the defendant advances an alternative argument—that delaying the indictment until questioning was over was "an intentional device to gain tactical advantage"— that fares no better.  (Supp. Mot. at 4 n.3).  In *United States v. Frank*, 8 F. Supp. 2d 284 (S.D.N.Y. 1998), Judge Cote denied a virtually identical claim made by a capital defendant who challenged the admissibility of his statements to law enforcement on Sixth Amendment grounds. There, the defendant (who was in state custody at the time), was interviewed by law enforcement at the same time that federal prosecutors were presenting an indictment against the defendant to grand jury.  The defendant argued that the prosecution had "act[ed] to evade the requirements of the Sixth Amendment by manipulating the time of the return of the indictment so that it occurred after the [interrogation]."  *Id.* at 306.  In denying the defendant's motion, Judge Cote first rejected the defendant's argument that the Sixth Amendment attaches while the Government is making a presentation to the grand jury, finding that "[i]n the area of criminal procedure, bright line rules are necessary to give guidance to law enforcement authorities," and the defense's proposed interpretation of the Sixth Amendment "would invite utter chaos into the activities of law enforcement personnel, who would be left to guess at what point a contemplated prosecution had developed such that the Government was 'at' the initiation of formal proceedings."  *Id.* Judge Cote further found that the Government had not acted in bad faith in its timing of the indictment on federal charges because this was "not a case where the authorities held a defendant

in custody for a prolonged period of time on selected charges in the hopes that he would talk about other, uncharged offenses." *Id.*

As was the case in *Frank*, the Government in this case began presenting evidence to the grand jury prior to the defendant's interview with law enforcement, but the indictment was not returned until after the defendant's interview concluded. Doing so enabled law enforcement to take multiple investigative steps, including engaging the defendant in a voluntary interview. There is nothing improper about the use of that investigative technique or about law enforcement's ongoing efforts to develop evidence regarding the crimes under investigation. This is especially true when, at the time of the interview, law enforcement still had not recovered the bodies of the four victims and had not developed sufficient evidence to charge other participants in the victims' murders. As evidenced by the superseding indictment returned on May 31, 2017 (*see* ECF No. 23), the Government's investigation was still ongoing on December 19, 2016 and remained ongoing for months thereafter.

Indeed, the defendant has not pointed to any evidence that the Government acted in bad faith, nor can he. The Government is not required to obtain an indictment at any set point in time, and even if an indictment is contemplated, the Government may still interview a defendant before the right to counsel attaches. The defendant's interactions with law enforcement, which began shortly after 10:45 a.m. and concluded when the defendant invoked his right to counsel and declined to answer further questions, lasted for less than two hours. During that time, the defendant was provided *Miranda* warnings before he was questioned at the New York State Police barracks. The defendant was not held for a prolonged period of time, nor was he detained on unrelated charges in the hope that he would speak about the offenses at issue in this case. In

other words, the facts here fall squarely within the scope of permissible investigative actions identified in *Frank*, 8 F. Supp. 2d at 306.

In resisting this conclusion, the defendant pointed to no authority that supports his argument. The defendant's citation to *United States v. Marion*, 404 U.S. 307 (1971), is unavailing. (Supp. Mot. at 4 n.3). There, the Supreme Court was addressing the entirely separate and unrelated issue of whether dismissal of an indictment was a proper remedy for a delay between the occurrence of the alleged crime and the filing of an indictment. *Id.* at 308. In doing so, the Court observed, without deciding, that certain circumstances of pre-indictment delay could give rise to a dismissal where pre-indictment delay caused substantial prejudice to the defendant's rights, and the delay was an intentional device to gain tactical advantage over the accused. *Id.* at 324. Here, by contrast, there is no suggestion of unwarranted delay between the crime and the indictment.

In sum, the defendant's Sixth Amendment rights were not violated when he was interviewed by law enforcement prior to the return of the indictment in this case, and to the extent he had such a right, he validly waived it after receiving and waiving his *Miranda* rights and agreeing to voluntarily speak with law enforcement.[6] Accordingly, the defendant's motion should be denied.

