

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

March 2, 2023

**BY ECF**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    *United States v. Nicholas Tartaglione*, S4 16 Cr. 832 (KMK)

Dear Judge Karas:

    The Government respectfully submits this letter to supplement its *in limine* motions in advance of the trial scheduled to commence on March 13, 2023 in the above-referenced case. In particular, the Government seeks a ruling limiting certain cross-examination with respect to certain cooperating witnesses.[1] Specifically, the defense should not be permitted to cross-examine these witnesses regarding: (1) past instances of domestic violence; (2) involvement in paid sex acts; and (3) assault, criminal mischief, bail jumping, and disorderly conduct convictions that are all more than two decades old. In addition, the defense should not be permitted to cross-examine any of the cooperating witnesses about the death penalty. For the reasons set forth below, each of those topics have no bearing on the witnesses' credibility, are collateral to the issues at trial, have little or no probative value, and are highly prejudicial.

    A.  **Background**

    <u>CW-1</u>. The Government expects CW-1 to testify regarding, among other things, the conspiracy to buy cocaine in Texas and sell it in Florida using money from the defendant; Martin Luna's claim that money from that conspiracy was stolen from him; efforts to force Luna to repay that money; and the events surrounding the April 11, 2016 kidnapping and murders of the four victims. CW-1 was approached by law enforcement in early December 2016 and began cooperating with the Government before any charges were filed against CW-1. CW-1 surrendered approximately two weeks later and consented to the filing of an Information containing a narcotics conspiracy charge. Subsequently, CW-1 pled guilty to multiple charges, including narcotics conspiracy and murder charges. The Government respectfully requests a pretrial ruling precluding cross-examination regarding the following:

---

[1] The Government attempted to meet and confer with defense counsel regarding all of the topics identified in this letter, but the defense was unwilling to agree not to raise any of these topics on cross-examination.

- Multiple incidents in the 1990s and 2000s when CW-1 engaged in domestic violence with his girlfriends, none of which resulted in serious injury.
- A period in the late 1990s when CW-1 ran an escort service through which adult women engaged in paid sex acts and provided CW-1 with a cut of their income.
- Incidents when CW-1 paid adult women to have sex with him.
- Incidents when other adults paid CW-1 to have sex with them.

CW-2. The Government expects CW-2 to testify regarding, among other things, the conspiracy to buy cocaine in Texas and sell it in Florida using money from the defendant; Martin Luna's claim that money from that conspiracy was stolen from him; efforts to force Luna to repay that money; and the events surrounding the April 11, 2016 kidnapping and murders of the four victims. CW-2 was approached by law enforcement in December 2016 and began cooperating with the Government before any charges were filed against CW-2. CW-2 surrendered approximately two months later and consented to the filing of an Information. Subsequently, CW-2 pled guilty to multiple charges, including narcotics conspiracy and accessory after the fact to murder. The Government respectfully requests a pretrial ruling precluding cross-examination regarding the following:

- Incidents when CW-2 paid adult women to have sex with him.

CW-3. The Government expects CW-3 to testify regarding, among other things, the conspiracy to buy cocaine in Texas and sell it in Florida using money from the defendant; Martin Luna's claim that money from that conspiracy was stolen from him; efforts to force Luna to repay that money; and the events surrounding the April 11, 2016 kidnapping and murders of the four victims. CW-3 was arrested and charged by indictment with multiple charges, including death-eligible murder charges, in 2017. CW-3 began cooperating several months after his arrest and subsequently pled guilty to multiple charges, including murder charges. The Government respectfully requests a pretrial ruling precluding cross-examination regarding the following:

- May 8, 1978 conviction for Disorderly Conduct, a violation, for which CW-3 was sentenced to a conditional discharge and a $50 fine.
- April 13, 1983 conviction for Bail Jumping, a misdemeanor, for which CW-3 was sentenced to 60 days' imprisonment and three years' probation.
- October 30, 1984 conviction for Criminal Mischief, a misdemeanor, for which CW-3 was sentenced to 30 days' imprisonment.
- May 9, 1990 conviction for Attempted Assault, a misdemeanor, for which CW-3 was sentenced to one year of probation.
- May 29, 1991 conviction for Assault, a misdemeanor, for which CW-3 was sentenced to a conditional discharge.
- January 18, 1996 conviction for Assault, a misdemeanor, for which CW-3 was sentenced to 3 years' probation.
- May 2, 2000 conviction for Criminal Mischief, a felony for which CW-3 was sentenced to five years' probation. This conviction arose out of an incident when CW-3 caught his fiancé with another man and reacted by assaulting that man, breaking the window on the man's car, and taking the engagement ring back from his fiancé.

- Multiple incidents in the 1980s and 1990s when CW-3 engaged in domestic disputes with romantic partners, none of which resulted in serious injury.
- Incidents in approximately 2010 when CW-3 provided security and transportation for a prostitution business and paid adult women to have sex with him for money.

