1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES of AMERICA,

     -against-                  16 Cr. 832(KMK)
                                Conference

NICHOLAS TARTAGLIONE,

         Defendant.

------------------------------------x

                    United States Courthouse
                    White Plains, New York

                    October 21, 2019

      SEALED PROCEEDINGS INCLUDED

B E F O R E
          THE HONORABLE KENNETH M. KARAS,
                   District Court Judge

Angela O'Donnell, RPR, 914-390-4025

A P P E A R A N C E S:

GEOFFREY S. BERMAN
        United States Attorney for
        the Southern District of New York
BY:   MAURENE R. COMEY
          Assistant United States Attorney

BARKET MARION EPSTEIN & KEARON LLP
          Attorneys for Nicholas Tartaglione
          666 Old Country Road
          Garden City, New York 11530
BY:   BRUCE A. BARKET
      AIDA F. LEISENRING

LAW OFFICE OF ANTHONY RICCO
          Attorneys for Nicholas Tartaglione
          20 Vesey Street
          New York, New York 10007
BY:   ANTHONY L. RICCO

MICHAEL K. BACHRACH
          Attorney for Nicholas Tartaglione
          276 Fifth Avenue
          New York, New York 10001
BY:   MICHAEL K. BACHRACH

DIAZ & MOSKOWITZ PLLC
          Attorneys for Nicholas Tartaglione
          225 Broadway
          New York, New York 10007
BY:   JOHN A. DIAZ

KENNETH J. MONTGOMERY PLLC
          Attorney for Nicholas Tartaglione
          198A Rogers Avenue
          Brooklyn, New York 11225

Also present:   DAVID A. RUHNKE
                BOBBI C. STERNHEIM

3

SEALED PROCEEDINGS

(The following discussion held in the robing room:

THE COURT:  How are you?

MS. STERNHEIM:  I'm good.  How are you?

THE COURT:  I'm fine.

So we are in the conference room adjacent to the courtroom.  Ms. Sternheim, who's been appointed as *Curcio* counsel, is here and only Ms. Sternheim is here.

MS. STERNHEIM:  Judge, I asked for the opportunity to speak to you without anyone here because I thought we should discuss, and if the Court feels everyone but the government, and when I say everyone, I mean the defense --

THE COURT:  Sure.

MS. STERNHEIM:  -- should be here --

THE COURT:  And I might.  I want to hear what you have to say first.

MS. STERNHEIM:  I wanted to speak with you as to what rules of engagement will we be operating under, or do you wish for the conducting of a *Curcio* hearing in this case.  And as you and I well know, one from your prior experience and as your current, the typical situation, whether counsel suggests to the government that there may be an issue, or the government *sua sponte* says there's an issue, brings it to the Court's attention and then sends out the letter with the allocution. It is done in open Court, and with rare exception the Court is able to make a decision right then and there.

Angela O'Donnell, RPR, 914-390-4025

4

SEALED PROCEEDINGS

I don't see that as what will happen here. I don't think the Court will necessarily be in a position to just say, okay, unless more is brought to the Court's attention before. And I don't know what you wish me to bring to your attention or what you wish me to do.

THE COURT: Well, what do you think the options are from your perspective?

MS. STERNHEIM: Well, typically in a situation like this it is stated at the very beginning or I should say the issue is flagged. I believe it's been only partially flagged here. When the Court typically conducts a *Curcio* hearing, the Court knows what the frame is going to be.

THE COURT: Right.

MS. STERNHEIM: The Court does not know the entire frame, and I think it would be unfair for a Court to have to just be handed a list of I think you should ask these questions. The questions in and of themselves will frame the issues. I don't know if the Court feels that the Court should see things before the defense does, whether the defense should be given an opportunity to comment and respond on certain things.

THE COURT: Sure. Right.

MS. STERNHEIM: I'm just not entirely sure, and I want to make sure this is done in such a way that everybody feels comfortable about the process.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

THE COURT: Right. Of course. Which is why you were appointed, Ms. Sternheim.

MS. STERNHEIM: Thank you, your Honor.

THE COURT: I think what makes sense -- so it sounds like, you're right, in a typical case an issue is raised. Sometimes it's by the government. Sometimes it's by the defense.

MS. STERNHEIM: Typical issue like Mr. So-and-so has represented the cooperator, what do we do.

THE COURT: Right, and then *Curcio* counsel is appointed to give advice to the defendant, then there's a hearing and there's a typical set of questions the defendant's asked so everybody can be satisfied the defendant understands what is potential conflict. Sometimes it's an actual conflict. But in any event, then there's the waiver process.

MS. STERNHEIM: Correct.

THE COURT: You're right, in a typical case, either it can be waived or it can't, a person, if they waive it, there's a finding that the waiver is valid, and then we move on.

Here it sounds like the referral that set this process in motion involves more than what the referral was that set it in motion, that there may be additional information --

MS. STERNHEIM: That is accurate.

THE COURT: -- that is going to have to be addressed

Angela O'Donnell, RPR, 914-390-4025

6

SEALED PROCEEDINGS

in a hearing.

MS. STERNHEIM:  That is correct.

THE COURT:  Of course you and I agree the process has to be, in any case, but especially in a capital case, 100 percent fair and transparent.  So it may be that the best way to proceed is for you to let counsel for Mr. Tartaglione know what you see as the potential issues that have to be addressed at a hearing.

MS. STERNHEIM:  And if I just may add.

THE COURT:  Please.

MS. STERNHEIM:  All along I have been sharing that with them.

THE COURT:  Of course.

MS. STERNHEIM:  In each and every conference that I've attended, I've met with them before and I've also shared it with Mr. Tartaglione so that everybody involved defense side knows what I am looking at and I've shared it with them.

THE COURT:  Okay.

MS. STERNHEIM:  The only reason I have asked for this is because I believe it involves a little bit of what the Court's process may be, and as I said, if the Court feels that this should be addressed with the entire defense here, yes.

The other issue is it would be my request, and I think this is another unusual but it goes hand in glove with how this started, that the *Curcio* hearing be conducted

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

*ex parte.*

THE COURT:  Right.  Without the government.

MS. STERNHEIM:  Right.  And I know the Court needs to evaluate that as well.

THE COURT:  Sure, of course.

MS. STERNHEIM:  And of course sealed, et cetera, until such time as your Honor makes whatever decisions.

THE COURT:  And that's because you think that at least in the first instance a full hearing of these issues could inure to the detriment of Mr. Tartaglione with respect to the government because?

MS. STERNHEIM:  You know, I don't mean to be so circumspect here.

THE COURT:  Yes.

MS. STERNHEIM:  And I'm not in a position to really articulate it all.

THE COURT:  Okay.

