# ANTHONY L. RICCO

*Attorney At Law*

20 VESEY STREET, SUITE 400

NEW YORK, NEW YORK 10007

TEL. (212) 791-3919  FAX. (212) 791-3940

November 7, 2019

**BY FACSIMILE**:  TO BE FILED EX PARTE AND UNDER SEAL

Hon. Kenneth M. Karas
United States District Court Judge
Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

> Re: **United States v. Nicholas Tartaglione**, Docket No. 16 Cr. 832 (KMK)

Dear Judge Karas:

I write to the court in reply to the letter filed by retained counsel Bruce Barket which is in response to Learned Counsels' request to expand the *Curcio* inquiry to include additional conduct of retained counsel.

First and foremost, contrary to attorney Barket's misleading and inaccurate premise, neither Learned Counsel nor *Curcio* counsel is attempting to set the parameters of the *Curcio* inquiry in this case.   The law is clear that the Second Circuit requires counsel to alert the court when counsel is of the belief that there may exist a potential conflict in a case.  See,  *United States v. Mapliedi,* 62 F.3d 465, 470 (2d Cir. 1995).

It is not up to counsel to debate and determine whether a conflict is potential or actual or whether any conflict exist at all.  To the contrary, when there is a reasoned belief that a conflict may exist, it is counsel's duty to alert the court, *at the earliest possible moment.   Id at* 470.   Such a notification allows the court (and not counsel) to determine the next steps to be taken.   This process is required

even where just "*the specter of conflicts of interest arises.*" *United States v. Lussier,* 71 F.3d 456, 461 (2d Cir.

1995)(the court must make an inquiry even where there is only a *possibility* of a conflict).   This

process allows the court to either "secure a waiver under *Curcio* or disqualify defense counsel under

*Levy." Id at* 470.   See also, *United States v. Lussier,* 71 F.3d 456, 461 (2d Cir. 1995)

Attorney Barket's letter to the court appears to invite a *Curcio* inquiry.  It is a diversion, and

an attempt to take the focus away from the full discovery of the actual divergence of interest

resulting from the attorney(s) participation with the possession and use of a contraband cellular

phone at the M.C.C.   Attorney Barket is attempting to gather information so that he can improperly

influence the outcome of the  *Curcio* investigation, just as he previously attempted to do in relation to

Learned Counsel's initial August 19, 2019 application for the appointment of *Curcio* counsel.

The Court appointed *Curcio* counsel over attorney Barket's objection via a letter dated

August 20, 2019.   In that letter, attorney Barket asserted that neither he nor his firm did anything

wrong, and the all interaction with Nicholas Tartaglione was in compliance with ethical rules.    This

court will soon discover that as a result of the *Curcio* inquiry, *Curcio* counsel has found out that

attorney Barket was directly involved in the removal of contraband (a document) material to the

investigation of Jeffrey Epstein's attempted suicide/suicide.   This finding is contrary to contrary to

the assertions made by attorney Barket to the court  in his August 20, 2019 letter.   It is expected

that *Curcio* counsel will detail in her final report to the court the existence of a serious conflict (in

relation to attorney Barket's direct involvement in the removal of contraband which necessitates the

court to either "secure a waiver under *Curcio* or to disqualify defense counsel under *Levy.*"   It is

certain, however, that had, this court been persuaded by attorney Barket's assurances in his August

20, 2019 letter, and failed to appoint *Curcio* counsel and had also not permitted *Curcio* counsel the

time to conduct a thorough investigation, this information of attorney Barket's direct involvement

2

would have remained unknown and therefore not subject to the court's ultimate inquiry.    The court, however, taking recognition of the heightened standards applicable to capital cases, not only granted the appointment over attorney Barket's objection, but also resisted his persistence that *Curcio* inquiry take place on that day.   See, Transcript of August 21, 2019, page 13, line 23-25.   Attorney Barket was persistent that all that was needed was for *Curcio* counsel to just go down and pose a few questions to the defendant and return. *Id.*   Attorney Barket even proffered to the court Nicholas Tartaglione's expected responses.  See, Transcript of August 21, 2019, page 15, line 24 to page 16, line 5.   Learned counsel interjected that what attorney Barket was attempting to frame was "not the issue."   See, Transcript of August 21, 2019, page 16, line 5.    The court observed that if what attorney Barket was proposing was the issue resolution would be  "*no brainer*," but even if so, the issue required a thorough investigation.   Transcript of August 12, 2019, page 16, line 14 to page 17, line 1.   Even attorney Leisenring contributed her part to have the matter resolved that day, by attempting to fabricate a downside in the absence of immediate action and to narrow the issue to simply whether an attorney violated the Rules of Professional Conduct.[1]  Transcript of August 21, 2019, page 17, line 8 to 12.   The court disagreed and directed a thorough investigation.  Transcript of August 21, 2019, page 18 line 23 to page 19, line 14.   For the most part all appointed counsel remained silent exercising restraint *at that juncture* due to the Second Circuits holding in the *Lopez v. Scully*, 58 F.3d 38 (2d Cir. 1995)

Attorney Barket's present letter is yet another attempt to thwart the legitimate process required to ensure that a defendant is properly represented by an attorney free of conflicts.   Just as

---

[1]    At the time these representation were made by attorney Barket and his associate, all other counsel were unaware that attorney Barket had directly participated in the removal of the contraband item nor that he had previously instructed Nicholas Tartaglione not to discuss the item with anyone, unless he was present in the room.   Good lawyer's instincts, and adherence to the protocols of the Second Circuit, and just sound wisdom prevailed and the truth concerning the depth and the actual participants with the removal  was revealed as a result of the thorough inquiry by *Curcio* counsel.

attorney Barket did previously, he again wants others to set forth their thoughts on the specifics of his conduct, and/or the conduct of the members of his firm, now in relation to the possession and usage of a contraband cellular phone at the M.C.C.

