# ANTHONY L. RICCO

*Attorney At Law*
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007

TEL. (212) 791-3919  FAX. (212) 964-2926
EMAIL: tonyricco@aol.com

STEVEN Z. LEGON
OF COUNSEL

February 3, 2020

**TO BE FILED *EX PARTE* AND UNDER SEAL**

**BY EMAIL**

Hon. Kenneth M. Karas
United States District Court Judge
Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

Re: **United States v. Nicholas Tartaglione**, Docket No. 16 Cr. 832 (KMK)

Dear Judge Karas:

This letter is submitted to seek an order directing the defense to disclose information requested by A.U.S.A. Margery Feinzig, the government conflict/firewall counsel, in relation to issues raised in the *Curcio* report.

Background and Basis To Disclose Requested Infromation

During our conference on January 22, 2020, the court recognized and anticipated that the government conflict/firewall counsel would have follow up questions after reviewing the *Curcio* report. See, *Transcript* January 22, 2020 (unsealed), page 15, line 3 to 16. In fact, attorney Barket was the first to volunteer, and sought permission to provide a copy of the lengthy correspondence that he filed in response to the *Curcio* report directly to the government/firewall counsel. See, *Transcript* January 22, 2020 (unsealed), page 14, line 5 to 9. Appointed counsel expressed the view that all of the documents provided to *Curcio* counsel that were the source of the factual conclusions reached in the *Curcio* report should also be disclosed, upon request. See, *Transcript* January 22, 2020 (unsealed),

page 14, line 12. The court endorsed the view of both counsel for Nicholas Tartaglione, and added that further requests by A.U.S.A. Feinzig would be addressed upon application, as they arose. See, *Transcript* January 22, 2020 (unsealed), page 14, line 3 to 12.

Conflict/Firewall Counsel Has Made a Request For Additional Information

Having reviewed the *Curcio* report A.U.S.A. Margery Feinzig has a host of follow up questions, as we fully expected and discussed at our January 22, 2020 conference. See, *Transcript* January 22, 2020, page 15, line 5 to 12. In an effort to gain a full and comprehensive understanding of the facts and issues set forth in the *Curcio* report, A.U.S.A. Margery Feinzig has, to date, requested the following: (1) a copy of all correspondences that all defense counsel filed with the court in connection with the appointment of *Curcio* counsel, and the correspondences that all defense counsel filed with the court which addressed issues related to the *Curcio* inquiry, after the *Curcio* appointment; (2) all documents (Basecamp posts, emails and text messages) provided to *Curcio* counsel during the course of the *Curcio* inquiry; and (3) copies of the *ex parte* proceedings and sealed transcripts of court conferences held on August 21, 2019; September 17, 2019; October 21, 2019; November 20, 2019; December 18, 2019; and January 22, 2020.[1]

Identification and Review of Requested Information

Learned Counsel Michael Bachrach has identified twenty three correspondences filed with the court addressing issues related to the appointment of *Curcio* counsel and the *Curcio* inquiry. Those twenty three correspondences (including three letters which are purportedly from Nicholas Tartaglione) have been organized and can be made available to the court for review.

---

[1]     Over the past several days, undersigned counsel have reviewed the transcripts of the *ex parte* court proceedings held by the court on August 21, 2019; September 17, 2019; October 21, 2019; November 20, 2019; December 18, 2019; and January 22, 2020. Those transcripts are relevant to a resolution of the *Curcio* inquiry in this case, and provided *in toto* except as follows: September 17, 2019 (redacted at page 14, line 21 thru page 15, line 5); and January 22, 2020 (redacted at pages 2, line 5 to 12, line 14 to 16, and line 25 to page 3, line 9). Those redactions protect conversations concerning Jerry Tritz and case budgeting - - which are not at all related to the *Curcio* inquiry.

