

666 OLD COUNTRY ROAD, SUITE 700
GARDEN CITY, NEW YORK 11530
516.745.1500 • [F] 516.745.1245
WWW.BARKETEPSTEIN.COM

ADDITIONAL OFFICES:
EMPIRE STATE BUILDING, NY, NEW YORK
HUNTINGTON, NEW YORK
ALL MAIL TO GARDEN CITY ADDRESS

February 13, 2020

The Honorable Kenneth K. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

**Re:   United States v. Nicholas Tartaglione, S4 16 Cr. 832 (KMK)**

Judge Karas:

I write at the Court's direction regarding Nick Tartaglione's decision to withdraw his request for "Learned Counsel" as authorized by 18 U.S.C.A. §3005 and to have all learned counsel removed from his defense team without further delay.  I also write, pursuant to the Court's directive, to discuss the availability of continued public funding for the payment of experts and investigators in the event that the Court grants Mr. Tartaglione's request.  As Your Honor is aware, Mr. Ricco was appointed to assist in the defense of this matter as learned counsel on or about December 24, 2016, pursuant to the request made by Mr. Tartaglione's then-appointed counsel, Mark Demarco.  Subsequently, pursuant to Mr. Ricco's request, four additional lawyers were appointed to the defense team.  The sentiments and arguments in this letter reflect Mr. Tartaglione's position in this matter and have been made at his direction.

**REQUEST FOR REMOVAL OF LEARNED COUNSEL**

As discussed below, removal of learned counsel is, under the circumstances, required for both constitutional and statutory reasons, irrespective of the perceived or actual wisdom of Mr. Tartaglione's decision.  However, this Court must determine that Mr. Tartaglione's critical decision in this regard is knowing and voluntary.  Accordingly -- and particularly under the circumstances of this case, where learned counsel has alleged that Mr. Tartaglione's decision is the product of advice that I gave him to protect my own interests -- I urge the Court to conduct a thorough and independent examination of Mr. Tartaglione concerning whether he is making a knowing and voluntary decision and to establish that he is not being improperly influenced.

**<u>Constitutional Analysis</u>**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the *assistance* of counsel for his defense." U.S. Const. Amend VI (emphasis added). While the Sixth Amendment does not refer explicitly to self-representation, the right of an accused to represent himself is "necessarily implied by the structure of the Amendment." *Faretta v. California*, 422 U.S. 806, 819 (1975) (recognizing a defendant's right to conduct his defense *pro se*, provided that certain safeguards are met).[1] The Amendment speaks of confrontation, compulsory process, and notice as rights of *the accused,* and these rights are not simply available to the defense; they are fundamental rights of the accused personally, rights that he can exercise himself in presenting his own defense. In this respect, while the framers of the constitution clearly appreciated the value of counsel in obtaining a fair trial, and acknowledged that a constitutional right to proceed *pro se* "seems to cut against the grain," the framers nevertheless placed a higher premium on the "inestimable worth of free choice." *Faretta*, at 833-34.

Similarly, just as an accused, who does not require appointed counsel, has a right to represent himself, a criminal defendant, likewise, has a right to choose who will represent him. *Wheat v. United States*, 486 U.S. 153, 159 (1988). Indeed, the Supreme Court has made clear that "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez*, 548 U.S. 140 (2006), quoting *Caplin & Drysdale*, *Chartered, v. U.S.*, 491 U.S. 617, 624-25 (1989). The right to counsel of choice, in other words, while essential in ensuring a fair trial, "commands not that a trial be fair, but that a particular guarantee of fairness be provided -- to wit, that the accused be defended by the counsel he believes to be best." *U.S. v. Gonzalez-Lopez*, 491 U.S. at 146. Accordingly, when an accused is erroneously denied the right to the counsel of his choice -- or is forced to proceed with a lawyer against his will -- this error is not subject to harmless error review.

> Where the right to be assisted by counsel of one's choice is wrongly denied, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice -- which is the right to a particular lawyer regardless of comparative effectiveness -- with the right to effective counsel -- which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

*Gonzalez-Lopez*, at 144 (*emphasis added*) (explaining that while ineffective assistance of counsel can be detected through identifiable mistakes and by evaluating the extent to which those mistakes affected the outcome of the trial, the prejudice resulting from the wrongful denial of choice of counsel cannot readily be assessed).

---

[1] *Faretta*, or course, recognized that the right of self-representation is qualified and not absolute, explaining that a trial judge may terminate self-representation and appoint stand-by counsel, even over the defendant's objection, if, for example, a defendant is deliberately disruptive, *see McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984), or where a defendant is competent to stand trial but not competent to proceed *pro se. Indiana v. Edwards*, 554 U.S. 164 (2008).