---

[6] For the reasons set forth in the Government's opening opposition brief (*see* Dkt. No. 163 at 38), even if the defendant's Sixth Amendment rights had attached, two of the defendant's statements were made spontaneously and not in response to questioning by law enforcement. Those two spontaneous statements remain admissible regardless of when the defendant's right to counsel attached. *See United States v. Laster*, 06 Cr. 1064 (JFK), 2007 WL 2872678, at *5 (S.D.N.Y. Sep. 28, 2007) ("A defendant's statements which are spontaneous are not violative of the Sixth Amendment." (internal quotation marks omitted)).

II.     **The Defendant's Motion to Suppress Evidence Seized from 103 Long Lane Should Be Denied**

The defendant also seeks to suppress evidence that law enforcement seized from 103 Long Lane, Bloomingburg, New York (the "Premises"), on the grounds that one or more of the warrants issued for the search of the property (i) lacked probable cause that the items to be seized would be located there, (ii) were overbroad, and/or (iii) were insufficiently particularized.  The defendant also perfunctorily argues that the good faith exception should not apply.  Because each of these arguments lacks merit, this motion should be denied.

A.     **Relevant Facts**

On December 20, 2016, at 4:23 p.m., the Honorable Paul E. Davison, United States Magistrate Judge, issued a search warrant (the "First Warrant") for the Premises, which at the time was the defendant's residence.  The First Warrant authorized law enforcement to search the Premises for "instrumentalities, evidence, and fruits of violations of 21 U.S.C. § 848(e)," described specifically as "(1) trace evidence, including bodily fluids, such as blood, hairs, fibers, and clothing, (2) objects, materials, or other items containing such trace evidence, and (3) tools and machinery intended for digging."  In support of the First Warrant, the Government submitted an affidavit from FBI Task Force Officer Jason Gorr (the "Gorr Affidavit"), which set forth probable cause for the search.

At the outset, the Gorr Affidavit attached the indictment, which charged the defendant with the murders of the four victims, in violation of 21 U.S.C. § 848(e), and set forth information from various sources that detailed the defendant's participation in a cocaine distribution conspiracy and the murders of the four victims in furtherance of that conspiracy.  (Gorr Aff. ¶¶ 5-11, Ex. B).  The Gorr Affidavit then set forth probable cause to believe that trace evidence from the victims, and the machine used to bury the victims would be found on the Premises:

namely; (1) information from a cooperating witness ("CW-2") that CW-2 had been instructed by the defendant on April 12, 2016 (i.e. the day after the four victims disappeared) to use a large machine to fill in a hole on the defendant's former property located at 419 Old Mountain Road that was not there the day prior (*id.* ¶ 12); (2) earlier in the day on December 20, 2016, law enforcement began excavating the area identified by CW-2 and found four human bodies (*id.* ¶ 14); (3) CW-2 informed law enforcement that when the defendant moved from 419 Old Mountain Road to the Premises, he took the machine that CW-2 used to fill the hole with him to the Premises (*id.* ¶ 15); and (4) on December 19, 2016, law enforcement officers were permitted by the defendant's wife to enter the Premises, where they observed several tractors, an excavator, and a backhoe (*id.*).  The Gorr Affidavit also stated that TFO Gorr knew, based on his training and experience and discussions with other law enforcement officers involved in murder investigations, that "physical evidence such as bodily fluids, including blood, hair, and fibers, can be recovered months after the underlying crimes have been completed," and that "tools and vehicles used to move or carry human remains may maintain trace evidence of the sort described herein for many months after the human remains have been removed."  (*Id.* ¶ 17).