**B. Applicable Law**

The Federal Rules of Evidence limit the circumstances under which evidence of specific acts of a witness may be introduced at trial. Rule 608(b) provides that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." The Court "may, on cross-examination, allow [those prior acts] to be inquired into," but only if such acts "are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b)(1). Any such cross-examination also must satisfy Rule 403—that is, specific instances of a witness's prior conduct may be inquired into on cross-examination only if the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed. R. Evid. 403; *United States v. Sasso*, 59 F.3d 341, 347-48 (2d Cir. 1995). In this context, evidence is unfairly prejudicial if it would invite the jury to decide an issue material to the outcome of the case for reasons that have nothing to do with the factual issues properly before the jury. *See United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993).

With respect to prior convictions, Rule 609(a)(1) provides that evidence of a witness's prior felony conviction "must be admitted, subject to Rule 403." *See United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) ("Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully."). Pursuant to Rule 609(a)(2), evidence of any conviction, regardless of whether it is a felony, is admissible if it involved a crime of dishonesty or false statement. *See* Fed. R. Evid. 609(a)(2) (evidence of a prior conviction "must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement"). However, Rule 609(b) places a time restriction on the admissibility of prior convictions: "[I]f more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[,] [e]vidence of the conviction is admissible only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). In order to admit a conviction subject to Rule 609(b), a court must make an "on-the-record determination supported by specific facts and circumstances that the probative value of the evidence substantially outweighs its prejudicial effect." *United States v. Mahler*, 579 F.2d 730, 736 (2d Cir. 1978). The Second Circuit "ha[s] repeatedly 'recognized that Congress intended that convictions over ten years old be admitted very rarely and only in exceptional circumstances." *Farganis* v. *Town of Montgomery*, 397 F. App'x 666, 669 (2d Cir. 2010) (quoting *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993)).

Furthermore, Rule 611 provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility," and that the Court should "avoid wasting time" and "protect witnesses from harassment or undue embarrassment." It is well settled that "[t]he scope and extent of cross-examination lies within the discretion of the trial judge." *United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990) (internal quotation marks omitted). As the Supreme Court has explained:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination [of a prosecution witness] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness 'safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks omitted). "As long as a defendant's right to confront the witnesses against him is not violated, limitations on cross-examination are not grounds for reversal," *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990), and "[t]he decision of the trial court to restrict cross-examination will not be reversed on appeal unless its broad discretion has been abused," *United States v. Maldonado-Rivera*, 922 F.2d 934, 956 (2d Cir. 1990). "A trial judge does not abuse his discretion by curtailing cross-examination as long as the jury has 'sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government.'" *Scarpa*, 913 F.2d at 1018 (quoting *United States v. Singh*, 628 F.2d 758, 763 (2d Cir. 1980)).

### C. Discussion

The Government respectfully seeks an *in limine* ruling precluding the defense from cross-examining the cooperating witnesses regarding the matters described above. Any questioning on those matters would not be probative of the witnesses 'truthfulness and would be unfairly prejudicial.

*First*, all of the prior acts for which the cooperating witnesses were not convicted involve either domestic violence or commercial sex acts, none of which involve any form of dishonesty and none of which have any logical connection to the witnesses' character for truthfulness. Courts in this Circuit have repeatedly barred cross-examination regarding violent conduct, including acts of domestic violence, and sexual misconduct that has no bearing on a witness's credibility. *See, e.g.*, *United States v. Jeffers*, 402 F. App'x 601, 603 (2d Cir. 2010) (affirming preclusion of cross-examination of cooperating witness regarding prior acts of domestic violence based on "determination that the purported prior acts of violence were not probative of [the witness's] credibility"); *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002) (affirming preclusion of cross-examination of cooperating witness regarding his role in a murder because the "murder was not relevant to [the witness's] credibility," and noting that "there was ample other material through which defendants could test his credibility and expose any bias"); *United States v. Rosa*, 11 F.3d 315, 336 (2d Cir. 1993) ("Nor was it an abuse of discretion to exclude evidence of certain types of acts such as rape and burglary as having an insufficient bearing on the witness's credibility"); *United States v. Fama*, No. 12 Cr. 186 (WFK), 2012 U.S. Dist. LEXIS 173879, at *1 (E.D.N.Y. Dec. 7, 2012) (precluding cross-examination regarding prior acts of domestic violence because they "are not probative of [the witness's] credibility and do not indicate a lack of truthfulness"); *United States v. Agostini*, 280 F. Supp. 2d 260, 262 (S.D.N.Y. 2003) (precluding cross-examination regarding witness's prior arrests for allegedly assaulting his girlfriend, finding that

"they do not involve instances of dishonesty or making false statements" and noting "the Second Circuit's inclination to preclude the discussion of a witness's prior commission of violent crimes because of such crimes 'lack of relevance to the issue of the witness's veracity'").