MS. STERNHEIM:  But I think there are issues that are such that the government should not, at the first instance, as I'll say all along, whatever you decide you decide, but at least preliminarily needs to be brought to your attention.

THE COURT:  I mean, if we proceed in the first instance without the government, it's not as if the transcript at some point, if it was appropriate, could be made available to the government and they could weigh in.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

MS. STERNHEIM:  Correct.

THE COURT:  Okay.  So do you have a sense that when you lay out all the issues that you think need to be addressed, which it sounds like are more than what was initially the subject of this process, do you expect that other counsel for Mr. Tartaglione are going to want to respond before we even have the hearing?

MS. STERNHEIM:  I have not addressed this with them, and certainly all the meetings that I do have with them is an opportunity for everybody to weigh in on that.  So going with the precedent of that, I think people are going to want to weigh in on this.  My concern with that is, you know as courts love to say, it becomes a trial within a trial.  How appropriate all of that is, I'm not sure, but I view this as a rather unusual situation.  And I will add it's unusual that a lawyer brings a lawyer to court.

THE COURT:  Oh, yes.  Correct.  Sure.

MS. STERNHEIM:  And because of that, I think if it is disclosed, there will be a lot of briefings and edits and requests to rewrite, and whether that is prudent or not, I don't know.

THE COURT:  Even before we get to a hearing.

MS. STERNHEIM:  Yes.

THE COURT:  Yes.  But I think at minimum it seems to me, because of the unusual circumstance where this is, right,

SEALED PROCEEDINGS

this whole thing starts with one lawyer raising the issue as to another lawyer for the same team, within the same team, I think that they should be allowed to respond.  If they want to submit something in writing, they can.

MS. STERNHEIM:  Fine.  I just want to know are there parameters.

THE COURT:  It should all be *ex parte*.  All those submissions at this point should be *ex parte*.  Again, with the caveat that if it turns out at the end the government can see the stuff or some portion of it, I'll make those findings when we get to that point.

For now, not having any sense of what we're talking about it, I think prudence dictates that the government not be at this party, either in terms of seeing any submissions or having a seat at their table during any hearing in the first instance.

MS. STERNHEIM:  And just as a subparagraph to all of this, when the Court says the defense should be given an opportunity to respond, does the Court mean before I submit something to you or after?

THE COURT:  After.

MS. STERNHEIM:  Okay.

THE COURT:  Because your charge was to do --

MS. STERNHEIM:  Thank you.

THE COURT:  -- an inquiry, and you are, you've done

SEALED PROCEEDINGS

that, and it sounds to me like you're ready to report at least how you see the issues as being framed.

MS. STERNHEIM:  Yes.

THE COURT:  And that is where we start.  That is the starting point.  And then counsel can respond to that before there's a hearing.  But it seems to me you go first.  Anybody wants to submit something, they can, we have the hearing. Again, every step it is going to be *ex parte* until further order of the Court.

MS. STERNHEIM:  These are amongst the reasons why I've requested this meeting.

THE COURT:  Which is, I think, entirely reasonable.

MS. STERNHEIM:  Now, getting back to what the Court would like to receive.

THE COURT:  Okay.

MS. STERNHEIM:  Would the Court like something that is modeled, obviously content wise it will be different, but modeled after what the government typically provides as far as the allocution or does the Court just want the substance and either an opportunity to make your own inquiry or we could discuss that again if you wish.

THE COURT:  I think what we should do is, since the government didn't raise this issue, we should tee up what the issue is or issues are and figure out what inquiry is appropriate given those issues.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

MS. STERNHEIM:  Fine.

THE COURT:  One of the things I imagine counsel may want to weigh in on is what the inquiry should be.  So I don't have a preset notion.  I just think our charge here is to follow the edict of *Curcio* and make sure the *Curcio* process plays out.  And we know that there is no one formula.  You're right, there is a boilerplate set of questions that often fits.

MS. STERNHEIM:  Exactly.

THE COURT:  But it sounds like this is not the norm, so we should be very wary of cutting and pasting.

MS. STERNHEIM:  For the Court's information, I am preparing Mr. Tartaglione to be able to respond narratively to whatever the Court asks.

THE COURT:  Okay.

MS. STERNHEIM:  That this should not just be a close-ended inquiry.

THE COURT:  Okay, that makes sense.

So in terms of what do we do next, what do you want to do, do you want to submit something in writing or do you want to just do a report to the Court, and we can even do it in the presence of counsel, and I ask them what they want to do.  You tell me how you want to handle this.

MS. STERNHEIM:  I think even if I were to just present it to the Court just to be thorough I would be --

THE COURT:  Still want it in writing.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

MS. STERNHEIM: -- reading a written report. So rather than giving the defense an opportunity to respond from a transcript --

THE COURT: Right.

MS. STERNHEIM: -- I think it would make sense for me to prepare my report, submit it to the Court for the Court to decide whether the Court feels it's sufficient or whether you want more.

THE COURT: Okay.

MS. STERNHEIM: And at the point where you feel I have given you what you need, the Court invites the defense to respond.

THE COURT: Okay. That makes sense.

MS. STERNHEIM: I will not file this.

THE COURT: No.

MS. STERNHEIM: I will just submit it --

THE COURT: Just submit it *ex parte* to chambers.

MS. STERNHEIM: -- *ex parte* to you.

I had told the defense what I had planned to do today.

THE COURT: Okay.

MS. STERNHEIM: I would like permission to tell them I've done what I told them and that's it.

THE COURT: Of course. I also don't see there's any reason they can't get the transcript of this.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

MS. STERNHEIM:  No.

THE COURT:  Okay.

MS. STERNHEIM:  I think that would be a great idea because I do want them to see it.

THE COURT:  Right.

MS. STERNHEIM:  And to know what went on in here.

THE COURT:  Okay.

MS. STERNHEIM:  I was hoping -- and I just got back from a wonderful vacation -- I was hoping that I would be able to present to you a firm timetable.

THE COURT:  Sure.

MS. STERNHEIM:  I don't feel comfortable doing that now.  I'd like to start drafting.  I know that the defense, especially Mr. Tartaglione, is very eager for this to be completed, and I don't in any way want to postpone that.  I've even told other judges that this is sort of a priority right now for me.  So I plan to work on this and would hope that we certainly could do this before Thanksgiving.

THE COURT:  Okay.

MS. STERNHEIM:  But I don't want to give a date certain.

THE COURT:  Speed for the sake of speed is never a good idea.

MS. STERNHEIM:  I agree with you, but I think at a certain point I have had enough time to frame the issues and

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

then I will need time to present them.

THE COURT:  I think that's entirely reasonable.  And no one doubts that you get the issue that speed is not the goal here but that delay is not good either and that is not the reason why you're doing this among all the lawyers in the bar.

So you do what you need to do.  I trust that you will do it expeditiously but thoroughly, and it's thoroughness that we need here.