Out of grave concern, we have asked the court to expand the inquiry into the statements made by attorney Barket on the record on July 22, 2019 in connection with the possession and use of a contraband cellular phone by Nicholas Tartaglione at the M.C.C.    With this request, we are not, as attorney Barket claims "setting parameters."   No at all.  We are concerned because the communications between counsel associated with the Barket firm, as reported on the record by attorney Barket, and Nicholas Tartaglione via a prohibited contraband cellular phone has jeopardized Learned Counsel's ability to effectively investigate "a course of action" to be taken in preparation for presentation during the penalty phase on mitigation evidence on the issue of the defendant's prison adjustment.

This is significant, attorney Barket has made representations concerning the possession and use of the contraband cellular, and has posed a potential mitigation presentation on prison adjustment.  However, the theory posed "diverges from the interest of Nicholas Tartaglione," and is also not supported by evidence which impeaches and contradicts the foundation of premise proffered by conflicted counsel.   To date, Learned Counsel has had the opportunity to examine a screen shot of a text message sent from a contraband phone reportedly possessed by Nicholas Tartaglione, an also examined the telephone logs provided by the government and has identified multiple conflicts that impair the effective representation of the defendant by attorney Barket and members of his firm.

Finally, Learned Counsel is of the view that *Curcio* counsel could have simply moved forward and expanded the inquiry on her own, based upon the information that is presently in her

possession on the subject of the contraband cellular phone. However, since this is an authorized

capital case, everyone is of the belief that it would be prudent, and without any prejudice to the

defendant or the government, to strictly comply with the established protocols of the Second Circuit

and alert the court to the possibility of conflicts (here in connection with the statements related to

Nicholas Tartgalione's possession and use of the contradict cellular as claimed by attorney Barket on

the record on August 21, 2019), so that the court can make an appropriate inquiry to direct existing

*Curcio* counsel to (a) advise the defendant Nicholas Tartaglione regarding any conflicts, and (b) to

discuss with the defendant his right to waive the potential conflict or to discharge counsel after a full

hearing.[2] *See United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982); *see also United States v. Williams*, 372

F.3d 96, 102 (2d Cir. 2004)

There is no question, that a *Curcio* inquiry is required in relation to the statements made by

attorney Barket in relation to the Nicholas Tartaglione's possession and use of a contraband cellular

phone (which includes in the participation of attorney(s) from the Barket firm), and that given the

finding already discovered by *Curcio* counsel in relation to contraband in connection with the Jeffrey

Epstein attempted suicide/suicide, the failure to conduct such an inquiry would deprive this court of

it's responsibility to ensure, over attorney Barket's assurances to the contrary, that Nicholas

Tartaglione is represented by conflict free counsel who has conducted themselves within the code of

ethics and the law.

Learned Counsel have exercised great restraint not to set forth the specific facts supporting

the initial request for the appointment of *Curcio* counsel, and again we are reluctant to do so here.

---

[2]     As previously stated , a result of the importance of this issue in a death authorized case, each step
taken by Learned counsel in this matter, including the information to be included in the submission of this
application to request an expansion of the scope of  *Curcio* counsel, has been discussed with the Executive
Director of the Federal Defenders of New York and the Executive Director of the Federal Death Penalty
Resource Counsel Project.

There is a time and place for the full factual inquiry.  Our investigation, which includes a review of documents, and a review of the statements made on the record by attorney Barket necessitate the appointment of *Curcio* counsel and the expansion of *Curcio* counsel's report to include conflicts related to the contraband cellular.

As counsel for a defendant facing criminal charges, we have an ethical obligation to protect the confidences information obtained during the course of the representation of Nicholas Tartaglione under New York Rules of Professional Conduct, Rule 1.6.  Besides, just as before in relation to the removal of contraband material to the Epstein attempted suicide/suicide, we are also unaware of the full extent of the attorney(s) conduct who actually engaged in the conduct subject to the *Curcio* inquiry.   However, there is certainly enough information in our possession that has been reviewed to demonstrate more than a "specter of conflict of interests has arisen," in relation to the contraband cellular phone to necessitate a *Curcio* inquiry.

Attorney Barket's desire to have specifics revealed to him about his conduct or the conduct of attorneys in his firm does not make any sense, unless he wants a preview of information to influence those that he believes will be interviewed.  As stated above, this court will soon discover that attorney Barket has previously engaged in conduct to influence those to be interviewed by *Curcio* counsel.  *Curcio* counsel is aware of those circumstances, and we expect that they will be included in her final report to the court.

All non-conflicted counsel share the above views, and the need for a complete and thorough inquiry in relation to attorney Barket and his firm in relation to contraband at the M.C.C.   An independent, objective inquiry is required, one free of the influences of those subject to the conflict. We therefore, request that this court authorize *Curcio* counsel to explore any matters deemed relevant to the determination of whether this case involves any conflicts - including issues related to

6

the admitted communications via a contraband cellular phone that was seized by the BOP, as described by attorney Barket on the record on July 22, 2019.

Finally, we respectfully request that this application and the related proceedings that follow be held *ex parte* and under seal to avoid revealing information that could adversely impact the defendant and prejudice his penalty phase investigation and presentation.

Respectfully submitted,

*Anthony L Ricco*

Anthony L. Ricco, Esq.

*Bruce D. Koffsky*

Bruce D. Koffsky, Esq.

*Michael Bachrach*

Michael Bachrach, Esq.

Kenneth J. Montgomery, Esq.
John Diaz, Esq.

ALR/jh

cc:   All defense counsel (including Barket and Leisenring)

7