Appointed counsel is of the view that the twenty three correspondences filed with the court demonstrate, *inter alia*, a repeated pattern of conduct by retained counsel that served to improperly deter, thwart and undermine the *Curcio* inquiry. The correspondences are replete with misrepresentations and outright falsehoods of material facts related to the *Curcio* appointment and relevant to the *Curcio* inquiry. In addition, the correspondences also provide *prima facie* proof that retained counsel has advocated courses of action on various issues that advance retained counsel's own interests, and how they have, in fact, diverged from that of Nicholas Tartaglione, as death authorized defendant who must prepare for a penalty phase defense. As a result, all twenty three correspondences are relevant to the *Curcio* inquiry.

Recent Request To Discharge All Appointed Counsel and The Letter Mailed To Learned Counsel

The above view has been reinforced by the circumstances related to the startling statements made by attorney Barket in court during an *ex parte* and sealed proceeding on January 22, 2020, along with the timing of a correspondence that was received by Learned Counsel, purportedly authored by Nicholas Tartaglione, which was apparently smuggled out of the Metropolitan Correctional Center. In the correspondence (Tartaglione letter), the author (purported to be Nicholas Tartaglione) threatened that he was going to expose his issues concerning the discharge of Learned Counsel to the Daily News - - the same newspaper that attorney Barket claimed to have contacted him about issues which had only been disclosed in *ex parte* and sealed proceedings. See, Transcript November 21, 2019, at page 28, line 6 to 18.

During the January 22, 2020 conference, retained counsel made an astounding announcement. Without any prior notice to his professional colleagues in a death authorized case, and without articulating any basis in law or fact, attorney Barket announced that Nicholas Tartaglione was exercising his right under 18 U.S.C.§3003, and that he wanted each and every appointed counsel discharged. Not only did retained counsel request the removal of all qualified, hardworking counsel who have collectively dedicated thousands of hours, at public expense, to his

defense, but that Nicholas Tartaglione wanted all appointed counsel discharged immediately, and prior to the conclusion of the *Curcio* inquiry.[2] The caveat for the immediate discharge is significant, because apparently the only time when this extraordinary relief could have been discussed with Nicholas Tartaglione was on January 20, 2020, a date that is significant to the issues of who is responsible for aiding and abetting the removal of the Tartaglione letter from the Metropolitan Correctional Center - - again, in violation Bureau of Prisons rules and regulations.

To support such an extraordinary request, attorney Barket attempted to create an issue claiming an actual prejudice related to his effort to negotiate a withdrawal of the notice of intention to seek the death penalty. However, there was no prejudice. The truth concerning attorney Barket's conduct was memorialized in a series of emails initiated by attorney Barket on January 8, 2020, and concluded by the government on January 9, 2020.

The series of emails from those dates further demonstrates that attorney Barket engages in hidden conduct which does not serve the interest of a death eligible defendant. The email that attorney Barket sent to the government, without notice to any appointed counsel, to seek the withdrawal of the notice of intention to seek the death penalty, was later used by him to support the immediate discharge of all appointed counsel from the case. Attorney Barket claimed that the action of Learned Counsel prejudiced Nicholas Tartaglione. This was just another ploy to thwart the *Curcio* inquiry, and to eliminate counsel who have demanded that the representation of Nicholas

---

[2] Having been unable to block the appointment of *Curcio* counsel, having failed in the attempt to convince appointed counsel to conceal the existence of the removal of the Epstein note (at a time when attorney Barket's involvement remained hidden from his co-counsel whom he was attempting to manipulate through the concealment of his actual involvement), and having now been unable to prevent the disclosure of the *Curcio* report to a government firewall team, attorney Barket announced that the  defendant wanted all appointed counsel - - counsel who have expended thousands of hours of public funds towards developing his defense - - discharged from the case without any cause or reason, other than the defendant has the right to do so).  I have since been informed, however, that attorney Barket wants to keep in place the C.J.A. budget and exercise his prowess over public funds.

Tartaglione comply with professional standards. Another attempt to thwart the pending *Curcio* inquiry failed. Retained counsel's manufactured prejudice was exposed by Learned Counsel, who demonstrated through the use of attorney Barket's statements in his own emails, that he has a total lack of knowledge on how to proceed, and that he attempted that to pull off this ruse lacking any knowledge of the important protocols in the U.S. Attorneys Manual (9-10.160). In addition, it was significant that retained counsel attempted to seek relief from the Department of Justice, without any consultation with any of the appointed Learned Counsel or with any our assigned Resource Counsel, who have both been an integral part of the development of the defense, and who participated in our prior presentation to the Department of Justice.