It follows then, just as a defendant has a qualified right to proceed with a lawyer of his choosing, and to also, in certain circumstances, proceed without a lawyer at all, a defendant must also have the right not to be compelled to proceed with a lawyer whom he has *expressly* and *repeatedly* asked to be relieved, regardless of the perceived or actual wisdom of that decision.

Here, unlike the defendant in *Faretta*, Mr. Tartaglione is not asking the Court to allow him to conduct his defense *pro se*, nor is he engaged in gamesmanship or strategic delay tactics. Rather, he is exercising his right "to be defended by the counsel he believes to be best," *U.S. v. Gonzalez-Lopez*, at 146, and to be unburdened by the requirement that he prepare and conduct his defense with the assistance of learned counsel, in whom he long ago lost trust, who has openly and repeatedly thwarted or countermanded the strategic decisions of retained counsel, and who has rarely even met with Mr. Tartaglione in over three years of litigation. Nor is it Mr. Tartaglione's position that the Court must, if learned counsel is removed, appoint substitute counsel of suitable skill and experience -- though that is an option that the Court could exercise at its discretion, if it finds good cause for such substitution.[2]

Furthermore, this decision has not been made in haste by an otherwise unsophisticated defendant. Mr. Tartaglione is a 52-year-old retired police officer, and he has been previously accused, tried, and acquitted of crimes in state court. He appreciates the charges against him, he understands his rights, and since retaining counsel shortly after his arrest -- pursuant to considered deliberation -- he has consistently communicated and cooperated with counsel, and he has actively and thoughtfully participated in his own defense.

And while granting Mr. Tartaglione's application to remove learned counsel may certainly, as explained below, require budgetary adjustments, this application comes well in advance of pre-trial hearings, and removal, therefore, would not disrupt the court's calendar in any significant way, prejudice the government, or cause material inconvenience to any other party.

### Statutory Analysis

Aside from the constitutional considerations, which strongly support Mr. Tartaglione's right to discharge learned counsel, statutory considerations further militate in favor of this Court's obligation to respect and effectuate his right to make this critical decision. In a capital case, the assistance of learned counsel is a statutory *option* for every defendant; and, as such, from a statutory standpoint, Mr. Tartaglione has the absolute right to choose to exercise this option, *or not to*, at his own discretion.

---

[2] It is the general rule that the right to court-appointed counsel does not carry with it the right to select a particular attorney. *United States v. Davis*, 365 F.2d 251, 254 (6th Cir. 1966) (district court was not required to provide substitute counsel in capital case pursuant to 18 U.S.C. §3005 in absence of showing of good cause). Indeed, section 3006A of the Criminal Justice Act provides that "[t]he selection of counsel shall be the sole and exclusive responsibility of the court, and any defendant entitled to representation under the act shall not be permitted to make the selection of an attorney to represent him from the panel or otherwise." 18 U.S.C. §3006A. Any motion for new counsel pursuant to section 3005 is therefore addressed to the sound discretion of the trial court. *Smith v. United States*, 353 F.2d 838 (D.C. Cir. 1965).

Capital cases are the most serious criminal defense cases as they involve, among other complicating considerations, the intricacies of aggravating and mitigating factors throughout both the liability and penalty phases of the prosecution. "Because of the nature of death penalty trials and the resources required for an adequate defense, it is essential that defendants facing the death penalty have sufficient representation from the onset of the litigation." *U.S. v. Massino*, 302 F.Supp.2d 1 (E.D.N.Y. 2003) ("Representing a defendant in a death penalty case is particularly time consuming, complex, and expensive"). Thus, to reduce the chance that an innocent defendant would be put to death because of inadvertence or errors in judgment of his counsel, and to prevent mistakes that would be irrevocable because of the finality of the punishment, Congress created an elective statutory right for a capital defendant to have two additional counsels, regardless of his ability to retain counsel of his choosing. *U.S. v. Shepherd*, 576 F.2d 719 (7th Cir. 1978). *U.S. v. Massino*, 302 F.Supp.2d 1 (E.D.N.Y. 2003).

Specifically, 18 U.S.C.A. §3005 provides:

> Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, *upon the defendant's request*, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases, and who shall have free access to the accused at all reasonable hours.

18 U.S.C.A. §3005. *U.S. v. Massino*, *supra* ("When a death sentence is a potential outcome, the court must not risk a trial infected by the possibility of insufficient representation").