Law enforcement agents began search the Premises at approximately 12:15 p.m. on December 21, 2016.  Later that day, at 1:43 p.m., Judge Davison issued a second search warrant for the Premises (the "Second Warrant"), which authorized law enforcement to seize the following, additional instrumentalities, evidence, and fruits of 21 U.S.C. § 848(e): firearms, ammunition for firearms, and documentation reflecting the ownership or purchase of firearms and/or ammunition.  In support of the Second Warrant, the Government submitted an affidavit from FBI Task Force Officer Michael Davis (the "First Davis Affidavit"), which set forth probable cause to believe that one or more firearms used to kill the victims was located on the

Premises.  The First Davis Affidavit contained the same probable cause as the Gorr Affidavit, and the following additional information: (1) on December 20, 2016, the Orange County Medical Examiner's Office conducted a preliminary examination of the four bodies found on the defendant's former property, during which "the medical examiner found projectiles, believed to be bullets, in the skulls of three of the bodies" (First Davis Aff. ¶ 15); (2) the defendant was the registered owner of multiple firearms (*id.* ¶ 16); and (3) the defendant's wife told law enforcement on December 19, 2016, that the defendant kept guns at his residence (*i.e.* the Premises) (*id.*).

Finally, at 5:06 p.m. on December 21, 2016, Judge Davison issued a third search warrant for the Premises (the "Third Warrant"), which authorized law enforcement to seize the following, additional instrumentalities, evidence, and fruits of 21 U.S.C. § 848(e): duct tape; zip ties; any security cameras, DVR, or other recording device containing surveillance video from April 11, 2016; and bag of white powder with the words "Provar Blend" handwritten in black marker.  In support of the Third Warrant, the Government submitted an affidavit from FBI Task Force Officer Michael Davis (the "Second Davis Affidavit"), which set forth probable cause to seize these additional items; namely: (1) when law enforcement recovered the victims' bodies from the defendant's former property, they found that one of the four bodies appeared to have duct tape on it and a zip tie was located near the wrist of another body (Second Davis Aff. ¶ 6); (2) while searching the Premises pursuant to the previously issued warrants, law enforcement found a roll of duct tape and two bags of zip ties inside of a drawer in an outdoor shed (*id.* ¶ 8); (3) law enforcement had on prior occasions obtained video camera footage from the Likquid Lounge, where the victims were believed to have been killed, but that on April 16, 2016 (*i.e.* 5 days after the victims disappeared), law enforcement was told that the security system was

broken and were escorted off the premises by a Likquid Lounge employee (*id.* ¶ 5); (4) law enforcement had been unable to locate any security cameras, DVR, or other recording device containing video from April 11, 2016 (*id.* ¶ 6); and (5) while executing the prior warrants at the Premises, law enforcement found a bag of white powder with the words Provar Blend handwritten in black marker, which agents believed based on their training and experience was a controlled substance (steroids) (*id.* ¶ 9).

During the execution of the three warrants on December 21, 2016, law enforcement seized the following items from the Premises: (i) a Cimeron Repeating Arms 12 gauge shotgun; (ii) an American Tactical AT47 with loaded clip; (iii) a Colt M4 Carbine with loaded clip; (iv) a German Sport Guns .22 caliber firearm; (v) a black Husky toolbox containing assorted ammunition; (vi) 33 rounds of .357 ammunition, 1 round 7.62 ammunition, 22 rounds of 33 caliber ammunition, 213 rounds of Winchester .22 caliber ammunition; (v) a magazine with an unknown number of ammunition; (vi) a bag of Cambridge multipurpose cable ties; (viii) loose zip ties; (ix) four rolls of duct tape; and (x) a backhoe.  (Mot. Ex. D).

### B.   Applicable Law

#### 1.   Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The legal standard for determining whether a particular warrant application is supported by probable cause is well established.  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Such determinations must be approached in a practical way, *id.* at 232, because

"probable cause is a flexible, common-sense standard," *Texas v. Brown*, 460 U.S. 730, 742

(1983).  Inferences drawn by law enforcement agents based on facts known to them, the totality

of the circumstances, and their training and experience can all support a probable cause finding.