Moreover, there is no shortage of prior conduct on which the cooperating witnesses can be cross-examined. The defense will be able to cross-examine CW-1 regarding, among other things, his participation in drug distribution, his history of illegal drug use, his possession of stolen goods, his participation in multiple frauds, and his provision of false documents in connection with loan applications and a lease application. The defense will be able to cross-examine CW-2 regarding, among other things, his use of fake identifications and documents to obtain employment, his providing those documents to another individual to use to obtain employment, and his illegal entry and reentry into the United States. The defense will be able to cross-examine CW-3 regarding, among other things, his years-long drug addiction, his distribution of controlled substances, his participation in multiple robberies and other larcenies, and his participation in multiple assaults. The jury will thus be well aware of the criminal histories of these witnesses.

*Second*, CW-3's misdemeanor and violation convictions are plainly not admissible under Rule 609(a)(1), because they were not "punishable by death or imprisonment for more than one year." Nor are they admissible under Rule 609(a)(2), because "establishing the elements of the crime" did not require proof of "a dishonest act or false statement." Accordingly, the plain text of Rule 609 bars cross-examination regarding CW-3's convictions for misdemeanor assault, bail jumping, criminal mischief, and disorderly conduct. *See United States v. Urena*, 11 Cr. 1032 (PAE), 2014 WL 1303114, at *2 (S.D.N.Y. Apr. 1, 2014) ("[B]ecause both of [witness]'s marijuana convictions were misdemeanors, they were not punishable by death or imprisonment in excess of one year, and thus are not admissible under Rule 609(a)(1). Accordingly, evidence of [witness]'s two convictions is not admissible under Rule 609(a).").

*Third*, CW-3's felony conviction is similarly barred by the time limit contained in Rule 609. This conviction was finalized in 2000, and CW-3 was not incarcerated as a result of the conviction. This 23-year-old conviction thus falls far outside of the ten-year window contemplated by Rule 609(b). Given that this conviction arose out of an incident involving an assault involving the paramour of CW-3's romantic partner, this conviction and the facts leading up to it have no bearing on CW-3's credibility. The defense therefore cannot conceivably satisfy the burden of demonstrating that the probative value of this conviction "substantially outweighs its prejudicial effect." *Mahler*, 579 F.2d at 736. This conviction should therefore not form the basis of any cross-examination at trial.

In addition to this prior conduct, the defense should further be precluded from mentioning or cross-examining any of the witnesses regarding the death penalty. Any suggestion that any of the cooperating witnesses were facing the death penalty may cause jurors to think that Tartaglione is facing the death penalty, which is now no longer the case. Furthermore, such a suggestion will cause the jury to believe that the cooperating witnesses cooperated in order to avoid the death penalty, which is false. CW-1 and CW-2 both began cooperating before they were facing any federal charges at all, and thus the death penalty never conceivably played a role in their decision to cooperate. Although CW-3 was charged with death-eligible offenses, he has indicated to the Government during trial preparation that the death penalty did not play a factor when he considered

whether to cooperate, and he did not cooperate in order to avoid the death penalty. Any cross-examination or mention of the death penalty would not bear on the motives of the cooperating witnesses (who are all facing lengthy sentences, including mandatory life in prison for CW-1 and CW-3), but rather would serve to confuse and inflame the jury. Given the lengthy history of matters involving the death penalty in this case with respect to Tartaglione, mention of the death penalty by the defense could open the door to a mini-trial about that process, serving to further confuse the issues before the jury. In short, the defense should not mention capital punishment during this trial.

Should the Court nevertheless determine that the defense may raise the death penalty at this trial, the Government seeks two prophylactic measures to lessen the prejudice that will undoubtedly arise from that topic. First, the Government requests that as soon as the death penalty is mentioned, the Court immediately give a limiting instruction to the jury clearly stating that the defendant is not facing the death penalty in this case and that the death penalty is not a possible punishment if the defendant is convicted. Second, the Government requests that the Court add a question during voir dire through which the Court (a) informs potential jurors that the death penalty is not a possible punishment in this case, but that the death penalty generally may be mentioned during trial; and (b) asks whether any juror could not be fair and impartial in a trial where the death penalty is discussed. Such questioning is necessary to avoid a scenario in which a juror who has strong feelings about capital punishment has a prejudicial reaction to the discussion of capital punishment during cross-examination or during jury addresses.

Even with these measures, however, discussion of capital punishment at this trial carries limited, if any, probative value and would only serve the prejudicial ends of enflaming and confusing the jury. Accordingly, the Government respectfully requests that the Court preclude this topic entirely from the trial.

### D. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court preclude cross-examination of its cooperating witnesses regarding the above-described topics.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Maurene Comey
Jason Swergold
Jacob R. Fiddelman
Assistant United States Attorneys
(212) 637-2324 / (914) 993-1963 / (212) 637-1024

cc: All counsel of record