MS. STERNHEIM:  Very good.  Thank you.

THE COURT:  Thank you.

(Defense counsel and Ms. Sternheim present in robing room)

THE COURT:  The conference I just had with Ms. Sternheim is going to be sealed except the copies can be made available to all counsel for Mr. Tartaglione.

The reason I'm sealing it is because it involves discussion on the *Curcio* issue which to this to point, for reasons I explained earlier and I'm happy to explain again, should only be kept among counsel for Mr. Tartaglione because it involves issues among counsel, the government is not the one that raised the *Curcio* issue.  At this point the government doesn't need to know about what's going on, nor does the public.  And so at that point, while I recognize the First Amendment right common law of access, Mr. Tartaglione's interest in his attorney-client relationship outweighs those

Angela O'Donnell, RPR, 914-390-4025

15

SEALED PROCEEDINGS

rights and so for now I'll keep the transcript sealed.  Except the copies can be made available to Mr. Tartaglione.

MR. BARKET:  Do we want Nick for this?

MR. RICCO:  No, we do not.

MR. BARKET:  I might.

MR. RICCO:  I'm sure that you do, but I think that this is a *ex parte* application that has to do with the appointment of *Curcio* counsel, the integrity of the *Curcio* process, and I'm prepared to stand on the record that the few comments that I have to make with respect to that can be communicated to the defendant by *Curcio* counsel in an independent way.  And so, Judge, I have asked for this conference --

MR. BARKET:  What --

THE COURT:  Go ahead.  I'll hear from Mr. Barket.

MR. RICCO:  Okay.

MR. BARKET:  I'm not comfortable proceeding, at least of what I understand we're going to talk about right to counsel and scheduling.  Mr. Tartaglione has expressed very strongly opinions on both those topics.  I don't see why we should exclude him from our discussion.

THE COURT:  I don't know what Mr. Ricco is going to say, so it's hard for me to weigh one way or the other.  What we can do is if we get to the point where I think Mr. Tartaglione needs to be present, we can have this outside.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

Let me finish.

MR. BARKET: Sure.

THE COURT: But for now, since I don't know exactly what Mr. Ricco is going to say.

We have had *Curcio* conversations in this robing room without Mr. Tartaglione, and I don't recall any objections before.

MR. BARKET: Actually, if we go back to the first one we came back to talk about something, it moved to the *Curcio*, when we started, I said, I want Nick here for this. We went back to talk about something else and it kind of morphed into the *Curcio*. We went ahead with it.

THE COURT: Okay. The record will speak for itself, whatever the transcript is.

Let me hear from Mr. Ricco, and we'll go from there.

MR. RICCO: Yes, Judge, this has been a subject matter we have been wanting to get before the Court. Based upon Ms. Sternheim's progress with her inquiry, I believe that we're at that juncture where the Court will be making certain decisions as to how to proceed. And so as learned counsel for the defendant whose rights in a death authorized case must be protected, I think -- and given the Court of Appeals' decision on Friday in *Arrington*, I think it's very important that the issues be properly framed for the Court's consideration.

An error was made in *Arrington* because the circuit

SEALED PROCEEDINGS

felt that the issues were not properly framed.

So I don't want to get into the facts like what happened, who did what, and why we're here, but we're here, Judge, because I'm of the view, in fact, all of my colleagues with the exception of the people subject to the *Curcio* inquiry, are of the view that we have a serious conflict issue here where the interests of Mr. Tartaglione and those of Mr. Barket and other members of his firm, have diverged with Mr. Tartaglione.

And so I think that the Court for a long time has not known exactly what we're talking about here, and I think that it's incumbent upon Ms. Sternheim to ultimately frame the issues, but in any *Curcio* proceeding the Court is always interested in what counsel has to say about what those issues are only from the standpoint of that it helps the Court to make sure it's conducting a proper *Curcio* inquiry.

And what I'm going to say to the Court is I want to make sure that happens. And I would say to the Court, had the *Curcio* inquiry taken place prior to Mr. Sternheim's investigation, your Honor would not have had accurate, reliable information upon which to make that determination.

THE COURT:  So let me say this.  I spoke with Ms. Sternheim at her request to talk about where we go from here.

MR. RICCO:  Yes.

Angela O'Donnell, RPR, 914-390-4025

18

SEALED PROCEEDINGS

THE COURT:  And the transcript of this conference is going to be made available to all of you, so you can see what it says, but the upshot of it is I asked Ms. Sternheim to prepare a written submission where she's going to lay out the issues that she thinks need to be addressed by way of a *Curcio* hearing.  And when she submits that, and it's going to be submitted *ex parte* to me, it's not going to be filed, the government's not going to see it, you all will see it.

I will then allow counsel for Mr. Tartaglione to respond however you all want to respond before we have the hearing.  Because it seems to me we have two issues; there is the scope of the *Curcio* hearing, and then the inquiry that's going to take place whatever issues come up.

And Ms. Sternheim has not given me a movie trailer of what the issues are.  So I don't know.  At this point I'm not even in a position to say -- one of the things Ms. Sternheim and I talked about was I'm not going to take the usual *Curcio* Q and A that we use with the typical case, oh, you might have represented somebody else.  It's going to have to be tailored to whatever the issues are.  Before I decide that, I want to not only read her submissions but consider whatever it is you all want to submit.

MR. RICCO:  That's right.

THE COURT:  And we will get together again before the inquiry begins.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

Now, Ms. Sternheim understands, of course, that everybody wants to get this issue resolved as expeditiously as possible, but at the same time I want her to be able to submit a thorough report, and so what Ms. Sternheim has committed to is to work on this as expeditiously as she can. She's actually putting this at the top of her pile, which I can only imagine is a very large pile of cases. She's told other judges that this is a priority for her. And so this is going, obviously, to be in everybody's best interest, including Mr. Tartaglione.

MR. RICCO: And your Honor, I completely agree with your Honor's assessment of this. This is a death authorized case, and there are what we would call layers involved here, and the Court is going to need a very thorough and truthful account of those layers, and I am confident now that we have information such that the *Curcio* inquiry in this case is meaningful, responsible and consistent, which is expected from the Court of Appeals, as they just talked about on Friday.

So second issue.

THE COURT: Okay.

MR. RICCO: That's all I wanted to say.

THE COURT: Does anybody have any problem with the process I am proposing with regard to the *Curcio* issue?

MR. BARKET: No, but I do -- I don't imagine my client would, but I do want to talk to him about it.

THE COURT: Okay.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

MR. BARKET:  I don't know what --

THE COURT:  You can read the transcript.  I really just summarized, and so Ms. Sternheim, as I said, is going to work on a written submission.  It's going to come straight to me with a copy to you.  After you read it, you can tell me how you want to respond.  I'm going to be open to however and whenever you want to respond.  That's really where we're at.