Attorney Barket's attempt to create prejudice, so that appointed counsel could be immediately discharged before the conclusion of the *Curcio* inquiry, only serves to demonstrate that as an attorney, he was again engaging in a course of conduct that certainly was against the best interest of capital authorized defendant. A genuine application to the Department of Justice seeking the withdrawal of the notice of intention to seek the death penalty, made without knowledge of the protocols in the U.S. Attorney's Manual (which prohibits successive applications), made without consultation with Learned Counsel or Resource counsel is, at minimum, conduct that deviates far below the standard of a qualified capital defense attorney - - conduct which is not in compliance with ABA Guideline 10.8.

The Tartaglione Letter (January 18, 2020)

Attorney Barket's argument to discharge all appointed counsel, apparently discussed with Nicholas Tartaglione during the legal visit of January 20, 2020, was followed up with a letter purportedly authored by Nicholas Tartaglione on January 18, 2020. The Tartaglione letter stated that Nicholas Tartaglione was going to inform the Daily News of his desire to have Learned Counsel *immediately* removed from the case.

Background and BOP Rules

First and foremost, on past occasions this court explained the process directly to both Nicholas Tartaglione and attorney Barket why the court was deferring the issue of the removal of Learned Counsel until the conclusion of the *Curcio* inquiry. See, Transcript September 17, 2019, pages 12-13 and 53. However, with the exception of the conference held on December 18, 2019, attorney Barket purposely raised the same issue - discharge attorney Learned Counsel. On each occasion the court responded by patiently explaining to both Nicholas Tartaglione and his retained the process, and explained that the defendant was not suffering any prejudice. In addition, the court also explained that Nicholas Tartaglione must refrain from writing to the press, and that such restraint was necessary to maintain the integrity of the system. See, Transcript September 17, 2019, page 13. This court said:

> We just have to make sure that the system maintains its integrity, so if there are representation issues, at some point that are going to have to be resolved, but the more immediate concern to me is he not write anybody that's going to publish his letters, which means he shouldn't be writing anybody in the media.

See, *Transcript*, September 17, 2019, page 13, line 5 to 10. The court directly addressed Nicholas Tartaglione and informed him "no more letters to the media," and that doing so was not "in his interest." See, Transcript September 17, 2019, pages 6, 12-13, 53 and 60

As the court is aware, Learned Counsel received a letter, purportedly written by Nicholas Tartaglione on January 18, 2020, while detained at the Metropolitan Correctional Center, but postmarked from a Long Island post office at 6:00 p.m. on January 21, 2020, threatening to take the issues of counsel, presently pending before the court, under seal, to the Daily News.[3] The question of

---

[3]    Our investigation to date has revealed the following: (1) there was no outgoing mail service from the Metropolitan Correctional Center on January 18, 2020 (Saturday), January 19, 2020 (Sunday) and January 20, 2020 (Monday, Dr. King's Birthday, a federal holiday had no mail service in or out of Metropolitan Correctional Facility; (2) Nicholas Tartaglione had no social visits at all on the dates from January 18, 2020 through January 21, 2020, the date the letter was postmarked at a Long Island post office; and (3) that the only person who visited Nicholas Tartaglione during the time period is attorney Bruce Barket, the attorney advocating for the immediate removal of all appointed counsel on January 22, 2020.

how the January 18, 2020, Tartaglione letter exited the Metropolitan Correction Center is first, based upon the premise that it was, in fact, Nicholas Tartaglione who authored the correspondence that bears his name and purported signature.  When appointed counsel visually compares the handwriting on other letters purportedly authored by Nicholas Tartaglione on January 18, 2020 (along with envelop) with the handwriting of the three previously filed with the court, there is grave concern that these documents may have been authored by more than one writer.  Appointed counsel is of the view that one or more individuals have influenced and aided and abetted Nicholas Tartaglione to participate in conduct that serves to shield or conceal a pattern of conduct of his retained counsel in relation to contraband at the Metropolitan Correctional Center, involving the removal of the Epstein note and the use of contraband cellular phone(s), but is absolutely divergent from Nicholas Tartaglione's critical interest which is his need to develop a record of conduct to support the presentment of positive *Skipper* evidence at the penalty phase, and to refrain from engaging in conduct which the government could use in aggravation on its direct case at the penalty phase or in rebuttal.