But the right provided by section 3005 is a statutory right, not a fundamental constitutional right, and a court, therefore, has no affirmative obligation to even advise a capital defendant of his right to additional counsel. *See U.S. v. Shepperson*, 739 F.3d 176, 180 (4th Cir. 2014), citing *U.S. v. Blankenship*, 548 F.2d 1118, 1121 (4th Cir. 1976); *see also Barkan v. U.S.*, 305 F.2d 774 (7th Cir. 1962) (where court assigned competent counsel to represent capital defendant, court did not err by failing to advise defendant of additional rights afforded by section 3005). *Compare Smith v. U.S.*, 353 F.2d. 838 (D.C. Cir. 1965). Section 3005, in other words, provides an absolute right for additional counsel, *but only upon the defendant's request. Shepperson*, 739 F.3d at 180. Thus, where a capital prosecution proceeds without learned counsel, the defense suffers no *per se* prejudice, nor is the integrity of the proceeding automatically impaired. And, concomitantly, where a defendant chooses not to make the request – or, as here, affirmatively withdraws the request – for learned counsel, his choice should be respected.

### Request that Mr. Tartaglione be Examined by the Court

In this case, the above-analysis is complicated somewhat by learned counsel's allegations that Mr. Tartaglione's decision to withdraw his request for learned counsel is the product of advice that I have given him to protect my own interests. Learned and appointed counsel also allege that I have engaged in unethical conduct and am laboring under several "conflicts of interest," some or all of which are non-waivable. Learned and appointed counsel have, thus, previously argued in response to Mr. Tartaglione's numerous and repeated requests to discharge learned counsel that

4

he should not be permitted to do so until the conclusion of the *Curcio* inquiry, which has already been ongoing for six months and may continue for some time..

As a factual matter, and as addressed in other filings, I firmly deny the allegations that learned and appointed counsel have levied against me, and I dispute the existence of any conflict of interest. Mr. Tartaglione has asked me repeatedly during the pendency of his case to ask the Court to remove learned counsel, and until the last court date, January 22, 2020, I resisted and expressly counseled him *against* removing attorneys who had been appointed by the Court to help him. Nevertheless, as events have unfolded over the last seven months, Mr. Tartaglione's decision has become firm. Indeed, irrespective of whether or not my removal is deemed necessary following the *Curcio* hearing, Mr. Tartaglione has forcefully expressed to me that he *still* wants to fire learned counsel – a decision that has become resolute based, in large part, on learned counsel's actions, writings, and interactions with Mr. Tartaglione over the past few months. Thus, the outcome of the *Curcio* hearing, and my ultimate ability to continue on this case, has no bearing on, and should not logically or legally delay, the Court's action on Mr. Tartaglione's request for the removal of counsel.

To the extent that the independence of Mr. Tartaglione's choice is still disputed or in doubt, however, the proper recourse is for this Court to conduct its own examination of Mr. Tartaglione and discuss with Mr. Tartaglione the important role learned counsel plays in a capital defendant's case, ascertain the reasons for his request, and advise him of the consequences of his decision. Following such questioning by the Court, and if his decision is deemed knowing and voluntary -- even if unwise -- it should, for the reasons discussed above, be *immediately* effectuated. The continued participation of counsel, whom Mr. Tartaglione has repeatedly and forcefully indicated he does not want, *for over 6 months* against his wishes, is contrary to his constitutional and statutory rights, has already caused him tremendous psychological and emotional distress, and has even materially affected the course of the pre-trial litigation and investigation and prevented critical strategic decisions made by retained counsel on Mr. Tartaglione's behalf from being effectuated. Thus, I respectfully submit that this Court should thoroughly and independently question Mr. Tartaglione concerning whether he is making a knowing and voluntary decision and to establish that he is not being improperly influenced by me.

### AVAILABILITY OF PUBLIC FUNDING FOR MR. TARTAGLIONE

Contrary to the suggestion made by learned counsel -- namely, that if learned counsel goes, so, too goes the capital budget and all public funding for Mr. Tartaglione's (see transcript from January 22, 2020 at page 19, 23 and 24 of the sealed proceeding) -- the removal of learned counsel should in no way leave Mr. Tartaglione with insufficient representation or resources.[3]

Subdivision (e)(1) of the Criminal Justice Act ("CJA"), titled "Adequate Representation of Defendants" provides that "counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an *ex parte*

---

[3] Indeed, to the extent that learned counsel might advocate or argue that Mr. Tartaglione would lose public funding if learned counsel is discharged, such position would be shocking and utterly irreconcilable with his ethical duties to his client.

application." 18 U.S.C. §3006(A(e)(1).[4]  Similarly, section 310.10.10(a) of the CJA Guidelines provides that "[i]nvestigative, expert or other services necessary to adequate representation, as authorized by 18 U.S.C. §3006A(e) are available to persons who are eligible under the CJA, *including persons who have retained counsel* but who are found by the court to be financially unable to obtain the necessary services." *See* Guide, Vol. 7A. §310.10.10(a). And section 660.10.10(a) of the CJA Guidelines provides that [w]ith respect to federal death penalty cases . . . upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, the court should authorize the defendant's attorneys to obtain such services." Guide, Vol. 7A §660.10.10(a).[5]  *See also* American Bar Association ("ABA") Standards for Criminal Justice, Standard 5-1.4 (recognizing the necessity of investigatory and support services, including expert witnesses and personnel skilled in social work and related disciplines, to the provision of quality legal representation, and stating that such services should be available to the clients of retained counsel who are financially unable to afford them).