*See Gates*, 462 U.S. at 231-32.

 "A search warrant issued by a neutral and detached magistrate is entitled to substantial

deference, and 'doubts should be resolved in favor of upholding the warrant.'"  *United States v.

Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (*quoting United States v. Travisano*, 724 F.2d 341, 345

(2d Cir. 1983).  This is so for at least two reasons. First, as the Supreme Court has observed,

"[r]easonable minds frequently may differ on the question whether a particular affidavit

established probable cause." *United States v. Leon*, 468 U.S. 897, 914 (1984).  Second, "[a]

grudging or negative attitude by reviewing courts toward warrants will tend to discourage police

officers from submitting their evidence to a judicial officer before acting." *United States v.

Ventresca*, 380 U.S. 102, 108 (1965).  For these reasons, the Supreme Court has directed that

"courts should not invalidate [a] warrant by interpreting the affidavit in a hypertechnical, rather

than a commonsense, manner." *Id.* at 109.

### 2. Particularity

 To satisfy the particularity requirement, a warrant must: (1) "identify the specific offense

for which the police have established probable cause"; (2) "describe the place to be searched";

and (3) "specify the items to be seized by their relation to designated crimes." *United States v.

Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (internal quotation marks omitted).  "A search

warrant does not necessarily lack particularity simply because it is broad." *United States v.

Ulbricht*, 858 F.3d 71, 100 (2d Cir. 2017).  Rather, the requirement is satisfied if the warrant,

including its attachments, enables the executing officer to ascertain and identify with reasonable

certainty those items authorized to be searched and seized. *See Groh v. Ramirez*, 540 U.S. 551,

557-59 (2004); *United States v. Rosa*, 626 F.3d 56, 58 (2d Cir. 2010).  "Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." *United States v. Buck,* 813 F.2d 588, 590 (2d Cir. 1987) (internal quotation mark omitted) (*quoting United States v. Young*, 745 F.2d 733, 759 (2d Cir.1984)).

A warrant that calls for seizure of "all evidence" of a given crime or crimes is sufficiently particular if it offers a list of illustrative items.  *See United States v. Riley*, 906 F.2d 841, 844-45 (2d Cir. 1990) (warrant containing list of illustrative items to seize was sufficiently particular notwithstanding provision allowing, as well, seizure of "other items that constitute evidence of the offenses" identified); *Young*, 745 F.2d at 758-60 (warrant allowing seizure of listed items plus "other evidence of" the crimes specified was sufficiently particular); *United States v. Lustyik*, 57 F. Supp. 3d 213, 227-28 (S.D.N.Y. 2014) (warrant permitting seizure of all "evidence, fruits, or instrumentalities" of specified crimes was sufficiently particular because it contained "an illustrative list of items to be seized," even though illustrative list was preceded by phrase "including but not limited to"); *United States v. Jacobson*, 4 F. Supp. 3d 515, 524 (E.D.N.Y. 2014) ("The reference to particular offenses and the use of an illustrative list of items to seize sufficiently particularized the warrants.").

### 3.    Overbreadth

The probable cause and particularity requirement intersect in the doctrine of overbreadth. A warrant "is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (2d Cir. 2013).  Thus, broad language in a search warrant may be justified if the criminal methods are extensive and the criminal activity is

pervasive.  For example, "[w]hen the criminal activity pervades [an] entire business, seizure of all records of the business is appropriate, and broad language used in warrants will not offend the particularity requirements." *Ulbricht*, 858 F.3d at 102 (quoting *U.S. Postal Service v. C.E.C. Services*, 869 F.2d 184, 187 (2d Cir. 1989)).

In this context, "it is important not to confuse the separate concepts of the seizure of an item . . . with the search itself." *United States v. Ulbricht*, No. 14 Cr. 68 (KBF), 2014 WL 5090039, at *14 (S.D.N.Y. Oct. 10, 2014).  That is:

> It has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized.  For instance, warrants have long allowed searching a house high and low for narcotics—indeed, it is rare that drug dealers point out the hidden trap in the basement—or reviewing an entire file cabinet to find files that serve as evidence of money laundering activity, which might be intermingled with files documenting lawful and irrelevant activity.