MR. RICCO:  Judge, I do want you to know an extraordinary amount of time has gone into this issue and we have several lawyers involved in this case, and I would say probably three or four of them have spent an extraordinary amount of time on this issue.  I'm concerned about that.

THE COURT:  Which issue, the *Curcio*?

MR. RICCO:  The *Curcio* issue.

THE COURT:  Okay.

MR. RICCO:  In terms of making sure that all of the Is are dotted and Ts are crossed in a case of this magnitude, and I'm very confident that has been done notwithstanding some difficulties.

The second issue, Judge, that I wanted us to talk about is the scheduling, scheduling issue, and just briefly.

The government is going to make an application today that the Court set a time period for us to either agree or submit our differences of opinion to the Court so that your Honor can determine what the scheduling order will be and the

SEALED PROCEEDINGS

setting of the trial date.  I don't think anybody has an objection to that.

THE COURT:  Okay.

MR. RICCO:  But that's coming.

THE COURT:  Okay.

MR. RICCO:  I think your Honor pointed out at the end of the last conference that there are ramifications from the *Curcio* inquiry here and they will be very serious.  So we've approached discussing scheduling sort of, your Honor, with a view towards suppose none of this was happening, where would we be.  And so should the Court say, okay, two weeks or three weeks I'm going to look for you guys to either resolve it or set a date to file, either party will file a response or perhaps we'll do a joint filing, I'm very confident that the work that has been done with respect to those schedules have been developed in a way notwithstanding this issue.  That even more time has been spent working through the scheduling order, making an assessment of where our mitigation case is.  When the Court gets more information, the Court will see that one of the very important mitigators in this case is affected by the *Curcio* issue.  We've talked about how to salvage it and all of that has been built into that.  So we do not have an objection to a couple weeks down the line the Court saying to all parties, I want a date when you're going to submit.  And I think folks are prepared to file those submissions because the

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

thought process and the review process that goes into that has taken place.

THE COURT:  But it sounds like you also think there's a possibility that the *Curcio* process may affect the timing of the case.

MR. RICCO:  It will.  Absolutely.

THE COURT:  And so it seems to me that we need to resolve the *Curcio* issue before we can plant our feet on a schedule.

MR. RICCO:  We do.

MR. BARKET:  I think this part of the conversation should take place with Nick, and I don't see a reason why we can't discuss the scheduling in open Court with the government.

MR. RICCO:  Right.  And I informed --

THE COURT:  That's fine.

MR. BARKET:  My own view --

MR. RICCO:  I had informed --

MR. BARKET:  My -- my -- I'm sorry.

MR. RICCO:  -- Mr. Barket that we were going to do it in open Court.  So we're not doing anything, Judge, that we didn't previously discuss.  We said that we were going to discuss it in open Court.

THE COURT:  Okay.

MR. BARKET:  My own view of the scheduling is I don't think we, the defense, are ready at this point to submit

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

something because there's still work internally we have to do, including consulting with our client about the scheduling.

THE COURT:  Yes.

MR. BARKET:  He has very, very strong views given the length of time he's been in.  He doesn't get a veto, but he gets a say.  That has to be done.  It's a process we started of course but it's not completed.  My view is we should set a schedule and be working towards it.  The work is being done even with the amount of time that we all put into the *Curcio* issue, which has been extraordinary, and then if something happens, obviously, there is a possibility that one or more lawyers will be swapped out or won't be here any longer.  If something happens that would cause the schedule to be changed, well then we can adjust the schedule.  But my view is that I don't think it will.  I think we can set a schedule, move forward with this.  We're not in a position to agree or disagree with the government.  We don't agree with each other. Until we kind of resolve this, it's not ripe for the Court to deal with but I --

MR. RICCO:  Judge, I could tell you that I have no strong view on that.  I happen to believe that contrary to Mr. Barket, this *Curcio* issue is only related to one lawyer and maybe some others.  It doesn't involve the other lawyers in this case.  I do believe that this *Curcio* decision will impact that; however, there's still this responsibility for us to

Angela O'Donnell, RPR, 914-390-4025

24

SEALED PROCEEDINGS

continue preparation and we have.

We have been uncertain as to whether or not we should be saying to the Court, we're prepared to wait. We are. So, if your Honor decides, I'm going to hold off, we're okay with that. We just at the same time made representations to the Court before the holidays that we would do this and we're there. If we have to wait, we can wait, and I have no objection to waiting.

THE COURT:  I think we should have this conversation in open Court with Mr. Tartaglione and the government present. The government, of course, knows there is a *Curcio* issue, the government doesn't know what the issue is.

MR. RICCO:  That's correct.

THE COURT:  But there are two things that could affect the schedule, there is the *Curcio* issue and there's also the pending request of Mr. Tartaglione to have you relieved as counsel.

MR. RICCO:  That's right.

THE COURT:  So it seems to me we've got two rather serious issues that involve Mr. Tartaglione's representation which could very well affect the timing of this case.

MR. RICCO:  Yes.

THE COURT:  So I'm not sure, and I'll say this in open Court and we'll have this conversation, I'm not sure about whether it makes sense to have this moot Court conversation

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

about a schedule until these issues get revolved, but at the same time, I think everybody agrees that it's important they be resolved as expeditiously as possible.  So if the schedule is beholding to these issues being revolved, we resolve them as quickly as we can so we can then get a schedule.  And I'm open to having that view changed.

So it's Mr. Barket's point, I think it's a fair point, it's also the argument that, well, we can set a schedule put an asterisk next to it, and say it depends on a few things. We can do that.

MR. RICCO:  And Judge, I'm open to either way.  I think it's important for the Court to know the work is being done.

THE COURT:  I never doubted that.

MR. RICCO:  That is what's critical here because of the nature of the conflict.  That is critical here.  We're prepared either way.  Ms. Comey, she wants to get going, but she can wait.

MR. BARKET:  The work is getting done because we have an obligation to Nick, not because of the *Curcio* issue.  It's getting done despite the *Curcio* issue.

MR. RICCO:  I think I just said that.

THE COURT:  No, that's what Mr. Ricco said.

MR. RICCO:  That's just what I said.

MR. BARKET:  Then --

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

MR. RICCO:  I mean, we have -- 10.7 of the ABA guidelines we're supposed to do this work even when a defendant opposes it, and we're doing what the ABA requires us to do.

THE COURT:  Anything else?

So the transcript of this proceeding should also be sealed because it addresses the *Curcio* issue, it does address general defense preparation on behalf of Mr. Tartaglione, so the government has no right of access at this point to the transcript.  Obviously copies can be made available to counsel for Mr. Tartaglione, and for the same reason the government shouldn't be allowed to see the transcript at this point, neither should the public.  As I said, this will be sealed for now.  It may be that after we have the *Curcio* hearing then portions of this could be unsealed.  So lesser restrictive alternatives have been considered at least in the ruling this portion should be sealed for now.