In the discharge of our professional responsibilities under the ABA Guidelines and Supreme Court case authorities, to investigate and prepare evidence for mitigation and potential aggravating evidence at the penalty phase, counsel have an obligation to fully investigate conduct claimed to be voluntarily engaged in by the defendant, which impacts the penalty phase; and to fully participate in proceedings that question whether any defense attorney (or an individual under his or her supervision) who is involved with the defense has been (or is currently) engaged in conduct that has resulted in a divergence of interests from Nicholas Tartaglione. See, *Rompilla v. Beard,* 545 US 374 (2005); ABA Guidelines 10.7, 10.8, 10.10.1, and 10.11.

What is clear, is that the arrival of an letter authored by Nicholas Tartaglione, in an envelope (with different handwriting from the letter inside) postmarked from a Long Island post office, is the

result of concerted effort with another to violate BOP rules and to engage in conduct which this court has specifically addressed and prohibited. Those who have engaged in such conduct cannot, with a straight face, claim that such conduct is in the interest of a defendant who is facing the possibility of a penalty phase. No. Trying to get appointed counsel out of way is in the interest of attorney Barket and those associated with his firm who, according to the *Curcio* report, have removed contraband from Metropolitan Correctional Center and have engaging in a pattern of surreptitious conduct violating BOP rules and regulations.

The *Curcio* report in this case has memorialized and finally exposed an alarming pattern of conduct; conduct which is denied by retained counsel; conduct that is inconsistent with statements that retained counsel has set forth in correspondences and has made on the record in relation to appointment of *Curcio* counsel and the *Curcio* inquiry. The *Curcio* report recognizes that attorney Barket has engaged in conduct in "*attempts to deter efforts to safeguard the legal interests of Mr. Tartaglione in this this death-authorized case.*" See, *Curcio* report, page 2. (double word appears in original text). The twenty three correspondences, along with the statements made by attorney Barket on the record, evidence the conclusion reached in the *Curcio* report, and therefore, the correspondences should be disclosed to the government firewall counsel.

Conclusion

There is no question that notwithstanding the ultimate decision to be made by the court on the issue of the conflict of counsel, it is imperative that there is an accurate, reliable record in this death authorized case, based upon the facts that actually took place, and not just the vitriolic self-serving statements made by attorney Barket - - an attorney whose interests long ago diverged from from the interests of Nicholas Tartaglione. The record in this case would be incomplete in the absence of permitting all parties, responsible for the record on appeal, to have a meaningful opportunity to

participate in the fact finding process and to weigh in on the legal issues presented by the *Curcio* report.

A firewall team has been put in place to protect Nicholas Tartaglione, as he should not have to suffer any prejudice as a result of being influenced and following the advice provided by a conflicted attorney.   As a result of the review of the correspondences and documents filed, appointed counsel is of the view that the twenty three correspondences do not disclose or divulge any information that prejudices Nicholas Tartaglione, which is not protected by government conflict/firewall counsel.[4]

In addition, the undersigned counsel are of the view that the sealed transcripts of the *ex parte* proceedings which took place on August 21, 2019; September 17, 2019; October 21, 2019; November 21, 2019; and January 22, 2020 can be provided to the government conflict/firewall counsel, as those proceedings contain statements and representations made by attorney Barket in relation to the events which are the subject and findings in the *Curcio* report, including the findings that attorney Barket has made statements and representations to both *Curcio* counsel and to the court, to deter or thwart the *Curcio* inquiry.[5]  See, *Curico* report at pages 2, 7, 10, 11, 12 and 13.