Accordingly, if after making the appropriate inquiry into the defendant's finances and retained counsel's fee arrangement, the court finds that requested support services are necessary to the defense, and that the defendant cannot otherwise obtain them, "the court *shall* authorize counsel to obtain the services." 18 U.S.C. §3006(A)(e)(1); *see also* Guide, Vol. 7A §310.10.20(a) (when responding to requests for services under 18 U.S.C. §3006[A][e] by a person represented by retained counsel, the court should inquire into the fee arrangement); Guide, Vol. 7A §660.20.10 ("For all capital cases, the compensation maximum amounts for investigative, expert, and other services identified in Guide, Vol. 7A §310.20.10 are inapplicable").  Here, of course, this screening process has already taken place, and the Court has already approved public funding for experts and investigators in 2016, knowing that Mr. Tartaglione had retained counsel.

The CJA Guidelines further provide that all capital cases should be budgeted with the assistance of case-budgeting attorneys and/or resource counsel where appropriate, *see* Guide, Vol. 7A, §640.10(a), and the procedures by which budgets are to be devised in capital cases are set forth in Chapter Six in some detail.  *See* sections 640.10 through 640.40.  Budgeting, of course, is critical, as it guides counsel's use of time and resources.  Case budgets, however, are not inflexible; they may be "re-evaluated when justified by changed or unexpected circumstances, and they should be modified by the court where good cause is shown." *See* Appx. 6A: Recommendations & Commentary Concerning the Cost and Quality of Defense Representation, Part 9.f. (Updated Spencer Report, September 2010).  In this regard, in the event that learned counsel is removed, and the lawyers working in association with learned counsel pursuant to section 620.10.10 are also removed or choose to leave, then the existing 1.3-million-dollar budget will be re-evaluated, Mr. Tartaglione's eligibility for expert and other support services pursuant to 18 U.S.C. §3006A(e) and sections 660.10.10(a) and 310.10.10(a) of the CJA Guidelines will need to be assessed, and the defense will work diligently with the Court and resource counsel, if available, to accomplish these goals in all appropriate respects.

---

[4]  Subdivision (e)(2) also authorizes the expenditure of some funds on an emergency basis without prior court authorization.

[5]  The Guidelines further provide that "[u]pon a finding that timely procurement of necessary investigative, expert, or other services could not await prior authorization, the presiding judicial officer may authorize such services *nunc pro tunc* consistent with section 310.20.30(b).  Guide, Vol. 7A §660.10.30.

## CONCLUSION

Fundamentally, the legitimacy of learned counsel's role in this case -- like the role of learned counsel in any capital case -- stems from the consent of the accused; and given Mr. Tartaglione's adamant opposition to learned counsel's continued involvement in his case, "the potential advantage of [learned counsel's] training and experience can be realized, if at all, only imperfectly.  After all, to force a lawyer on a defendant can only lead him to believe the law contrives against him." *Faretta*, at 834.  It is Mr. Tartaglione -- not counsel or the Government -- who bears the consequences of his conviction, and Mr. Tartaglione has a right to decide whether he wishes to proceed with learned counsel's continued assistance. Given Mr. Ricco's qualifications and demonstrated experience, Mr. Tartaglione's desire to remove Mr. Ricco may not be perceived by the Court as wise -- and it may in fact be unwise -- but, nevertheless, his "choice must be honored out of that respect for the individual which is the lifeblood of the law." *Id*.

Discharging learned counsel will ensure that, going forward, Mr. Tartaglione's relationship with his defense team, and his willingness to communicate with the people entrusted to save his life, remains unobstructed.  It was Mr. Tartaglione's choice to invoke the protections of section 3005 to obtain assistance from additional counsels, and it is likewise, respectfully, his choice, at this juncture, to have learned counsel removed -- a choice that, contrary to Learned Counsel's suggestion, should not, and statutorily may not, deprive him of necessary funding to pursue his defense.

However, to the extent that the Court shares the concern expressed by learned counsel that I have somehow unfairly or improperly influenced Mr. Tartaglione's decision to discharge learned counsel, I *urge* the Court to thoroughly and independently question Mr. Tartaglione concerning whether he is making knowing and voluntary decisions and to establish that he is not being improperly influenced by me. Upon doing so, however, the Court should, respectfully, act promptly to effectuate Mr. Tartaglione's constitutional and statutory rights, and honor his decision on this critical issue.

Lastly, we ask that this letter be filed under seal and *ex parte* as it relates to confidential matters concerning counsel.

Respectfully submitted,

___/s/Bruce Barket_____
Bruce Barket

7