*Id.*; *accord Riley*, 906 F.2d at 845.

### 4.     Good Faith Exception to the Exclusionary Rule

Under the so-called "good faith" exception, the exclusionary rule and its remedy of suppression does not apply where evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922.  In announcing this principle, the Supreme Court noted that suppression could have no deterrent effect on law enforcement that acted on the objectively reasonable assumption that their conduct did not violate the Fourth Amendment. *Id.* at 918-19.  In analyzing the applicability of the good faith exception, the pivotal question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23.  If the reviewing court finds that the officers' reliance on the warrant was objectively reasonable, suppression is not

warranted.  *See, e.g.*, *United States v. Singh*, 390 F.3d 168, 183 (2d Cir. 2004).  Moreover, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Herring v. United States*, 555 U.S. 135, 144 (2009).

As a result, "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."  *Leon*, 468 U.S. at 922 (internal quotation marks and citations omitted); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (noting that the "issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause").

**C.      Discussion**

> **1. The Search Warrants Were Supported by Probable Cause and Sufficiently Particularized**

The defendant initially argues that the First Warrant for the Premises lacked probable cause to believe that human trace evidence and items used for digging would be found on the Premises.  (Mot. at 5-6).  He is incorrect.  The Gorr Affidavit discussed how CW-2 filled a new hole at a specific location on the defendant's former property the day after the four victims disappeared, and how law enforcement recovered four human bodies from that exact location. The Gorr Affidavit also stated that CW-2 knew that the defendant had taken the machine used to fill the hole to the Premises when he moved there, and law enforcement officers had seen such large machinery the day before applying for the First Warrant when they were given consent to enter the Premises.  In addition, the Gorr Affidavit included TFO Gorr's knowledge, based on his training and experience, that human trace evidence be found months after an underlying crime is

16

committed, and that it can remain on items that were used to bury human remains even after the body is no longer in contact with the item.  Taken together, those proffered facts more than supported the conclusions that (1) the defendant buried his victims' bodies; (2) the defendant brought his digging equipment from the property where the victims were buried to the Premises; and (3) that digging equipment itself was evidence of the victims' murders.  Judge Davison thus had a "substantial basis," *Gates*, 462 U.S. at 238-39, for finding probable cause to believe that the defendant had buried the four victims on his property using a large machine, and that the machine, which could contain trace evidence, was located at the Premises.

The defendant ignores the facts set forth in the Gorr Affidavit, and instead advances several strawman arguments.  For example, the defendant claims there are no allegations of "suspicious activity" at the residence (Mot. at 5), but no suspicious activity is required if there is probable cause to believe that a particular item used in the commission of a crime may be found at the subject location.  Similarly, the defendant points to the absence of surveillance that would have placed the items sought at the Premises.  (Mot. at 5).  Putting aside the unlikelihood that *trace* evidence could be seen by surveillance, the defendant ignores the fact that CW-2 informed law enforcement that the machine used to fill the hole was transferred to the Premises and the fact that law enforcement personally observed machines consistent with CW-2's description on the Premises shortly before the issuance of the First Warrant.  Likewise, the defendant argues that there was no evidence from any source that the items would be at the Premises (Mot. at 5), but the law is clear that showing a nexus between a crime and a place to be searched "does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience."  *Singh*, 390 F.3d at 182 (internal quotation marks omitted); *see also United States v. Gaskin,* 364 F.3d 438, 457 (2d Cir. 2004) (probable cause standard

"does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found").