Anything else?

MR. RICCO:  One other thing, Judge.

THE COURT:  Please.

MR. RICCO:  I had made a commitment to the Federal Bar Council to participate in a program Foley Square at 12:00 o'clock.  If I can be excused from the public part of the conference.

THE COURT:  Sure.

MR. RICCO:  I would appreciate it.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

MR. BARKET: What do you plan to do with Mr. Tartaglione's ongoing request to remove Mr --

THE COURT: I'm going to hold in abeyance until we resolve the *Curcio* issue.

MR. RICCO: And I think that's entirely appropriate in this case, Judge.

MR. BARKET: I disagree with that. With all due respect to Mr. Ricco, Mr. Tartaglione, and I should say this in front of Mr. Tartaglione.

THE COURT: Absolutely.

MR. BARKET: If you're going to leave, I don't want to say it in absence --

MR. RICCO: You can say it.

MR. BARKET: But he has a right to counsel of his choice. He could fire the lot of us, if he wants. And it is --

THE COURT: He has a qualified right to counsel of choice.

MR. BARKET: Right.

THE COURT: And that right hasn't been abridged at this point, his application is being considered.

MR. BARKET: He has given instructions to the lawyers in this case not to discuss the case with Mr. Ricco, learned counsel. The ethical guidelines permit us implicitly to share confidences with each other as a -- implicitly. But there's a

SEALED PROCEEDINGS

provision that allows the client to direct us not to.  So it is an awkward situation to say the least --

THE COURT:  Yes.

MR. BARKET:  -- that's been going on now for a month at a critical time.

MR. RICCO:  Exactly around the time we started the *Curcio* inquiry, and your Honor will see that the two are connected.

THE COURT:  I will hear you.  I think this should absolutely be addressed in open Court in Mr. Tartaglione's presence.  If he wants to speak, I will hear from him.  You know my view, I think it's a bad idea for him to talk in court, it's not in his interest, he knows that.  And then we'll take it up.

MR. RICCO:  Your Honor, just so the record is clear, this is not a Mr. Ricco issue.  I think that capital counsel in this case with capital experience would strongly suggest that Mr. Tartaglione not make statements about these counsel issues until the issue of *Curcio* is resolved, that he's got counsel who's speaking on his behalf.  There's *Curcio* counsel appointed.  There's four other lawyers on this team.  It is a very dangerous thing for him to do.  And there are very serious issues related to the development of the penalty phase at risk here.  And this is not a matter that should be taken lightly or taken in the way in which it has by some of the lawyers.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

MR. BARKET: Separate for Mr. Tartaglione, I'll chat with him. If he wants him to speak on his behalf, I'm happy to take Mr. Ricco's suggestion and articulate for him what I know he wants to say with the understanding this is not my view, it's Nick's view I feel obligated to vindicate, if you will.

THE COURT: Absolutely, no, and I think you should be a spokesperson, and I would prefer you be his spokesperson rather than he be a spokesperson. That's not a personal affront to Mr. Tartaglione, I'm trying to protect him from himself.

MR. BARKET: I agree. I think he's been frustrated by the lack of he said stuff to me, he communicates to the team, and he feels frustrated that his communications are not addressed, if you will.

THE COURT: All right, I understand. There's a lot of things that frustrate him.

MR. BARKET: That's why he end up writing to the Court and the press and everybody else.

MR. RICCO: Judge, I disagree that's why he's writing. That's Mr. Barket's position. And I think that it's just we've gone too much with statements like this being made. I think the Court is going to resolve these issues and enough already.

THE COURT: Okay.

MR. RICCO: The issues are before the Court.

Angela O'Donnell, RPR, 914-390-4025

30

SEALED PROCEEDINGS

THE COURT:  Let's head out.

MR. RICCO:  Judge, thank you.

MR. RUHNKE:  Thank you, your Honor.

End of robing room sealed proceeding)

(Pages 3 through 30 sealed)

(Continued on next page)

Angela O'Donnell, RPR, 914-390-4025

(In open court)

THE CLERK:  All rise.  The Honorable Kenneth M. Karas presiding.

THE COURT:  United States of America versus Nicholas Tartaglione, 16CR832.

Counsel, state your appearances.

MS. COMEY:  Good morning, your Honor.  Maurene Comey for the government.

THE COURT:  Good morning, Ms. Comey.

MR. BARKET:  Good morning, your Honor.  Bruce Barket.  And I'll let the other lawyers introduce themselves for Mr. Tartaglione.

MS. LEISENRING:  Aida Leisenring.

MR. MONTGOMERY:  Good morning, your Honor.  Kenneth Montgomery.

MR. DIAZ:  Good morning, your Honor.  John Diaz.

MR. BACHRACH:  Michael Bachrach.  I'd also like that make the record clear research counsel, David Ruhkne, is in the courtroom today, as is Curcio counsel, Bobbi Sternheim.

Also, so the record is clear, during the *ex parte* conference that we had beforehand, present were Mr. Ricco, Tony Ricco, myself, John Diaz, Bruce Barket, Aida Leisenring, as well as Bobbi Sternheim and David Ruhnke.

THE COURT:  Yes.  Good morning to you all.  Please be seated.

Angela O'Donnell, RPR, 914-390-4025

All right, Ms. Comey, any updates?

MS. COMEY:  Your Honor, we'd like to discuss scheduling in morning.

THE COURT:  Okay.

MS. COMEY:  There are two different categories of scheduling we'd like to address.  The first for a suppression hearing on the suppression motions.

THE COURT:  Okay.

MS. COMEY:  They should be fully briefed by the end of next week.

THE COURT:  Okay.

MS. COMEY:  I understand that the parties expect there will need to be a suppression hearing on the motion to suppress statements.  We anticipate calling two witnesses and our understanding is the parties are available on November 20th and November 21st, if the Court is available for that hearing.

THE COURT:  Okay.

MS. COMEY:  The second category would be the setting of a schedule for trial and capital motions.

At the last conference, as your Honor may recall, defense counsel indicated we expected to have a schedule to propose today.  Unfortunately, we do not.  We have, however, made progress toward attempting to reach a compromise about what a proposed schedule might look like.  Defense counsel made a proposal to the government which in our view would put the

trial too far out and motions too far out.  Government suggested a counterproposal.  And if I may, I'd just like to explain the considerations the government has been making in trying to figure out what schedule to propose.

THE COURT:  Okay.

MS. COMEY:  As we've been saying for months now, the government is ready for trial, and by that we mean as soon as we set a trial date, whether it's a month from now, two months from now, three months from now, we will be ready.