As stated above at the court conference on January 22, 2020, both retained counsel and appointed counsel requested and/or acknowledged that it would be important to provide directly to

---

[4]     The letters, purportedly filed by Nicholas Tartaglione, express his displeasure with Learned Counsel through the use of accusations, derogatory language, and sarcastic tone.  In addition, while the correspondences filed by counsel briefly touched upon scheduling matters, the correspondences do not divulge the particulars of any defense strategy decisions.  The correspondences by counsel have, in fact, discussed the conduct of retained counsel in relation to the *Curcio* inquiry, but only to the extent that is necessary for the court to make an informed decision for the appointment of *Curcio* counsel; and afterwards, whether retained counsel and/or others associated with his law firm have thwarted or attempted to thwart the *Curcio* inquiry itself.  As stated in court, the *Curcio* inquiry is not designed to protect the conduct of counsel. See, *Transcript*, January 22, 2020 (sealed), at page 9.  To the contrary, the *Curcio* inquiry is a judicial remedy designed to expose whether an attorney has been engaged in conduct that has created a conflict of interest, and to protect the rights of the defendant.  *Id.*

[5]     There was a conference on December 18, 2019, however, appointed counsel does not have a copy of that transcript.  We shall order the transcript and review it upon receipt, but rather than waiting for the arrival of the December 18, 2019 transcript, we believe it appropriate to move forward with those transcripts which are in our possession.

the government conflict or firewall counsel a copy of the those documents (Basecamp posts, emails and text messages) that were provided to *Curcio* counsel and were utilized in reaching the factual conclusions set forth the *Curcio* report and correspondences that were filed after the *Curcio* report was filed. See, *Transcript* January 22, 2020, page 14, line 5 to page 15, line 12. The court specifically provided authorization for defense counsel to directly provide the government with correspondences that were "*submitted afterwards and in direct relation to the report.*" See, *Transcript* January 22, 2020, page 15, line 3 to 7. The court also anticipated that A.U.S.A. Feinzig would have additional requests for information and documentation as the she moved forward with her review of the *Curcio* report. See, *Transcript* January 22, 2020, page 15, line 8 to 12.

As a result of the foregoing, the undersigned request that the court authorize the defense to provide the following to the government conflict/firewall counsel:

(1) a copy of all the correspondences that all defense counsel filed with the court in connection with the appointment of *Curcio* counsel and the correspondences that all defense counsel filed with the court, which addressed issues related to the *Curcio* inquiry, after the *Curcio* appointment; (2) all documents (Basecamp posts, emails and text messages) provided to *Curcio* counsel during the course of the *Curcio* inquiry; and (3) copies of the *ex parte* proceedings and sealed transcripts of court conferences held on August 21, 2019; September 17, 2019; October 21, 2019; November 20, 2019; December 18, 2019; and January 22, 2020.

The undersigned is painfully aware that the court has been inundated with an avalanche of letters from both from the government and defense counsel, often seeking guidance and directions. All counsel are aware of the exhaustive appellate and post conviction processes that accompany capital litigation. Therefore, we all appreciate the need for an accurate record regarding all aspects of the issue of counsel raised by Nicholas Tartaglione directly and through his counsel, which is the subject

of the pending *Curcio* inquiry.  In this way, we ensure the integrity of these capital proceedings, and honor our commitment to a level of professionalism, excellence and integrity that is required for the representation of a defendant facing the death penalty.

Finally, I respectfully request that this letter be held *ex parte* and under seal to avoid revealing information that could adversely impact the defendant and prejudice his penalty phase investigation and presentation.

Respectfully submitted,

*Anthony L Ricco*
Anthony L. Ricco, Esq.

*Bruce D. Koffsky*
Bruce D. Koffsky, Esq.

*Michael Bachrach*
Michael Bachrach, Esq.

Kenneth J. Montgomery, Esq.
John Diaz, Esq.

ALR/jh

cc:   All defense counsel (including Barket and Leisenring)

11