Finally, the defendant's challenge to CW-2's information as "vague" and "temporally remote" is meritless. (Mot. at 5). CW-2 provided specific information about the location where he filled the hole, which turned out to be the exact location where law enforcement recovered the victims' bodies. That fact alone is extraordinary corroboration of CW-2's information. Moreover, CW-2's explanation to law enforcement that the machine he used to fill in the hole had been transferred to the Premises was corroborated by law enforcement's own observations of tractors, an excavator, and a backhoe at the Premises. Moreover, even if CW-2's information was "temporally remote," which it was not, the Gorr Affidavit set forth TFO Gorr's knowledge regarding the ability of trace evidence to be recovered months after a crime was committed. *See United States v. Fama*, 758 F2d 834, 838 (2d Cir. 1985) (noting that "an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application"); *see also United States v. Brown*, 676 F. Supp. 2d 220, 228 (S.D.N.Y. 2009) (denying suppression motion and finding that defendant's assertion about lack of probable cause "fails to take into account, among other things, the opinion of the affiant in both the Wheeler Avenue and cellphone search warrants that these premises and items would likely contain evidence of criminal activity"); *Gates*, 462 U.S. at 231-32 (an agent's training and experience can support probable cause).

The defendant's arguments regarding probable cause also fail because the defendant asks this Court to look at pieces of information contained in the Gorr Affidavit in isolation while ignoring the totality of the information provided to Judge Davison. "The probable cause analysis does not require the issuing magistrate to take each piece of evidence one by one and blind herself to it if each piece of evidence does not establish probable cause when taken in isolation or

18

is too dated or ambiguous." *United States v. Ray*, 541 F. Supp. 3d 355, 402 (S.D.N.Y. 2021). Instead, the "officer examines all of the evidence together and determines based on the "totality of the circumstances" whether probable cause exists." *Id.* (quoting *Gates*, 462 U.S. at 230-31). The cases cited by the defendant where courts suppressed evidence seized pursuant to search warrants (Mot. at 5-6) present wholly different facts than those before the Court. *See United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005) (Government conceded no probable cause where the warrant failed to connect the defendant to the location to be searched, and omitted the fact that the location was the site of prior controlled buys); *United States v. Loy*, 191 F.3d 360 (3d Cir. 1999) (anticipatory search warrant had to show probable cause that contraband delivered to a PO Box would be brought to the location to be searched); *United States v. Bender*, 423 F. Supp. 3d 473 (M.D. Tenn. 2019) (lack of probable cause where only evidence of drugs in apartment to be searched was smell of marijuana 20 days earlier when defendant was arrested there); *United States v. Walker*, 58 F. Supp. 3d 1180 (D. Kan. 2014) (evidence connecting defendant to the location to be search was over six years old); *United States v. Paymon*, 523 F. Supp. 2d 584 (E. D. Mich. 2007) (evidence supporting probable cause was seven years old and had not been sufficiently refreshed); *United States v. Kemper*, 375 F. Supp. 2d 551 (E.D. Ky. 2005) (affidavit contained allegation that homicide victim visited defendant on night of murder in a particular town, but lacked any evidence linking the crime to the location which was in that town).

Next, the defendant claims that the First Warrant was both overbroad and insufficiently particularized because it authorized the seizure of any item contains trace evidence and tools and machinery intended for digging.  (Mot. at 6-7).  According to the defendant, the descriptions of the items to be seized did not provide sufficient guidance to allow officers to determine whether