That said, we understand the defense has a lot of preparations to do, and we also understand that generally, on average, in capital cases, between filing of notice of intent to seek the death penalty and trial is a period of about 18 months on average.  And so taking those considerations into account, we did propose a counterproposal that would be further out than the government would need but that we think would give ample time to the defense to prepare.

We are hoping to try to reach some compromise, and so we'd like some more time to try to discuss that; however, we do believe that a deadline would be helpful here.  And so we would ask that the Court set a deadline of two weeks from today by which time the parties either need to submit a joint proposed schedule in writing or competing proposed schedules in writing and then we would ask the Court to impose a schedule, set a schedule, by the next conference date.

THE COURT:  Okay.

MS. COMEY:  Thank you, your Honor.

THE COURT:  Mr. Barket.

MR. BARKET:  With respect to the motions to suppress, Judge, there's really two separate motions to suppress.  One is the motion to suppress statements and the other is to suppress cell tower data, for lack of a better, more precise description.

I think we're in agreement that there will be a hearing necessary on the motion to suppress statements, and I think we're in agreement that the motion to suppress the cell tower data is strictly legal, that there's no factual dispute that would require a hearing.  So we will submit our response.  And we filed a motion separately.  We'll submit our response on Friday to the motion to suppress, I don't think it will be lengthy.  And obviously your Honor is going to have a chance to rule on it, order a hearing presumably, but the Court's free to do what the Court's going to do.

The motion to suppress the cell tower data, that's a -- it's been on the same track, but I'm going to ask for it to be moved off of the same track.  The attorney in our office who wrote that motion and has done really 90 percent of the work on it had some significant medical issues, was hospitalized on Thursday, is out now but has some more testing this week, and I don't think without a great deal of difficulty

we'll be able to get that motion to the Court by Friday, the answer.  And it really won't affect any other event.

So I'm going to ask for another two weeks for that.  Hopefully it will be done.  I understand the government's going to -- well, they'll take whatever position they want.  But I don't think it will affect the hearing dates, the trial schedule, anything else.  Strictly a legal issue that the Court will get to rule on, and there's actually some very -- well, that will be our application.

MS. COMEY:  Your Honor, the government would oppose this.  The reply for these motions was technically due two weeks ago.  The extension that the Court granted was on the basis that Ms. Leisenring was on trial, not this other attorney.  These motions have been pending for months.  The government filed our opposition weeks ago, and we do not see the need for additional time for the defense to file their reply.

THE COURT:  So you think they're asking to do this because they're trying to game it?  I mean, it seems like a good faith request.  Sometimes lawyers do that.  I don't see these lawyers doing that.

MS. COMEY:  Well, it's the inconsistent reasons for seeking the extension.  It was originally because of Ms. Leisenring' schedule and she was supposedly the person working on the brief and now it's someone else.

Angela O'Donnell, RPR, 914-390-4025

MR. BARKET:  No, but there's -- look, the lawyer who's working on the motion to suppress the cell tower data, as lawyers do, he got two extra weeks, so he took it.  He would have responded to that on this Friday but for his medical issues.  Ms. Leisenring really was on trial and really did do all the work on the motion to suppress.

THE COURT:  So the request to suppress the statements is what Ms. Leisenring was working on and the trial interrupted her ability to get that done on time.

MR. BARKET:  Correct.

THE COURT:  Okay.

MR. BARKET:  And she actually, successfully I'll say, did a three or four week long trial on a very difficult case and we'll have our --

THE COURT:  Reply.

MR. BARKET:  -- responses.

THE COURT:  So the application is granted.  Two weeks is not an unreasonable request given the reasons for the application, so on the assumption most importantly that your colleague doesn't have serious medical issues that will prevent that person from finishing.  We'll assume two weeks, if you need more time, you'll let me know.

MR. BARKET:  Well, no, I don't even like to talk in those terms, but if things go kind of sideways on that, somebody else in our office will pick it up and we'll finish it

in time anyway.

THE COURT:  What I'm saying is two weeks is granted and let's see what happens.

MR. BARKET:  Thank you.

THE COURT:  Okay.

MR. BARKET:  On to the hearing date.

THE COURT:  Yes.

MR. BARKET:  We're available, I am not out of town or on trial otherwise on the 20th or 21st but I -- I think that will be fine.  We can do the hearings then.  If something happens with the roster of attorneys here --

THE COURT:  Yes, well that's what I was going to raise.

MR. BARKET:  Right now it's our understanding that myself and Ms. Leisenring would be the lead counsel on the motion to suppress.  We've done the work on it.  Obviously, with any help that we can get, and hopefully a lot from very smart people at the long end of the L here, the table, but you know.

THE COURT:  So Ms. Comey, you may recall at our last conference there's a *Curcio* issue that's been raised that for now I've been handling on a *ex parte* basis.  Ms. Sternheim has been appointed to serve as *Curcio* counsel.  Ms. Sternheim has conducted an inquiry the results of which she's going to be reporting to the Court.  I don't know what is going to be in

that report.  I don't have any idea.  And my concern is is that those issues, whatever they may be, need to be resolved because they potentially affect representation of Mr. Tartaglione.  And so I'm not sure it's prudent to schedule an hearing when the *Curcio* issue is hanging out there.

I'm not trying to hide the ball from you.  Like I said, I don't know what all the issues are.  But I know that they are serious enough to have counsel appointed, and I know that counsel is submitting something in writing.  So since we don't know what's going to happen, even if there's going to be a hearing what's going to happen at the hearing, what the rules are going to be.  But as Mr. Barket accurately and fairly said, it may affect the roster of the lawyers representing Mr. Tartaglione, A, and, B, they're going to have to be involved in this process.

So while I understand everybody's desire to keep this case on the track, and that would include resolving any pretrial motions, the *Curcio* issue, it seems to me to be a superseding issue before we can schedule a hearing.  And I can't commit to you as to when the issue is going to be resolved because I need to read Ms. Sternheim's report.  Counsel need to read the report, and they may want to respond to it.  And so that's the problem.  I mean other work can continue to be done on the case, I'm confident that that can still be so, but when we're talking about a hearing, I think

that's more problematic.

MS. COMEY:  Understood, your Honor, and I think the government can prepare for a hearing very, very quickly.

THE COURT:  Okay.

MS. COMEY:  So perhaps as soon as the *Curcio* issue is resolved, we can quickly schedule the hearing.  We would still ask though that a schedule be set for capital motions and trial given those will be many months out, and given that our understanding is that the work is still continuing by the defense team to prepare capital motions and to prepare for trial, and given how much time, six months now have already elapsed since filing the notice of intent, we do think there needs to be a schedule set at this point.

THE COURT:  I don't have a problem keeping to the idea that there's a deadline where either there's an agreed-to proposal or there's an agreement to disagree.