an item was used as an instrument of the subject offenses.  But this misapplies the law.  A warrant is sufficiently particular where it identifies the specific offenses for which probable cause existed, describes the places to be searched, and specifies the items to be seized by their relation to the subject offenses.  *See Galpin*, 720 F.3d at 445.  Here, the First Warrant was sufficiently particular because it identified the subject offense (*i.e.*, murder in connection with drug trafficking in violation of 21 U.S.C. § 848(e)), specified the location to be searched (*i.e.* 103 Long Lane), and described the items to be seized as the related to the subject offense (*i.e.* trace evidence, objects containing trace evidence, and tools and machinery intended for digging).  The defendant's contention that the First Warrant was insufficiently particular because it "fail[ed] to limit the items to be seized to those which are evidence of the alleged crimes" (Mot. at 7), is belied by the plain language of the warrant, which explicitly stated that law enforcement was authorized to search for and seize "instrumentalities, evidence, and fruits of violations of 21 U.S.C. § 848(e)," which were then specifically described in the warrant.  *See United States v. Robinson*, No. 16 Cr. 545 (ADS), 2018 WL 5928120, at *17 (E.D.N.Y. Nov. 13, 2018) (rejecting particularity challenge to warrant that "articulated the particular categories of property to be seized which 'constitute evidence, instrumentalities, contraband or fruits of the Subject Crimes,'" and where the warrant only authorized the seizure of property to the extent that it related to the crimes described in the supporting affidavit).

The First Warrant was also not overbroad.  A warrant is overbroad if its "description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based."  *Galpin*, 720 F.3d at 446.  Here, the First Warrant sought evidence of murders in connection with drug trafficking, and authorized a search for "trace evidence, including bodily fluids, such as blood, hairs, fibers, and clothing," objects that contained such

trace evidence, and tools and machinery for digging.  Such categories of evidence were directly tied to the charged offense, and the defendant does not argue otherwise.  Instead, he claims that the First Warrant did not provide adequate guidance for officers to distinguish items related to crimes from those that are not.  (Mot. at 7).  But "[t]he Fourth Amendment does not require that every item or document to be seized be specifically identified in the warrant; generic terms may be used to describe the materials to be seized."  *United States v. Levy*, No. 11 Cr. 62, 2013 WL 664712, at *5 (S.D.N.Y. Feb. 25, 2013) (citing *United States v. D'Amico*, 734 F.Supp.2d 321, 361 (S.D.N.Y. 2010)).  As the Second Circuit has held, even broad language is proper where the search is expressly limited to evidence of certain subject offenses.  *See, e.g.*, *United States v. Washington*, 48 F.3d 73, 78 (2d Cir. 1995) (rejecting challenge to warrant that authorized, *inter alia*, seizure of "[a]ny and all papers, records, receipts, documentation, telephone lists and records which may be related to illicit drug activities"); *Riley*, 906 F.2d at 844-45.

For example, in *Robinson*, the defendant challenged a search warrant that authorized seizure of, among other things, "any tools or other items which may have been used to break into residences."  2018 WL 5928120, at *17.  In finding that such a description was not overbroad, the court noted that the supporting affidavit "describe[d] multiple forced home invasions by the defendant."  *Id.* at *18.  Here, the Gorr Affidavit described how the four victims were found buried in a hole on the defendant's former property, how that hole had not existed the day before the victims disappeared, and how the hole was subsequently filled in using a machine.  Like the information in *Robinson*, the information contained in the Gorr Affidavit supported the inclusion of the categories of trace evidence and items used to dig holes in the warrant, because such evidence would be directly related to crimes that involved the burying of four bodies.

21

Relatedly, the defendant contends that the Second Warrant was overbroad because it authorized the seizure of all firearms, but provided no information from any source that the victims were even killed by a firearm, and did not describe the type of firearm or ammunition used to kill the victims.  (Mot. at 7.)  As to the first argument, the First Davis Affidavit alleged that "the medical examiner found projectiles, believed to be bullets, in the skulls of three of the bodies," and included TFO Davis's belief that at least three of the victims were shot and killed before being buried on the defendant's prior property.  In short, there was ample evidence that three of the victims buried on the defendant's property were killed by a firearm.  Taken together, that information provided Judge Davison with sufficient information to support the authorization of searching the Premises for firearms.  In attempting to dismiss this information as a "remote detail," the defendant improperly asks this Court to ignore the "great deference" paid to a magistrate's determination of probable cause, *see Gates*, 462 U.S. at 236, and to suspend common sense in its review of the Second Warrant.  *Id.*  (noting that "courts should not invalidate . . . warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner").