On the other hand, not knowing what the *Curcio* issue or issues may be, I'm not sure I can commit to necessarily either going along with a joint proposal or ruling on competing proposals until that issue is resolved.

I'm not saying it will necessarily affect the schedule, it may not.  You may be right.  But I just don't want to commit not having full information.

MS. COMEY:  Understood, your Honor.

THE COURT:  So is that okay with Mr. Tartaglione?

MR. BARKET:  Yes.  I actually -- as I -- we're, although we did submit a proposal, events have taken place since we submitted it that has led to some continued discussion among defense counsel and with our client about the schedule. So the position that we're taking now is that we need a little bit more time to make sure that we're unified.

THE COURT:  Okay.

MR. BARKET:  And that Mr. Tartaglione knows, and while even if he doesn't end up agreeing, at least understands the proposal we're making, and there may be some adjustments to it.  Hopefully we can get that done expeditiously, and then I want to be able to agree with the government at least on some parts of this.

We've all looked at both of the proposals, there's ample room for compromise on at least some aspects of it, if not ultimately the schedule.  So providing a hard deadline I guess is okay for us to agree or not to agree.

THE COURT:  Yes.

MR. BARKET:  But I would think we'd probably need about three weeks for that to happen to make sure we have time to consult with each other and consult with our client and then we want to be able to get back to the government and meet with the government and actually sit down and kind of hash it out to the extent that we can, and my view is I'm still hopeful we'll end up agreeing.  We may not, but we may.

THE COURT:  Yes.

MR. BARKET:  I know I said to the Court last month that I thought we'd have an agreement now.  Unfortunately we don't even have an agreement on one side of the courtroom.

THE COURT:  Intervening events may have superseded.

MR. BARKET:  But I agree with the government that once we get to that point I'm happy to set a schedule with the understanding that if the roster changes in some way that affects it, we can adjust it.  But I don't think that will happen.  I think that once we -- once we get a schedule set, I don't think the roster will change in any way that will affect the schedule we agreed to.

THE COURT:  I'm bad at predictions, so I'm not going to go anywhere near that.  If you want three weeks to submit either an agreed-to proposal or an agree to disagree, I don't think that's an unreasonable thing to do in light of these unresolved *Curcio* issues.  It may be that once Ms. Sternheim submits her report, you may want to rethink that.

You want to be heard on this?

MR. BACHRACH:  Briefly, your Honor.  I wanted to assure the Court, although we have some differences in our propose agreements, in our proposals that is, one of the deadlines that the defense is proposing to submit is in December which is actually the earliest of the deadlines for any submission, any proposed submission.  The defense will

endeavor to meet that deadline even if a normal schedule hasn't been set. And I don't mean to say we're going to file something before your Honor says we should. What I'm saying is we'll be ready to submit it if ultimately your Honor says a month from now, okay, that is the schedule we want, or we're ready to set a schedule. We're going to keep working, just as we're going to keep working on every aspect of this case so our own internal deadlines are hit regardless of whether or not there's agreement with the government on when those deadlines should be.

THE COURT: Okay. All right, so I think where this leaves us is three weeks from today the time by which either there will be a joint proposal for a schedule including a potential trial date or two competing proposals. And I'll say what I said before, I don't know how I'm going -- whether there's an agreement or not, I'm not sure what I'm going to do at this point until I see how the *Curcio* landscape looks. Because it may be my view, and maybe you all would disagree with it, but it may be my view that I may need to resolve the *Curcio* issue before I can commit this case to a schedule. And maybe I won't have that view. I just don't know. So I think there's no downside to giving you this time to try to figure it out and we'll see where it takes us.

MR. BARKET: I think three weeks is the 11th, which is Veterans Day, so maybe the 12th.

Angela O'Donnell, RPR, 914-390-4025

THE COURT:  Sure, 12th is fine.

MR. BARKET:  If my math is right.

THE COURT:  You're right, it is Veterans Day.

MS. COMEY:  Just one request the government, your Honor.

THE COURT:  Please.

MS. COMEY:  The government understands that the Court is handling the *Curcio* issues *ex parte*.

THE COURT:  For now.

MS. COMEY:  Yes, your Honor.  Would it be possible to know when Ms. Sternheim expects to file the report so we have a sense of timing?

THE COURT:  So I did not give Ms. Sternheim a hard deadline for reasons that I think make sense under the circumstances, but rest assured Ms. Sternheim is committed to making this her top priority and endeavoring to get this done as quickly as possible.

MS. COMEY:  Thank you, your Honor.

THE COURT:  So we're not talking months, if that helps you.

MS. COMEY:  Thank you, your Honor.

THE COURT:  All right, anything else from your perspective, Ms. Comey?

MS. COMEY:  No.  Thank you, your Honor.

THE COURT:  Mr. Barket.

MR. BARKET: Not -- no offense, but not with the government. We have the one issue I think we should take up with just the defense.

THE COURT: Okay. Is there anything else then from the defense standpoint we should take up with the government here?

MR. BARKET: No.

I'm sorry, one second.

THE COURT: Sure.

(Pause)

MR. BARKET: No, Judge.

THE COURT: All right. So should we schedule something now by way of a status conference?

MR. BARKET: Oh, sure. Yes, please.

THE COURT: So roughly 30 days from now.

MR. BARKET: November 20th.

THE COURT: Maybe we could do the 20th. Let's see if it's available.

MR. BACHRACH: Your Honor, may I have a moment?

THE COURT: Sure.

MR. BACHRACH: Your Honor, I'm available on the 20th. I have to confer with Mr. Ricco.

THE COURT: Okay. Ms. Sternheim.

MS. STERNHEIM: Judge, I do not know whether the Court wishes me to be present, but I could be available on the

20th but it would be close to noon, as I teach at Pace that morning.

THE COURT: Okay. Does noon work for everybody on the 20th?

MS. COMEY: That works for the government, your Honor.

MR. BARKET: Yes.

MR. BACHRACH: Yes.

THE COURT: So let's say then 12 noon on November 20th.

MS. STERNHEIM: Thank you.

THE COURT: All right, any objection to excluding time from now until November 20?

MR. BARKET: No.

THE COURT: Then I'll prospectively exclude time from today to November 20 of 2019. I'm going to do that for a number of reasons. As is clear from this conference, there are some *Curcio* issues that need to be resolved, also counsel continue to prepare feverishly both in terms of motions and in terms of general defense on behalf of Mr. Tartaglione. There is a substantial amount of work to do in preparation of Mr. Tartaglione's defense. So I therefore find the interests of justice from this exclusion outweigh Mr. Tartaglione's and the public's interest in a speedy trial. The finding is made pursuant to 18 USC, Section 3161(h)(7)(A).

Angela O'Donnell, RPR, 914-390-4025

Anything else, Ms. Comey?