As to the second argument, although the warrant did not specify the type of firearm used in the murder of at least three of the victims, that information was not available at the time the warrant was executed.   As the Second Circuit has noted, "Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant."  *Young*, 745 F.2d at 759; *see also Maryland v. Garrison*, 480 U.S. 79, 87-88 (1987) (warrant was not fatally overbroad when based on the objective facts available to the officers at

the time); *Millender v. Cty. of Los Angeles*, 620 F.3d 1016, 1026 (9th Cir. 2010) (noting that "warrants may sometimes authorize a search for classes of generic items if the government was not able to describe the items more particularly in light of the information available to it at the time the warrant was issued").  Here, the First Davis Affidavit, which was presented to Judge Davison in real time as the search of the Premises was underway, was not overbroad because included the information that was available at the time based on the medical examiner's preliminary examination of the victims' bodies.  *See United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006) ("[T]he breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate.").

Finally, the defendant claims that items seized pursuant to the Third Warrant should be suppressed because law enforcement observed the items to be seized on the Premises only because they were executing two other invalid warrants.   This argument fails, both because law enforcement officers were lawfully on the Premises pursuant to the First and Second Warrant when they observed the items to be seized under the Third Warrant, and, in any event as discussed below, the good faith exception applies to the execution of all three warrants.

## 2. The Good Faith Exception Applies to All Three Warrants

Even if the Court determined that the warrants were defective—which they were not—the evidence seized pursuant to those warrants should not be suppressed because law enforcement relied upon those warrants in good faith.  The defendant has not overcome the presumption of good-faith reliance on the warrants on the facts here.  *See, e.g.*, *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011).  Given the factual proffers in the affidavits and the specific categories of items to be seized in each warrant, the three warrants were not "so facially

deficient" so as to preclude a reasonable officer's reliance on them and to justify the application

of the exclusionary rule. *Leon*, 468 U.S. at 923. To the contrary, the warrants were sufficiently

particular to enable reasonable reliance on them: among other things, the warrants provided

information specifically linking the defendant to the criminal conduct described, and included

facts to support the conclusion that the victims' bodies were buried using items intended for

digging holes, and at least three of the victims were shot in the head based on the presence of

projectiles in their skulls. Other than a conclusory statement that any reasonably well-trained

officer would recognize the purported defects in the warrants (Mot. at 8), the defendant alleges

no facts to support an inference that the agents were not acting in good faith when they relied on

the signed warrants and searched the Premises. Therefore, a reexamination of the merits of the

probable cause determination is unwarranted here and suppression is inappropriate. *See, e.g.*,

*United States v. Jimenez*, 205 F. App'x 656, 662 (10th Cir. 2006) (holding that good faith

exception applied to overbroad warrant that authorized seizure of all firearms despite information

that a handgun was used, because there was no information that officers intentionally or

recklessly omitted fact regarding the handgun from the affidavit). Similarly, the defendant's

effort to pick apart various facts set forth in the affidavits is unavailing to show lack of probable

cause, let alone bad faith. *See, e.g.*, *Gates*, 462 U.S. at 245 n.14 (criticizing the dissent's "line-

by-line scrutiny" which is "inappropriate in reviewing [the] magistrate's decisions").

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that the Court deny the

defendant's motion to suppress his statements on Sixth Amendment grounds without a hearing

(and in its entirety following a hearing), and deny the motion to suppress evidence found at 103

Long Lane without a hearing.

Dated:        White Plains, New York
              April 18, 2022

                                Respectfully submitted,

                                DAMIAN WILLIAMS
                                United States Attorney for the
                                Southern District of New York

By:     /s/                        .
                                Maurene Comey
                                Jason Swergold
                                Jacob R. Fiddelman
                                Assistant United States Attorneys
                                (212) 637-2324
                                (914) 993-1963
                                (212) 637-1024

cc:     *All Counsel of Record (by ECF)*