MS. COMEY:  No.  Thank you, your Honor.

THE COURT:  So if we could clear the courtroom except for people who are connected with Mr. Tartaglione, whether it's his family or counsel or those working with counsel.  With that, we are adjourned.

(Government excused from courtroom)

MR. BARKET:  I think we're partially --

THE COURT:  Okay, so the people on the left, are you affiliated with Mr. Tartaglione?

UNIDENTIFIED SPEAKER:  I'm a reporter from the *New York Post*.

THE COURT:  All right.  Good morning.

UNIDENTIFIED SPEAKER:  Good morning.

THE COURT:  And the others, are you affiliated with Mr. Tartaglione?

UNIDENTIFIED SPEAKER:  Reporter for the *Daily News*.

THE COURT:  Okay.  So we're going to have to clear the courtroom because we have to take up an issue of representation, and so while I certainly recognize not only your right to be here but the public's right through you to be here, when there are matters of attorney-client issues and defense strategy, those, for Mr. Tartaglione's sake, need to be handled *ex parte*.

So I reluctantly and politely ask if you could step

outside.

UNIDENTIFIED SPEAKER:  Okay.

THE COURT:  Thank you.

MR. BARKET:  Can I have a moment, Judge?  There's so many people.  I don't recognize everyone.

THE COURT:  Yes, that's not problem.

(Pause)

MR. BARKET:  Thanks.  Sorry.

THE COURT:  Everybody here is connected with Mr. Tartaglione?

MR. BARKET:  Friends or family or mitigation person or lawyer, so forth.

THE COURT:  Okay.

(Pages 48 through 52 sealed)

(Continued on next page)

SEALED PROCEEDINGS

(The following discussion held defense counsel:

THE COURT:  All right.  So we're back on the record. At this point I have cleared the courtroom, everybody except for those affiliated with Mr. Tartaglione or his legal defense. The reason for doing so is we're going to be addressing issues about representation and defense strategy and those are things that need to, for Mr. Tartaglione's benefit and his legal right, to be protected.  So that is why I'm sealing the courtroom and I'm going to seal this portion of the transcript of the proceeding for the same reason, except copies can be made available to counsel for Mr. Tartaglione.

Mr. Barket.

MR. BARKET:  Your Honor, Mr. Tartaglione has made I think repeated applications to have his legal team reduced by one --

THE COURT:  Yes.

MR. BARKET:  -- asking Mr. Ricco be relieved.  The *ex parte* communication we had in the back your Honor thought it was -- and we agree, it's a bad idea for Mr. Tartaglione to be having a colloquy with the Court.  So with permission of Mr. Tartaglione and the Court, I'll speak on his behalf.

THE COURT:  Just so I'm clear, the only reason it's a bad idea is I don't want Mr. Tartaglione to say anything that can be used against him.  I'm not trying to silence his viewpoint.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

MR. BARKET:  Absolutely not.  I think it's a point Mr. Ricco made and it's well taken.  So I want to express his thoughts with the understanding that these aren't necessarily my thoughts --

THE COURT:  I understand.

MR. BARKET:  -- but what Nick has articulated I think repeatedly.

He's asking that the Court relieve Mr. Ricco.  Since the last Court appearance where he was given time to think this over --

THE COURT:  Yes.

MR. BARKET:  -- he's written I think at least two letters to the defense team reiterating that.  In addition, he has directed the attorneys who remain not to communicate about his case with Mr. Ricco which places all of us in a very awkward situation with the ethical rules.  He has the right to do that, to say you can speak to so-and-so but you can't speak to person X.

So his view remains the same.  At some level, if the Court were inclined, it may be necessary to make sure he's making a knowing and intelligent decision about this, but even if one of the attorneys, even the most experience and qualified lawyer is eliminated he'll be left with four appointed counsel at least two of whom have tried capital cases, as well as the firm that he's hired to represent him.

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

So I spoke to him and I know what his position is.

THE COURT: Yes.

MR. BARKET: And obviously we had a conversation in chambers, and I know what the Court's position is.

I think Nick is as firm about this as he's been about anything, and it's been a conversation that started a year and a half ago and has come up repeatedly over that course of time and boiled over, if you will, in the last several months.

So it's an opinion that he has held for quite a long period of time. It's a view he has held for quite a long period of time and it's a request he has made once on the record and --

THE COURT: Once before the last conference; right?

MR. BARKET: Once before the last conference, right. I'm sorry. So twice on the record.

THE COURT: Correct.

MR. BARKET: And I don't think I'm opening up a kind of a Pandora's box by saying that's been on the record, he has made repeated requests for this to occur.

THE COURT: Well on the record he's made it twice.

MR. BARKET: Twice.

THE COURT: Correct.

MR. BARKET: Right. So at some point the issue has to be joined, and I think he said last time, and I know it's his view now, that regardless of what happens with the Curcio

SEALED PROCEEDINGS

inquiry, his view is the same.  He recognizes he could lose -- I don't want to say the two lead attorneys because we haven't really spoke about it in those terms, but his counsel of choice and the most experienced person on the team.

THE COURT:  Okay, and my reaction is that I'm going to continue to consider the application.  I'm not going to rule on it until I have some sense of what the *Curcio* landscape is because the *Curcio* issue also may or may not affect the representation of Mr. Tartaglione, and since I don't even know what the parameters are of the *Curcio* issue, I know what the initial inquiry was, but I don't know what that inquiry has led to in terms of the facts or even the competing facts.  And so while I'm glad to hear Mr. Tartaglione is aware of the ethical issue that comes up with his directive for people not to speak to Mr. Ricco, I have to be concerned with the integrity of the representation writ large, and it seems to me that the *Curcio* issue is wrapped up in this at least for now.  And so I'm not going to deny the request, I'm not going to grant the request at this point.  It's under consideration.  He has a qualified right to choice of counsel.  I have conducted an inquiry as to why he wanted Mr. Ricco relieved and the record speaks for itself about the reasons he gave, and I think we'll have a little bit more understanding of the fault lines here once we get the *Curcio* issue teed up even before there's any kind of a hearing.  So I'm not insensitive to Mr. Tartaglione's concerns,

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

but I'm concerned just generally speaking about his representation, and I want to try to get all the facts before I make a decision.

All right, is there anything else we need to take up? Okay. Then with that, we are adjourned. Good to see you all.

Marshals, thank you.

MR. BACHRACH: Thank you, your Honor.

End of sealed discussion)

(Proceedings concluded)

CERTIFICATE: I hereby certify that the foregoing is a true and accurate transcript, to the best of my skill and ability, from my stenographic notes of this proceeding.

-------------------------------------

Angela A. O'Donnell, RPR,Official Court Reporter, USDC, SDNY

Angela O'Donnell, RPR, 914-390-4025